Marc J. Randazza (California Bar No. 269535)
Jason A. Fischer (California Bar No. 275469)
RANDAZZA LEGAL GROUP
mjr@Randazza.com
jaf@Randazza.com
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com

Attorneys for Defendant,
*Weican Null Meng*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG ZIYI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CHINA FREE PRESS, INC., a North Carolina non-profit corporation doing business as BOXUN NEWS; WEICAN NULL MENG, an individual known as WATSON MENG and also WEICAN "WATSON" MENG; DOES 1-25, inclusive,<br><br>Defendants. | Case No. CV12-5216-DMG (PLAX)<br><br>**DEFENDANT WEICAN NULL MENG'S SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CIVIL PROCEDURE § 425.16** |

- 1 -

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT:

For any hearing the court may schedule or as soon as the matter is heard in the courtroom of the Honorable Dolly M. Gee, defendant Weican "Watson" Null Meng ("Meng") will and hereby does move to strike Plaintiff's Complaint under California Civil Procedure Code § 425.16 (California's Anti-SLAPP statute) and seeks the pending action's dismissal, as well as costs and reasonable attorney's fees.

Meng seeks dismissmal of the Complaint under § 425.16 because 1) his conduct was made in furtherance of his rights of petition or free speech pursuant to Cal Civ. P. Code § 425.16(b)(1); 2) Meng's speech was connected to an issue of public interest; and 3) Meng's speech is protected by the First Amendment. Additionally, Plaintiff is a public figure, and is therefore subject to the actual malice standard as laid out in *New York Times Co. v. Sullivan*, 376 U.S. 254, 280-82 (1964). Plaintiff cannot show a probable chance of satisfying the actual malice standard by clear and convincing evidence. Furthermore, Meng's sources are entitled to anonymity, as disclosing their identities is potentially dangerous given the current political climate in China. For these reasons, Meng respectfully requests that this motion be granted.

This Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the Declarations of Weican "Watson" Null Meng, Ye

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

"Ken" Wang, Mary Hausch, and J. Malcolm DeVoy; the news articles attached

hereto within Exhibit A; and such other authorities and argument as may be

submitted in any reply at or before the hearing.

  This Motion is made following the conference of counsel pursuant to Local

Rule 7-3, which took place from August 10-14, 2012.


                Respectfully Submitted,

Dated: August 17, 2012      RANDAZZA LEGAL GROUP

                By:   /s/ Marc J. Randazza  

                Marc J. Randazza

                Attorneys for Defendant

                Weican "Watson" Null Meng

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

# **TABLE OF CONTENTS**

I.  Introduction ...............................................................................................8

II.  Legal Standards ......................................................................................12

III.  Argument ...............................................................................................13

   A.    **This Motion Properly Dismisses Plaintiff's Claims.   13**

   B.    **Meng's Expressive Conduct Was "Made In Furtherance" of His Rights of "Petition or Free Speech" Under § 425.16. 14**

   C.    **Meng's Protected Speech Is Connected To An Issue of Public Interest. 15**

   D.    **Meng's Speech is Protected by the First Amendment.        18**

     1.  Plaintiff is a Public Figure, and Thus Subject to the Actual Malice Standard for Defamation. .................................................................18

     2.  Plaintiff Cannot Show a Probable Chance of Satisfying the Actual Malice Standard by Clear and Convincing Evidence. ..................................20

     3.  Meng's Sources Are Entitled to Anonymity in this Matter – Indeed, Outing Them for Prosecution in China is the Sole Purpose of this Litigation. ............23

IV.  Conclusion .............................................................................................27

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

## **TABLE OF AUTHORITIES**

**Rules**

§ 425.16. ...................................................................................12, 13, 14

**United States Supreme Court Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................21

*Boos v. Barry*, 485 U.S. 312 (1988) ...............................................22

*Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984)..........................................21

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ...............................................21

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974)..........................................19

*Harte-Hanks Communications v. Connaughton*, 491 U.S. 657 (U.S. 1989)...........21

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) ..........................................19

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 115 S. Ct. 1511 (1995) .........23

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).........................18, 19, 22, 28

*Snyder v. Phelps*, __ U.S. __, 131 S. Ct. 1207 (2011).............................................19

*St. Amant v. Thompson*, 390 U.S., 727 (1968) ...............................................21

*Talley v. California*, 362 U.S. 60, 80 S. Ct. 536 (1960) .........................................23

**United States Court of Appeals Cases**

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ........................................12

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010)...............................13

*Newton v. National Broadcasting Co.*, 930 F.2d 662 (9th Cir.1990).....................21

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ...............................................14

**United States District Court Cases**

*Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, 448 F. Supp. 2d 1172 (C.D. Cal. 2006) ...............................................14

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

*D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000) ................................................................................22

*Flores v. Emerich & Fike*, 416 F. Supp. 2d 885 (E.D. Cal. 2006) .........................20

*Greater L.A. Agency on Deafness v. Cable News Network, Inc.*, ___ F. Supp. 2d ____, 2012 WL 994647 (N.D. Cal. March 23, 2012) .........................................14

*Manufactured Home Cmtys., Inc. v. County of San Diego*, 606 F. Supp. 2d 1266 (S.D. Cal. 2009) ...............................................................20

*Mello v. Great Seneca Fin'l Corp.*, 526 F. Supp. 2d 1024 (C.D. Cal. 2007)..........13

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004)........................20

*Price v. Stossel*, 590 F. Supp. 2d 1262 (C.D. Cal. 2008) .................................12, 14

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999) ...11, 12, 13

*Secord v. Cockburn*, 747 F. Supp. 779 (D.D.C. 1990) ..........................................22

*Westfall v. City of Crescent City*, Case No. CV 10-5222, *2011 U.S. Dist. LEXIS 57353* (N.D. Cal. May 26, 2011) .......................................................20

**California Supreme Court Cases**

*Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986) ...................................19

*Briggs v. Eden Council for Hope and Opportunity*, 81 Cal. Rptr. 2d 471 (Cal. 1999) .............................................................................10, 11

*McCoy v. Hearst Corp.*, 42 Cal. 3d 835, 859 (Cal. 1986)......................................16

*Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d 530 (Cal. 2002). ..........13

**California Court of Appeals Cases**

*Sipple v. Foundation for National Progress,* 71 Cal.App.4th 226, 238 (Cal. Ct. App. 1999) ...........................................................................16, 18

*Aisenson v. American Broadcasting Co.* 220 Cal.App.3d 146 (Cal. Ct. App. 1990) .................................................................................16

*Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569 (Cal. Ct. App. 2005)...................22

- 6 -

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

*Annette F. v. Sharon S.*, 119 Cal.App.4th 1146 (Cal. Ct. App. 2004)....................21

*Beilenson v. Superior Court*, 44 Cal.App.4th 944 (Cal. Ct. App. 1996)...........17, 22

*Denney v. Lawrence*, 22 Cal.App.4th 927 (Cal. Ct. App. 1994)......................18, 19

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777 (Cal. Ct. App. 1996) .......................................................................................17

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal.App.4th 855 (Cal. Ct. App. 1995) .......................................................................................14

*M.G. v. Time Warner, Inc.*, 89 Cal.App.4th 623 (Cal. Ct. App. 2001) ..................15

*Matson v. Dvorak*, 40 Cal.App.4th 539 (Cal. Ct. App. 1995)................................16

*Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685 (Cal. Ct. App. 1991).19

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798 (Cal. Ct. App. 2002) .....12, 15

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

## DEFENDANT'S SPECIAL MOTION TO STRIKE UNDER
## CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

Defendant Weican Null "Watson" Meng ("Meng") respectfully moves to strike the Plaintiff's Complaint under California Code of Civil Procedure § 425.16 – better known as California's "anti-SLAPP statute."  In making this motion, and without consenting to the jurisdiction of this Court as contested in his pending Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(2) or waiving such defenses, Meng seeks the pending action's dismissal, as well as an award of his costs and reasonable attorneys' fees as allowed by statute.

## I.    INTRODUCTION

Plaintiff Zhang Ziyi ("Plaintiff") filed this lawsuit solely to create a Hobson's choice for its defendants: Either divulge their anonymous sources inside the People's Republic of China so that they may be subject to cruel, unusual, and inhumane persecution, or surrender their own rights to free expression under the United States Constitution.  Meng chooses to do neither.  Accordingly, he brings this motion to strike Plaintiff's baseless claims against him – all based on the same statements he published through the Boxun News ("Boxun") website – and terminate the instant censorious litigation.

Meng is the administrator of the independent Chinese dissident news website Boxun, which is located at <boxun.com> (Decl. of Weican Meng ¶¶ 2-5). Given its status as a reliable source for dissident news, China's Central Communist Party (the "CCP") banned the site from access in mainland China since 2000 – shortly after its launch (*id*. ¶ 6).  By reporting for Boxun, Meng seeks to shed light on the true political climate and underlying tensions within China.  Thus, he runs Boxun as primarily a political news site (*id*. ¶¶ 5-6, 20-22).

Since Boxun's inception, Meng has developed its reporting standards in a manner consistent with those of other news media (Meng Decl. ¶¶ 7-13, 17-19;

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 8 -

Decl. of Mary Hausch ¶¶ 7-8).  Meng investigates the information that his sources provide, and only publishes content that is true and reliable (Meng Decl. ¶¶ 10-13, 17-22).  Though Meng has some anonymous sources[1] that contribute information to Boxun, he endeavors to confirm their information (*id*. ¶¶ 18-20).  Ultimately, Meng will only publish information on Boxun that he can verify is true and accurate (*id*. ¶¶ 17-22).  Given the nature of some of Boxun's anonymous sources and the information they provide to Meng, though, it is Meng and Boxun's standard practice to keep the identities of their sources confidential and anonymous (*id*. ¶¶ 11-13). Meng will only use anonymous sources if the information they provide is true, reliable, and corroborated (*id*. ¶¶ 18-20), and his use of anonymous sources is consistent with standard journalistic ethics (Hausch Decl. ¶¶ 3-8). Indeed, given the China's authoritarian regime and its record on free speech and human rights, the anonymity of Boxun's sources is of great importance to Meng, Boxun, and the sources themselves. (Meng Decl. ¶¶ 12-17; Decl. of Ye Wang ¶¶ 21-41).

While much of the media turned its attention to the Arab Spring of early 2012, when liberal revolution swept over the Middle East, China fell into political turmoil.  One of its highest-ranking politicians, Bo Xilai, became embroiled in scandal over a variety of claims that involved overseas money transfers, the mysterious death of an English businessman who did business with his family, and failing to meet the standards for leadership within the CCP. (Exhibit A)  These stories received increased attention in the United States media in March of 2012. (*Id*.)  By April 2012, the national and international media descended into a frenzy over the Bo Xilai scandal (*id*.).  As details of political intrigue and corruption

---

[1] It should go without saying that given China's human rights and free speech policies, such anonymity is necessary in order to protect the sources very lives, given some of the information they provide.

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

began to trickle out of China, regional, national and international media outlets ran with the story (*id.*).

On May 28, 2012, once traditional media outlets such as <u>CNN</u> and the <u>New York Times</u> broke the seal of reporting on Bo Xilai (*id.*), Meng began reporting on other aspects of the story through Boxun. (Meng Decl. ¶¶ 7-12, 18-21)  While other outlets reported on Bo Xilai's alleged financial wrongdoings and other corruption, Meng broke a story nobody else had yet discussed: Bo Xilai had, according to Meng's reliable sources, engaged Plaintiff's services as a prostitute (Compl. Exhs.).  Meng obtained this information from anonymous sources within mainland China using standard procedures that complied with accepted journalism practices and ethics (Meng Decl. ¶¶ 17-22; Hausch Decl. ¶¶ 7-8).  Meng had no reason to doubt the truth or accuracy of any information his sources provided to him (Meng Decl. ¶¶ 11-13, 17-22).  On June 3, 2012, Meng published a second article on Boxun, confirming his May 28 statements that Bo Xilai had hired Plaintiff as a prostitute, doing so without any doubt that the facts he had obtained were accurate (*id.* ¶¶ 17-21), and after engaging in verification of the facts from multiple sources. (Meng Decl. ¶¶ 13, 18-22).

Plaintiff could have availed herself of the remedy of *more* speech, rather than litigation, to dispute Meng's statements.  As she alleges in her complaint, she is a well-recognized and internationally famous actress.  (Compl ¶ 2, 8-9).  With this international public figure status, she surely had the resources and connections necessary to publicize any rebuttal she wished to make (Compl ¶¶ 8-9).  Instead, she commenced this action, asserting claims of defamation, invasion of privacy, intentional and negligent interference with prospective economic advantage, and violations of Cal. Bus. and Prof. Code §§ 17200 *et seq*.  Each and every one of these claims is predicated on Meng's statements about her on Boxun, and is an attempt to punish Meng for exercising his Constitutional right to free speech – or

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 10 -

worse – as the potential Hobson's choice seems like a clever Chinese government plan to flush out the source or, as a consolation prize, to shut down a journalistic gadfly.

For a decade, California has recognized this species of lawsuit for what it is: Strategic litigation against public participation, or a "SLAPP" suit.  In 1992, the California legislature enacted Civil Procedure Code § 425.16, which has become known as California's "anti-SLAPP" statute. *Briggs v. Eden Council for Hope and Opportunity*, 81 Cal. Rptr. 2d 471, 483 (Cal. 1999). "SLAPP suits are often brought for purely political purposes in order to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 974 (C.D. Cal. 1999) *citing Briggs*, 81 Cal. Rptr. 2d at 483.  This district has identified SLAPP suits as those that "are generally meritless . . . brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Rogers*, 57 F. Supp. 2d at 974.

California's legislature recognized that SLAPP suits, such as this one, were used to harass defendants who "spoke out on matters of public concern and often could not afford to defend even a meritless suit." *Briggs*, 81 Cal. Rptr. at 479-80. Meng's cost of defending this suit obviously would be great if fully litigated. Greater still, however, is the potential cost to be paid by his anonymous sources in China (Meng Decl. ¶¶ 12-17; Wang Decl. ¶¶ 34-41).[2]  For the reasons set forth herein, neither Meng should be required to pay for the defense of this action with his resources, nor should his sources be required to bear the costs of this action with their personal safety.  Pursuant to Cal. Civ. P. Code § 425.16, Plaintiff's

---

[2] Boxun reporters and contributors have already been imprisoned for years at a time in connection with their assistance of the website (Meng Decl. ¶¶ 14-15).

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

1    causes of action must be stricken, and the action dismissed, for constituting

2    nothing more than a frontal attack on Meng's Constitutionally protected speech.

3    **II.    LEGAL STANDARDS**

4           Although Cal. Code of Civ. P. § 425.16 is a creation of state law, it has been

5    applied extensively in California's federal courts and analyzed thoroughly by both

6    its district courts and the United States Court of Appeals for the Ninth Circuit.

7    *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Price v. Stossel*, 590 F. Supp. 2d 1262,

8    1266 (C.D. Cal. 2008) ("[I]t is beyond dispute that the California anti-SLAPP motion

9    is available in federal court.").  The purpose for § 425.16's enactment was to provide

10   California's courts with a mechanism for the early, speedy disposition of "meritless

11   first amendment cases aimed at chilling expression through costly, time-consuming

12   litigation." *Batzel*, 333 F.3d at 1023-24; *see also Seelig v. Infinity Broad. Corp.*, 97

13   Cal. App. 4th 798, 806 (Cal. Ct. App. 2002) ("The goal is to eliminate meritless or

14   retaliatory litigation at an early stage of the proceedings").  In this case, Meng's

15   motion challenges both the legal sufficiency of plaintiff's allegations as well as her

16   failure to substantiate the numerous state law claims raised in the Complaint with

17   evidentiary support.  Thus, the instant motion is evaluated as a motion for

18   summary judgment brought under Fed. R. Civ. P. 56(c). *Rogers*, 57 F. Supp. 2d at

19   979-984.

20          This motion is evaluated in two steps.  As set forth below, Meng must show

21   that his alleged actions were made in furtherance of his right of petition or free

22   speech under the United States Constitution, and in connection with a public issue.

23   § 425.16(b).  California's anti-SLAPP statute expressly contemplates Meng's

24   administration of the Boxun website as protected conduct as defined in §

25   425.16(e)(3)-(4):

26

27            (3) any written or oral statement or writing made in a place open to the
              public or a public forum in connection with an issue of public interest, or

28

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 12 -

(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Furthermore, California's legislature has provided guidance to the Court with respect to its application of § 425.16, as all courts are mandated to "broadly" construe the statute's protections. Cal. Civ. P. Code § 425.16(a).

With Meng having made his showing required under § 425.16(b)(1), Plaintiff carries the burden of demonstrating a probability (i.e., a likelihood greater than 50%) of prevailing on the claim.  To carry its burden, Plaintiff must demonstrate that the Complaint is both legally sufficient and supported by facts sufficient to sustain a favorable judgment. *Mello v. Great Seneca Fin'l Corp.*, 526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007).  It is irrelevant whether Plaintiff intended to chill Meng's free speech rights, so long as Plaintiff's claims target his protected conduct. *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d 530 (Cal. 2002).

Plaintiff may not "rely solely on the allegations set forth in his pleadings, nor may the court simply accept those allegations." *Price*, 590 F. Supp. 2d at 1266.  To the contrary, Plaintiff must produce creditable evidence to show her claim probably will prevail. *Id.*  "Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).

## III.    ARGUMENT

### A.    This Motion Properly Dismisses Plaintiff's Claims.

Plaintiff filed suit against Meng asserting claims of defamation, false light invasion of privacy, intentional and negligent interference with prospective economic advantage, and violations of Cal. Bus. Prof. Code §§ 17200 *et seq*.  As every single claim Plaintiff asserts against Meng arises under California law, Cal. Civ. P. Code § 425.16 may dismiss them. *U.S. ex rel. Newsham v. Lockheed*

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 13 -

*Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999); *Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (applying California's anti-SLAPP statute to plaintiffs' state common law and statutory claims).  Finally, as the nexus of every claim Plaintiff asserts relates to Meng's Constitutionally protected expression, this Court may dispose of all of them through this special motion to strike. *See* Cal. Civ. P. Code § 425.16(b)(1) (permitting dismissal of any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech").

> **B.    Meng's Expressive Conduct Was "Made In Furtherance" of His Rights of "Petition or Free Speech" Under § 425.16.**

California's anti-SLAPP law protects a person's right of free speech in furtherance of the Constitutions of the United States and the State of California. Among the speech the law explicitly protects are "written or oral statement[s] or writing[s] made in a . . . public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. P. Code § 425.16(e)(3) and (4).

It is well-settled that the anti-SLAPP statute at issue includes media, in relation to reporting the news and matters of public interest, as speech made in furtherance of free speech.  *See Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal.App.4th 855, 863-64 (Cal. Ct. App. 1995); *see also Greater L.A. Agency on Deafness v. Cable News Network, Inc.*, ___ F. Supp. 2d ____, 2012 WL 994647, at *7 (N.D. Cal. March 23, 2012); *Price*, 590 F. Supp.2d at 1265-66.  California's state and federal courts have held that a wide array of media activities constitute conduct made in furtherance of the speaker's rights to petition or free speech under § 425.16.   These activities include traditional newspaper reporting (*Lafayette Morehouse*, 37 Cal. App.4th at 863-64), radio talk show discussion (*Seelig*, 97

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 14 -

Cal.App.4th at 802-05), and television newsmagazine stories (*M.G. v. Time Warner, Inc.*, 89 Cal.App.4th 623, 626 (Cal. Ct. App. 2001)).

Defendant Meng's news reporting with Boxun is precisely the type of conduct that Cal. Civ. P. Code § 425.16(e) was intended to protect as an expression of speech in the public interest.  Plaintiff has not, and cannot, challenge Boxun's status as a news reporting agency, and the stories at issue, dealing with corruption at high levels of the Chinese government, are archetypical examples of conduct made in furtherance of protected speech.  Therefore, §425.16 protects Meng's activities in publishing and distributing the articles at issue on the Boxun service (Compl. ¶¶ 10-13).

### C.   Meng's Protected Speech Is Connected To An Issue of Public Interest.

Plaintiff is clearly a public figure, thus making discussion of her a matter of public interest.  The reason for Meng's mention of Plaintiff, however, goes beyond the Plaintiff's mere celebrity, as it is incidental to a major political scandal involving Bo Xilai, a prominent politician in the Chinese Central Communist Party, and his alleged wrongdoings. (Meng Decl. ¶¶ 7-10; Exhibit A)  As early as March 2012, major news outlets such as CNN, The New York Times, PBS, CBS, Fox News, The Telegraph, The Los Angeles Times, The Irish Times, Reuters UK, and The Seattle Times have paid significant attention to the allegations against Bo Xilai, his removal from power in China, and the potential aftershocks this affair may have on the ruling Chinese party (*see* Exhibit A).  Domestic and international reporting on the unfurling political scandal, involving the murder of an English businessman, began more than one month before Meng made his first allegedly defamatory statements about Plaintiff. (Exhibit A at 1)  By that point, Mr. Bo's political woes in China demonstrably became a matter of global public interest because of their implications on China's ruling party which controls the world's

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

second largest national economy and is a major player in global events.[3]  While some elements of the scandal may seem trite, our own country's experience shows us that from seemingly small sexual acts, great political consequences may flow.

The international political scandal and intrigue is a classic example of an "issue of public interest" under § 425.16(e).  In *Sipple v. Foundation for National Progress*, the California Court of Appeals found that the defendant's statements about a prominent political strategist's alleged perpetration of domestic violence was an issue of public interest. 71 Cal.App.4th 226, 238 (Cal. Ct. App. 1999).  The *Sipple* court further stated that issues of public interest "may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." *Id.*, *citing Averill v. Superior Court,* 42 Cal.App.4th 1170, 1175 (Cal. Ct. App. 1996).  Moreover, their status as issues of public interest can be "evidenced by media coverage," such as the pervasive and considerable type found in Exhibit A. *Sipple*, 71 Cal.App.4th at 238.

Bo Xilai's fitness for an office of public trust, which he held as a senior political official in China, is a quintessential matter of public interest.  It is "axiomatic" that the qualifications of public officers are a public issue. *Matson v. Dvorak*, 40 Cal.App.4th 539, 548 (Cal. Ct. App. 1995). "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment." *Aisenson v. American Broadcasting Co*. 220 Cal.App.3d 146, 154 (Cal. Ct. App. 1990).  Government officials "have almost always been considered the paradigm case of 'public figures' who should be subjected to the most thorough scrutiny." *McCoy* v. *Hearst Corp*., 42 Cal. 3d 835, 859 (Cal. 1986).

---

[3] East & Southeast Asia: China, The CIA World Factbook (July 31, 2012), https://www.cia.gov/library/publications/the-world-factbook/geos/ch.html (*last accessed* Aug. 15, 2012).

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

Specific issues inherent in Bo Xilai's scandal address issues that California's courts have previously found to constitute issues of public interest.  California law has deemed communication questioning whether money designated for charity ever reached its final, charitable destination to address an issue of public interest. *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 783-84 (Cal. Ct. App. 1996); *see also Beilenson v. Superior Court*, 44 Cal.App.4th 944 (Cal. Ct. App. 1996) (finding speech alleging unethical conduct of a public official to be of public interest).  This is directly on point with the New York Times' April 16, 2012 report on Bo Xilai, where a central element of his scandal was illicit overseas money transfers between England and China for Mr. Bo and his family. (Exhibit A at 17-19)

If questioning the allocation of funds such as in *Dove* constitutes an issue of public interest, then so too must charges of corruption – including involvement in an alleged murder – that have garnered international attention. As further seen in Exhibit A, Mr. Bo has been publicly subject to even more significant charges of corruption than these money transfers, including involvement in a death that has been considered an "intentional homicide." (Exhibit A at 3-4, 8-9, 10)  For these events involving a politician at the peak of China's power structure to be reported extensively by the United States' media, it is unfathomable to believe they are not issues of public interest.

Plaintiff and Meng's discussion of her reside squarely at the center of this scandal with international implications.  Among the many other serious charges pending against Bo Xilai, from questionable money transfers to potential involvement in a homicide, his alleged unlawful affairs with Plaintiff are but another element in the landscape of his political intrigue.  From the exhibits attached to Plaintiff's Complaint, it is clear that she was an accessory to Bo Xilai's broader corruption narrative – an issue that, as explained above, is a matter of clear

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

public interest.  Under California precedent, Plaintiff's alleged involvement in this scandal is generally and specifically an issue of public interest as well (*see* Exhibit A; Meng Decl. ¶ 21).  Just as a prominent political figure's domestic violence was deemed a matter of public interest in *Sipple*, so too is Bo Xilai's alleged exploitation of women, including Plaintiff in the illegal prostitution and sex trades. 71 Cal.App.4th at 238.  A contrary holding would prioritize social mores and the safety of women in with respect to one unlawful activity (domestic violence), but not another (prostitution).

> **D.   Meng's Speech is Protected by the First Amendment.**
> **1.   Plaintiff is a Public Figure, and Thus Subject to the Actual Malice Standard for Defamation.**

The law of the United States and the State of California holds defamation claimants such as Plaintiff to a higher burden than private individuals for proving their claims. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280-82 (1964) (requiring public figure plaintiff to show "actual malice" in order to recover for defamation); *Denney v. Lawrence*, 22 Cal.App.4th 927, 933 (Cal. Ct. App. 1994) (stating that determination of whether plaintiff is public figure is a question of law, not fact).  This standard has nothing to do with "malice" in the literary sense, but is a distinct legal test for defamation claims brought by public figures.  Instead, actual malice requires a public figure plaintiff to prove an allegedly defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280.

Plaintiff is, by her own admission, a public figure in this matter. (Compl. ¶¶ 2, 8-9).  Because of her international fame, she is a general public figure, and treated as such for all purposes.  The allegations set forth in Plaintiff's Complaint, accepted as true, certainly indicate that she has "achieved such pervasive fame or notoriety that [she has] become [a] public figure[] for all purposes and in all

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 18 -

contexts." *Denney*, 22 Cal.App.4th at 933, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *Mosesian v. McClatchy Newspapers*, 233 Cal.App.3d 1685, 1689 (Cal. Ct. App. 1991).  According Plaintiff's own submission to the Court, she has received numerous acting awards and starred in a number of films that generated up to $ 1 billion dollars in revenue (Compl. ¶¶ 8-9).  This fame is only matched internationally, where Plaintiff is a major sponsor and spokesperson for numerous brands in Asia, as well as globally (*id.*).

At minimum, Plaintiff is a limited-purpose public figure.  Meng's investigation of Bo Xilai, a high-powered politician within the Chinese Central Communist Party, is what led him to publish the allegedly defamatory statements at issue in this case (Meng Decl. ¶¶ 7-10; Exhibit A).  Due to Boxun's nature as a political website, rather than one for celebrity gossip, the target of Meng's reporting and the information he obtained from his sources was Bo Xilai, rather than Plaintiff (*id*. ¶ 17-21).  Incidental to reporting on the unfolding, internationally relevant scandal affecting Bo Xilai, Meng published the statements underlying this lawsuit (*id.* ¶ 21).

Plaintiff's stature as a public figure – whether generally or limitedly – affects her ability to prevail on every claim raised in her complaint.  Even for claims other than defamation, a public figure's claims sounding in the defendant's speech are subject to the *Sullivan* test of actual malice. *Snyder v. Phelps*, __ U.S. __, 131 S. Ct. 1207, 1219 (2011); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988) (requiring actual malice for a public figure to recover on an emotional distress theory of liability); *Sullivan*, 376 U.S. at 269 (finding that no cause of action possesses "talismanic immunity from constitutional imitations"); *Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986) (holding that First Amendment protections "are not peculiar to [defamation] but apply to all claims whose gravamen is the alleged injurious falsehood of a statement").

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 19 -

Consistent with this precedent, numerous federal courts have used § 425.16 to strike the very causes of action asserted by Plaintiff when they were based on the defendants' protected speech. *Manufactured Home Cmtys., Inc. v. County of San Diego*, 606 F. Supp. 2d 1266 (S.D. Cal. 2009) (granting § 425.16 motion and striking claims for interference with economic advantage); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 910 (E.D. Cal. 2006) (striking invasion of privacy claim upon § 425.16 motion where the cause of action was based upon protected speech); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) (granting § 425.16 motion to strike unfair competition claim arising under Cal. Bus. And Prof. Code § 17200 *et seq*.); *Westfall v. City of Crescent City*, Case No. CV 10-5222, *2011 U.S. Dist. LEXIS 57353* at *26-27 (N.D. Cal. May 26, 2011) (dismissing emotional distress claim upon § 425.16 motion). Thus, while defamation is only one of Plaintiff's claims, every other cause of action in the Complaint is predicated on Meng's expressive conduct against a public figure and must be dismissed.

### 2. Plaintiff Cannot Show a Probable Chance of Satisfying the Actual Malice Standard by Clear and Convincing Evidence.

Under *Sullivan* and its progeny, actual malice is present only where a speaker makes false statements of fact with either knowledge of their falsity or reckless disregard for the truth.[4] Meng did not have knowledge of the posted statements' falsity at the time of their publication (Meng Decl. ¶¶ 10-13, 17-22). Even if the statements are factually false, Meng's publication of them is tortious only if Plaintiff can prove they were made with "reckless disregard" for the truth. For the reasons set forth below, Plaintiff cannot satisfy this standard.

---

[4] "[A]ny one claiming to be defamed by the communication must show actual malice or go remediless." *Sullivan*, 376 U.S. at 281, *quoting Coleman* v. *MacLennan*, 78 Kan. 711, 723, 98 P. 281, 285 (Kan. 1908).

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

"Reckless disregard" for the truth requires more than a departure from reasonably prudent conduct. *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 688 (U.S. 1989).  As such, mere negligence in reporting "can never give rise to liability in a public figure defamation case." *Newton v. National Broadcasting Co.*, 930 F.2d 662, 680 (9th Cir.1990) "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S., 727, 731 (1968). The standard is a subjective one: there must be sufficient evidence to permit the conclusion that the defendant actually had a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Thusly, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard. *Harte-Hanks*, 491 U.S. at 688; *St. Amant*, 390 U.S. at 731, 733.

Because of the First Amendment issues implicated by claims of defamation by public figures, Plaintiff faces a heightened burden – a burden of clear and convincing evidence – to show Meng acted with **reckless disregard for the truth**. "[W]here the factual dispute concerns actual malice . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding  either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984).  Thus, Plaintiff must show a probability that it can prove, by *clear and convincing evidence*, that Meng acted with a reckless disregard for the truth to prevail in this action. *Annette F. v. Sharon S.*, 119 Cal.App.4th 1146, 1167 (Cal. Ct. App. 2004). "[P]ublic figures . . . who sue for defamation must establish a probability that they can produce clear and convincing  evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 21 -

disregard of their truth or falsity." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578 (Cal. Ct. App. 2005).

Plaintiff must show a probability of proving by clear and convincing evidence that Meng acted with reckless disregard for the truth "[e]ven if the statements are deemed to be untruthful and not statements of opinion." *Beilenson*, 44 Cal.App.4th at 952.  The Supreme Court has adopted this heightened standard to allow breathing room for free expression about public figures, even if it ultimately results in a false statement of fact. *Sullivan*, 376 U.S. at 281-82 ("any one claiming to be defamed by the communication must show actual malice or go remediless") (internal quotations omitted).  Everyone, including Plaintiff, "must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Boos v. Barry*, 485 U.S. 312, 322 (1988).

Counter to what Plaintiff insinuates in the Complaint, Meng's use of anonymous sources is not evidence of reckless disregard for the truth.  In fact, this Court has previously found that the use of anonymous sources is not a reckless disregard for the truth, as journalists' reliance on information sources that wish to remain anonymous for a variety of reasons is standard within the news industry. *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1284 (C.D. Cal. 2000); *Secord v. Cockburn*, 747 F. Supp. 779, 788 (D.D.C. 1990).  So long as the anonymous sources' information does not invite a high degree of caution, or cause "pause or concern," reporting the information they provide is not a reckless disregard for the truth. *Rolling Stone*, 101 F. Supp. 2d at 1284.

All that Meng is required to do under *Sullivan* and its progeny was to not act with actual malice in reporting on Plaintiff.  Meng discharged this duty, without any reason to question his sources or "red flags" as to their credibility (Meng Decl. ¶¶ 10-13, 17-22).  In writing about Plaintiff, Meng relied on credible, reliable

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 22 -

sources who had a record of being true and accurate whenever subjected to further review (*id*. ¶¶ 10-13).  This conduct satisfied the standards of journalism (Hausch Decl. ¶¶ 3-8).  Even if it had not, mere negligence does not give rise to a finding of reckless disregard for the truth: Reckless disregard for the truth requires affirmative actions in disregard of the truth that are absent in this case (Meng Decl. ¶¶ 10-13, 17-22; Hausch Decl. ¶¶ 7-8).  Even if what Meng reported was untrue, his absence of actual malice bars all of Plaintiff's claims against him.

### 3.   Meng's Sources Are Entitled to Anonymity in this Matter – Indeed, Outing Them for Prosecution in China is the Sole Purpose of this Litigation.

"Anonymity is a shield from the tyranny of the majority." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357, 115 S. Ct. 1511, 1524 (1995). While the right to remain anonymous can be abused, political speech by its nature may sometimes have unfortunate consequences, and the ability to speak anonymously is weighed more heavily than the potential for misuse. *Id.*  Throughout history persecuted groups have used publishing to criticize "oppressive practices and laws either anonymously or not at all." *Talley v. California*, 362 U.S. 60, 64, 80 S. Ct. 536, 538 (1960).  Before the Constitution, the Federalist Papers, which helped shape the country as it is today, were written under false names. *Id.* at 65, 539.  Thus, "anonymity has sometimes been assumed for the most constructive purposes." *Id.*

Many newspapers follow a strict code when determining if the use of anonymous sources is appropriate.  The Society of Professional Journalists, which is one of the largest journalism organizations in the United States, advises journalists to "question sources' motives before promising anonymity."[5]  The New

---

[5] SPJ Code of Ethics, Society of Professional Journalists (2012) http://www.spj.org/ethicscode.asp (*last accessed* Aug. 16, 2012).

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

York Times in its confidential news sources policy states that it uses anonymous sources when it could not otherwise print information that would be considered newsworthy.[6]  Additionally, the sources must have direct knowledge of the information they are providing.  The reporter must also know the identity of the source and must share that identity with an editor.

In the early 1970s, two reporters for The Washington Post, Bob Woodward and Carl Bernstein, relying on **anonymous sources**, uncovered the truth about the Watergate scandal (Hausch Decl. ¶ 6).  As a result of the series of stories, President Richard Nixon resigned from office (*id*.).  To this day, journalism students devote some of their studies to learning about the Washington Post articles, which redefined journalism and its role with the United States government (*id*. ¶¶ 3-6).  Had the editor of The Washington Post, Ben Bradlee, not permitted the use of anonymous sources, the story may never have seen the light of day, and President Richard Nixon may not have resigned as president (*id*. ¶ 6).  No matter one's political beliefs about Richard Nixon, it must be agreed that allowing such a cover up due to fearful sources would have been a Constitutional travesty.  Will this Court not show those who seek to tend small gardens of freedom for China that it remembers our own experiences with such tales of corruption?

Like mainstream newspapers, Boxun News handles the anonymous sources it uses for its news stories with great caution (Meng. Decl. ¶¶ 10-13, 17-22). Some sources, whom Meng has come to trust based on their record of accurate, reliable reporting, have disclosed their identities only to Meng (*id*. ¶¶ 10-13).  The newspaper does its best to confirm and verify all of the information it receives with some of the more trusted sources (*id*. ¶¶ 10-13, 17-22).

---

[6] Confidential News Sources Policy, The New York Times Company, (Mar. 1, 2004), http://www.nytco.com/company/business_units/sources.html (*last accessed* Aug. 16, 2012).

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

In the articles underlying this case, Meng relied on information from trusted sources who had reliably been providing information about businessman Bo Xilai (*id*. ¶¶ 7-13, 17-21).  Given the nature of the information, the sources would only speak under the condition of anonymity.  Only one person—Meng— knows the identities of the sources for the story in question (*id*. ¶ 11).  The information provided was verified with an independent source, and Defendant Meng states that the sources had direct knowledge of the information they were providing.  Furthermore, Meng had reliably received information from the sources before and had reason to believe that the information they provided his was truthful, as they had been reliable sources of accurate information in the past (*id*. ¶¶ 10-13).  Given the importance of keeping his sources anonymous, Meng properly adhered to the standards practiced by mainstream newspapers across the United States (Hausch Decl. ¶¶ 7-8).  This cannot equal "reckless disregard" as required by *Sullivan*. 376 U.S. at 280-82.

During the Watergate Washington Post stories, only three people knew the identity of the anonymous source Deep Throat: reporters Bob Woodward and Carl Bernstein and editor Ben Bradlee.  Keeping the anonymous source's identity a secret was an absolute necessity given the subject matter of the Watergate Scandal, which involved a number of high-ranking government officials (including the president) (Hausch Decl. ¶¶ 3-6).

The issues discussed in the articles expose wrongdoing at the highest levels of the ruling classes in Communist China.  It is imperative that the sources of the information at issue remain anonymous (Meng Decl. ¶¶ 10-15, 17-21; Hausch Decl. ¶¶ 7-8; Wang Decl. ¶¶ 21-41).  If the sources had not been granted anonymity, the story would not have been published, as the underlying information is too politically sensitive for distribution without such protections (Meng Decl. ¶¶ 10-13, 14-16).  The articles are not simple gossip about Plaintiff, but relate to the

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

public downfall of a prominent Chinese politician (Compl. Exhs.; Meng Decl. ¶¶ 7-13, 17-21).  Therefore, publishing these articles could pose a threat to the Chinese government (Wang Decl. ¶¶ 17-19).  Now, as the articles and sources are being challenged, keeping the sources' identities a secret is still a vital task for the Defendants (*id*. ¶¶ 35-41).

China possesses a turbulent political climate where dissenters face retaliation for speaking out about government affairs.  Most notably, Americans remember the protests in Tiananman Square in 1989, which ended in military violence.  However, the Chinese government's actions in suppressing dissidents continues even today with trumped up charges of violating the state secrets doctrine (*id*. ¶¶ 24-28), prosecuted under the shadow of heavy political process and limited due process for the defendant (*id*. ¶¶ 29-33).  As early as 2000, the Chinese government blocked Boxun from the Chinese mainland because of its critical message (Meng Decl. ¶ 6).  Meng fled to the United States because he feared for his safety, and continues to publish Boxun online from North Carolina (Meng Decl. ¶¶ 2-4).  In China, it is a risk even to *read* the posts put up by the newspaper, much less submit a tip or information to Boxun (Meng Decl. ¶¶ 6, 11-17; *see* Wang Decl. ¶¶ 17-19, 21-41).

This is no mere conjecture: Boxun reporters have been imprisoned for their contributions to the site (Meng Decl. ¶¶ 12-17).  China possesses a very vague "state secrets" doctrine that can be used to prosecute and imprison alleged dissidents for the distribution of nebulous "state secrets" that account to nothing more than true and public information that is merely unflattering to the ruling party (Wang Decl. ¶¶ 29-33).  Once imprisoned, defendants face a lopsided legal system, where trials are conducted in private, without juries, and where the accused do not even have a right to cross-examine witnesses testifying against them (*id*. ¶¶ 28-33).

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

This, of course, assumes that Chinese authorities will recognize due process; before being deposed from the Central Communist Party, Bo Xilai was accused of disregarding the rights of individuals targeted in his crime sweeps (Exhibit A at 2). It is not unthinkable, nor unlikely, that Meng's confidential sources would be summarily killed in secret for their alleged transgressions if their identities were known (*id.* ¶¶ 34-41). Therefore, the sources are putting themselves at great risk by providing information to Boxun. If the court requires them to come forward now, it would be putting the sources in tangible, immediate danger (Meng Decl. ¶¶ 10-17: Wang Decl. ¶¶ 34-41).

In light of the Chinese government's history in punishing those who speak out against the government, including Boxun reporters (Meng Decl. ¶¶ 12-15) the Court must impose the highest possible protections for their respective identities. Because the information provided in the articles at issue in the instant case involves leaders within the Chinese government, the disclosure of these informants' identities, even inadvertently, could cause their deprivation of liberty and even life. Thus, overarching this litigation is the real and acute threat of irreparable, life-threatening harm that will befall Meng's sources if they are publicly identified (Wang Decl. ¶¶ 34-41).

## IV.   CONCLUSION

This case is a classic example of a SLAPP suit. This litigation is even more insidious because of its inherent risk, and perhaps its mission, of flushing out the identities of confidential sources who may face criminal prosecution, or fatal punishment through "extrajudicial" means.

However high the stakes of this case may be, it may be summarily dismantled under California's anti-SLAPP statute. Meng's speech through Boxun was a legitimate exercise in furtherance of his right to free speech and to enjoy the freedom of the press, which motivated his emigration to this country. The issues

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 27 -

addressed in his May 28 and June 3 articles contributed to the body of knowledge about Bo Xilai's fall from grace and the CCP politburo.  As Bo Xilai's scandals had been in the news for months preceding Meng's contributions, and persist in the news today, his conduct clearly addressed an issue of public interest.

Because Plaintiff is a public figure, she faces a higher burden to hold Meng liable for defamation and any other tort arising from his speech.  Plaintiff must show a probability of being able to prove by clear and convincing evidence that Meng acted with *actual malice* – that is, knowledge that the statements were false or a reckless disregard for the truth. *Sullivan*, 376 U.S. at 280-82.  At this point, the truth of Meng's statements is immaterial, and Plaintiff's sole task is showing she can prove, under the highest civil burden of evidence, that Meng acted with a reckless disregard for the truth in publishing his statements about her.  Based on the evidence accompanying this motion, Plaintiff cannot satisfy this standard.  No further discovery or factual investigation is needed to end this case now.

While the Court should grant this motion and dismiss Plaintiff's claims against Meng, the identities of Boxun's anonymous sources must be protected during this motion's pendency.  If Meng's anonymous sources are outed, and punishment is effected on them in China, then this litigation will have been a success for its real party in interest – a foreign government hoping to save face when confronted by scandal – even if Meng's motion ultimately succeeds.  Though this motion may be decided in Meng's favor without reaching the issue of his sources' identities, Plaintiff will undoubtedly seek to unmask them.  To the extent such requests cannot be resisted, the utmost protections must be imposed to preserve the anonymity of Meng's sources, lest his victory in this case be a pyrrhic one that defeats the principles of free speech he defends here today.

/ /

/ /

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

- 28 -

Dated August 17, 2012

Respectfully Submitted,

RANDAZZA LEGAL GROUP

Marc J. Randazza
Jason A. Fischer
*Attorneys for Defendant,*
*Weican Null Meng*

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 17th day of August, 2012, I caused the document(s) entitled:

**DEFENDANT WEICAN NULL MENG'S SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**

and all attachments to be served by the Court's CM/ECF system.

 /s/ Marc J. Randazza
Marc J. Randazza

Randazza
Legal Group
6525 W. Warm Springs
Suite 100
Las Vegas, NV 89118
(888) 667-1113