LORING ROSE (State Bar No. 251727)
   loringrose@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

JAMES ROSENFELD (admitted pro hac vice)
   jamesrosenfeld@dwt.com
DAVIS WRIGHT TREMAINE LLP
1633 Broadway
New York, New York  10019
Telephone:  (212) 489-8230
Fax:  (212) 489-8340

Attorneys for Defendant
CHINA FREE PRESS
(erroneously sued herein as "China Free Press
doing business as Boxun News")

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG ZIYI, an individual,<br><br>                    Plaintiff,<br><br>         vs.<br><br>CHINA FREE PRESS, a North Carolina non-profit corporation doing business as BOXUN NEWS; WEICAN NULL MENG, an individual known as WATSON MENG and also WEICAN "WATSON" MENG; and DOES 1-25, inclusive,<br><br>                    Defendants. | Case No. CV 12-5216-DMG (PLA)<br><br>Assigned to the Hon. Dolly M. Gee<br><br>**NOTICE OF MOTION AND SPECIAL MOTION OF CHINA FREE PRESS TO STRIKE PLAINTIFF'S COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Cal. Code Civ. Proc. § 425.16]**<br><br>Hearing Date:  October 12, 2012<br>Courtroom:      7<br>Time:               9:30 a.m.<br><br>[Filed with the Declarations of  James Rosenfeld, Michael Goettig and Weican "Watson" Meng and Exhibits A Through C; [Proposed] Order concurrently lodged]<br><br>Action Filed:  June 14, 2012 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 12, 2012, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7 of the Honorable Dolly M. Gee, located at 312 N. Spring Street, Los Angeles, California, Defendant CHINA FREE PRESS ("CFP") will and hereby does move this court pursuant to Section 425.16 of the California Civil Procedure Code for an order striking the Complaint filed by plaintiff ZHANG ZIYI ("Plaintiff") against CFP. [1]

CFP makes this motion on the grounds that Plaintiff's claims against CFP for libel *per se*, false light invasion of privacy, intentional and negligent interference with prospective economic advantage, and unlawful business practices in violation of California Business and Professions Code Section 17200, *et seq.* (Counts I-V) fall squarely within the scope of Code of Civil Procedure Section 425.16 because they arise from "conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4). All of Plaintiff's claims purport to arise from publications on a Chinese political commentary website hosted by CFP.

Consequently, the burden shifts to Plaintiff to present admissible evidence establishing a probability that Plaintiff will succeed on her claims. *See* Cal. Code Civ. Proc. § 425.16(b)(1). Plaintiff cannot meet this burden for the following independent reasons:

1.  Plaintiff's claims against CFP are barred by Section 230 of the Communications Decency Act, which immunizes internet service providers from claims that seek to hold them liable as the publisher or distributor of third party content.

---

[1] Plaintiff erroneously sued CFP as "China Free Press … doing business as Boxun News." As set forth in this motion, China Free Press has no association with Boxun News, as a "d/b/a" or otherwise.

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE
DWT 20280448v4 0200500-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2.  Plaintiff has not, and cannot, allege facts sufficient to show that CFP is the "alter ego" of defendant Weican Null Meng or his corporation, Yeeka.  In the absence of any evidence that would justify piercing the corporate veil, Plaintiff has no basis for her claims against CFP, which played no role beyond hosting the website on which the allegedly defamatory articles were posted.

3.  Even assuming, *arguendo*, that Plaintiff could state a defamation claim against CFP arising out of the articles – which she cannot – Plaintiff's claims must fail because Plaintiff cannot prove that CFP acted with actual malice.

For each of these separate and independent reasons, Plaintiff cannot meet her burden under Section 425.16(b)(1) of showing a "probability of prevailing" on her claims and thus, the Complaint and each of the five claims against CFP should be stricken.[2]  Pursuant to Section 425.16(c), if this Court grants this motion, CFP is also entitled to recover its attorneys' fees and costs incurred in this action.[3]

Pursuant to Local Rule 7.3, counsel for CFP met and conferred with counsel for Plaintiff on August 14, 2012, prior to filing this Motion.  (Rosenfeld Decl. ¶ 2.)

///

///

///

///

///

---

[2] If this Court were to find that Plaintiff met her burden of proof under Section 425.16 on any of her claims, it nonetheless should strike the other claims. *See, e.g., Shekhter v. Financial Indem. Co*., 89 Cal. App. 4th 141, 150, 106 Cal. Rptr. 2d 843 (2001) (motions brought under Section 425.16 need not dispose of the entire complaint, and may be granted as to some, even if not all, of the claims asserted).

[3] California Code of Civil Procedure Section 425.16(c) mandates that the prevailing defendant on an anti-SLAPP motion "shall" recover its attorneys' fees and costs.  If the Court grants this Motion, CFP will file a separate motion seeking an award of fees and costs.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32, 104 Cal. Rptr. 2d 377 (2001).

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DWT 20280448v4 0200500-000001

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the Declarations of James Rosenfeld, Michael Goettig and Weican "Watson" Meng and Exhibits A through C, and any additional evidence and arguments as may be presented at or before any hearing on this matter.

DATED: September 7 , 2012          DAVIS WRIGHT TREMAINE LLP
                                   JAMES ROSENFELD (pro hac vice)
                                   LORING ROSE


                                   By:   /s/James Rosenfeld
                                         James Rosenfeld

                                   Attorneys for Defendant
                                   CHINA FREE PRESS
                                   (erroneously sued herein as "China Free Press
                                   doing business as Boxun News")

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DWT 20280448v4 0200500-000001

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................3

    Meng ...............................................................................................3

    Yeeka .............................................................................................3

    China Free Press .............................................................................3

    The Articles ....................................................................................4

    This Lawsuit ..................................................................................4

ARGUMENT .........................................................................................5

    I.     PLAINTIFF'S CLAIMS ARISE FROM CHINA FREE PRESS'
             CONDUCT IN FURTHERANCE OF FREE SPEECH IN
             CONNECTION WITH ISSUES OF PUBLIC INTEREST ................6

    II.    PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY
             OF PREVAILING ON HER CLAIMS AGAINST CFP....................8

          A.    Section 230 of The Communications Decency Act
               Bars Plaintiffs' Claims Against CFP ..........................9

          B.    Plaintiff Cannot Show that CFP is the Alter Ego of
               Meng ...........................................................11

               1.    Choice of Law ..........................................13

                     a.    California Law ...................................13

                     b.    North Carolina Law ...........................14

                     c.    Governmental Interests Analysis ......15

               2.    Alter Ego Liability Cannot Be Imposed on CFP Under
                     California or North Carolina Law ..................16

          C.    The First Amendment Bars the Imposition of
                Liability on CFP...................................................20

CONCLUSION......................................................................................25

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................... 21

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) ................................ 16

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ........................................................................... 10

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ....................................................................... 9, 10

*Beilenson v. Superior Court*,
    44 Cal. App. 4th 944, 52 Cal. Rptr. 2d 357 (1996) ........................................... 23

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007) ................................ 16

*Best Cartage, Inc. v Stonewall Packaging, LLC*,
    727 S.E. 2d 291 (N.C. App. 2012) .................................................................... 15

*Blumenthal v. Drudge*,
    992 F. Supp. 44 (D.D.C. 1998) .................................................................... 10, 11

*Bose Corp. v. Consumer Union of U.S., Inc.*,
    466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) .................................. 22

*Bradbury v. Superior Court*,
    49 Cal. App. 4th 1108, 57 Cal. Rptr. 2d 207 (1996) ......................................... 23

*Braun v. Chronicle Publ'g Co.*,
    52 Cal. App. 4th 1036, 61 Cal. Rptr. 2d 58 (1997) ............................................. 5

*Briggs v. Eden Council*,
    19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471 (1999) .................................................... 6

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ........................................................................... 10

ii

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DWT 20280448v4 0200500 000001

*Chicago Lawyers' Committee for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*,
   461 F. Supp. 2d 681 (N.D. Ill. 2006) ...................................................11

*Communist Party v. 522 Valencia, Inc.*,
   35 Cal. App. 4th 980, 41 Cal. Rptr. 2d 618 (1995) ...........................12

*Corbis Corp. v. Amazon.com, Inc.*,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ........................................11

*Coufal Abogados v. AT&T, Inc.*,
   223 F.3d 932 (9th Cir. 2000) .............................................................13

*Cubby, Inc. v. CompuServe, Inc.*,
   776 F. Supp. 135 (S.D.N.Y. 1991) ....................................................23

*Doe v. Unocal*,
   248 F.3d 915 (9th Cir. 2001) .............................................................20

*Dombrowski v. Pfister*,
   380 U.S. 479, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965) .......................5

*Dworkin v. Hustler Magazine, Inc.*,
   611 F. Supp. 781 (D. Wyo. 1985) ......................................................23

*Eastwood v. National Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997) ...........................................................22

*Equilon Enterprises v. Consumer Cause*,
   29 Cal. 4th 53, 124 Cal. Rptr. 2d 507 (2002) .....................................8

*Gentry v. eBay, Inc.*,
   99 Cal. App. 4th 816, 121 Cal. Rptr. 2d 703 (2002) ...........................9

*Glenn v. Wagner*,
   313 N.C. 450, 329 S.E. 2d 326 (1985) ..............................................15

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ...........................................................19

*Harte-Hanks Comm's, Inc. v. Connaughton*,
   491 U.S. 657, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) ..........22, 23

iii

**DAVIS WRIGHT TREMAINE** LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DWT 20280448v4 0200300 000001

*Higher Balance, LLC v. Quantum Future Grp., Inc.,*
No. 08-233-HA, 2008 WL 5281487 (D. Or. Dec. 18, 2008) ............................ 12

*Hilton v. Hallmark Cards,*
580 F.3d 874 (9th Cir. 2009) ........................................................................ 6, 7

*Hustler Magazine v. Falwell,*
485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988) ........................................ 21

*In re Hydroxycut Marketing and Sales Practices Litig.,*
810 F. Supp. 2d 1100 (S.D. Cal. 2011) ........................................................... 14

*Lerman v. Flynt Distributing Co.,*
745 F.2d 123 (2d Cir. 1984) ...................................................................... 23, 24

*Liew v. Official Receiver and Liquidator,*
685 F.2d 1192 (9th Cir. 1982) ....................................................................... 13

*Lohrenz v. Donnelly,*
350 F.3d 1272 (D.C. Cir. 2003) ..................................................................... 21

*Macias v. Hartwell,*
55 Cal. App. 4th 669, 64 Cal. Rptr. 2d 222 (1997) ........................................... 8

*Masson v. New Yorker,*
881 F.2d 1452 (9th Cir. 1989), *aff'd in part*, 501 U.S. 496, 111 S. Ct.
2419, 115 L. Ed. 2d 447 (1991) ..................................................................... 20

*Masson v. New Yorker Magazine, Inc.,*
501 U.S. 496 (1991) ......................................................................... 21, 22, 24

*Navellier v. Sletten,*
106 Cal. App. 4th 763, 131 Cal. Rptr. 2d 201 (2003) ........................................ 8

*Navellier v. Sletten,*
29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002) .................................................... 6

*New York Times Co. v. Sullivan,*
376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964) ...................................... 21

*Newton v. National Broadcasting Co.,*
930 F.2d 662 (9th Cir. 1990) ........................................................................ 22

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DWT 20260448v4 0200300 000001

*Nygard, Inc. v. Uusi-Kerttula,*
   159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008) ..........................................7

*Parisi v. Sinclair,*
   774 F. Supp. 2d 310 (D.D.C. 2011)............................................................11, 23

*Raggi v. Las Vegas Met. Police Dep't,*
   No. 2:08CV943 JCM, 2009 WL 653000 (D. Nev. Mar. 10, 2009) ..................19

*Roman Catholic Archbishop v. Superior Court,*
   15Cal. App. 3d 405, 93 Cal. Rptr. 338 (1971) ..................................................12

*Rosenaur v. Scherer,*
   88 Cal. App. 4th 260, 105 Cal. Rptr. 2d 674 (2001) ........................................23

*Schlumberger Logelco, Inc. v. Morgan Equipment Co.,*
   No. C 94-1776 MHP, 1996 WL 251951 (N.D. Cal. May 3, 1996)....................15

*SEC v. Hickey,*
   322 F.3d 1123 (9th Cir. 2003) .....................................................................13, 15

*SEC v. Vaccallo,*
   No. Civ. S-9-0665, -- F. Supp. 2d --, 2012 WL 1868559 (E.D. Cal. May
   22, 2012) ....................................................................................................15, 16

*Seelig v. Infinity Borad. Corp.,*
   97 Cal. App. 4th 798, 119 Cal. Rptr. 2d 108 (2002) .......................................7, 8

*Selleck v. Globe Int'l, Inc.,*
   166 Cal. App. 3d 1123, 212 Cal. Rptr. 838 (1985) ..........................................21

*Sipple v. Foundation For Nat. Progress,*
   71 Cal. App. 4th 226, 83 Cal. Rptr. 2d 677 (1999) .........................................23

*St. Amant v. Thompson,*
   390 U.S. 727, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968) ...................................22

*State ex rel. Cooper v. Ridgeway Brands Manuf., LLC,*
   362 N.C. 431, 666 S.E. 2d 107 (2008) .............................................................20

*Strategic Outsourcing, Inc. v. Stacks,*
   176 N.C. App. 247, 625 S.E. 2d 800 (2006) ....................................................12

v

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DWT 20280448v4 0200300 000001

*Suzuki Motor Corporation v. Consumers Union of U.S.*,
330 F.3d 1110 (9th Cir. 2003) ............................................................................5

*Taus v. Loftus*,
40 Cal. 4th 683, 54 Cal. Rptr. 3d 775 (2007) ......................................................8

*Towe Antique Ford Found. v. IRS*,
999 F.2d 1387 (9th Cir. 1993) ....................................................................13, 15

*Trans-World Int'l Inc. v. Smith-Hemion Prod., Inc.*,
972 F. Supp. 1275 (C.D. Cal. 1997) ..................................................................15

*Universal Comm'n Sys., Inc. v. Lycos, Inc.*,
478 F.3d 413 (1st Cir. 2007) ..............................................................................9

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
99 Cal. App. 4th 228, 121 Cal. Rptr. 2d 1 (2002) .............................................14

*Washington Post Co. v. Keogh*,
365 F.2d 965 (D.C. Cir. 1966) ............................................................................5

*Wehlage v. Empres Healthcare, Inc.*,
821 F. Supp. 2d 1122 (N.D. Cal. 2011) .......................................................13, 15

*Woods v. Evansville Press, Co., Inc.*,
791 F.2d 480 (7th Cir. 1986) ............................................................................22

*Zeran v. America Online, Inc.*,
129 F.3d 327 (4th Cir. 1997) .......................................................................9, 11

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.*,
802 F. Supp. 2d 1078 (N.D. Ca. 2011) ..............................................................19

STATUTES

47 U.S.C. § 230.................................................................................................passim

California Business and Professions Code § 17200 *et seq.*.......................................4

California Code of Civil Procedure § 425.16 ...................................................passim

CONSTITUTIONAL PROVISIONS

United States Constitution, First Amendment ..................................................passim

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
DWT 20280448v4 0200500 000001

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### <u>INTRODUCTION</u>

China Free Press ("CFP") is not a proper party to this lawsuit.  Plaintiff Zhang Ziyi ("Zhang") improperly seeks to hold CFP liable merely for hosting a website on its servers.  Her claims are barred by the First Amendment and federal statutory law.

CFP is a non-profit organization devoted to promoting free speech and democracy in China, by performing a single function:  providing free web hosting to over a dozen websites on which Chinese dissidents report and comment on affairs in China (from SARS and avian flu to political corruption and human rights violations).  (Goettig Decl. ¶¶ 7-9.)  The Chinese government routinely blocks access to such sites, but internet users in China and elsewhere may access them through CFP's servers.  (*Id.*¶¶ 6-8.)   CFP has no editorial involvement with these websites; it merely provides the servers on which they reside.  (*Id.*¶ 10.)

Plaintiff Zhang brings this lawsuit over three articles in the Boxun News ("Boxun"), which she claims are defamatory.  However, the articles were written by the other defendant in this case, Weican Null Meng ("Meng") – *not* CFP – and published on Boxun by a company called Yeeka, LLC ("Yeeka") – *not* CFP.  In fact, CFP played no role in creating, selecting, screening, reviewing or editing the articles.  (Goettig Decl. ¶ 10; Meng Decl ¶ 14.)  Its *only* role in their publication was to provide the servers on which Boxun resides – in other words, to host Boxun – as it does for many other websites.  (Goettig Decl. ¶¶ 10, 14, 15; Meng Decl. ¶¶ 13, 14.)  It has no involvement whatsoever in operating Boxun or developing Boxun's content.  (*Id.*)  While Plaintiff attempts to premise her claims against CFP on Meng's involvement with both Yeeka/Boxun and CFP, she has not adequately alleged and cannot possibly establish any basis for imposing liability on CFP.

California's anti-SLAPP statute expressly bars lawsuits challenging not only free speech, but conduct in furtherance of free speech.  There can be no question that CFP's challenged conduct is in furtherance of Boxun's political reporting,

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE
DWT 20280448v4 0200500-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

which is core First Amendment activity.  As such, the statute requires plaintiff to establish, with competent evidence, the probability that she will prevail on the merits.  She cannot do this.

*First*, Section 230 of the Communications Decency Act, 47 U.S.C. § 230, immunizes service providers from claims that seek to hold them liable as the publisher or speaker of another party's content.  Again, CFP is merely a service provider for Boxun, with no involvement in its content.  (Meng Decl. ¶¶ 13, 14; Goettig Decl.  ¶¶ 10, 14, 15.)  It is plainly not a content provider and may not be sued as one.  *See* Section II.A, *infra*.

*Second*, CFP is not an "alter ego" of Yeeka, Boxun or Meng.  As set forth in detail below, CFP and Yeeka (the corporate home for Boxun) have separate missions, operations, principals, staff, funding, finances and offices.  (Meng Decl. ¶¶ 13-20; Goettig Decl. ¶¶ 7-19.)  The only exception to this is that Meng is a principal of both entities – but he does the very different work of the two entities with separate colleagues and separate funding, in separate offices.  (*Id.*)  It is well-established that merely having an overlapping officer or director is not enough to establish alter ego status.  There are no indicia of control, overlap, commingling of finances or misuse of the corporate form which would justify piercing the veil.  *See* Section II.B, *infra.*

*Third*, CFP did not act with actual malice – the Constitutionally-mandated standard of fault applicable to this case.  A service provider's mere hosting of a website over which it has no control and in whose content it has no involvement, falls far short of this heightened standard of fault.  *See* Section II.C, *infra*.

In short, Plaintiff cannot establish her burden of showing a probability of prevailing on her claims against CFP, and they should be stricken.

///

///

///

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The identities and relationships of the defendants, about which there can be no serious dispute, are central to this motion.

### Meng

Defendant Meng is a native of Anguo in Hebei Province, China.  (Meng Decl. ¶ 2.)  He was educated and worked in China before emigrating to the United States in 1996 to continue his graduate education.  (*Id.*¶¶ 2-4.)  In the United States, he received degrees in information systems and business, and a journalism fellowship; served as the Chief Technology Officer at Thinkersgroup, a high-tech company in Long Island; was a website consultant for two human rights organizations – Human Rights Watch and Human Rights in China; and started his own news reporting website, Boxun, beginning in 2000, to report on political and human rights issues in China.  (*Id.*¶¶ 6-7.)  Boxun has been a major source of uncensored news in China since its inception, providing in-depth coverage of human rights violations. (*Id.*¶ 6.)

### Yeeka

In 2006, Meng formed Yeeka, a limited liability company that publishes his news  reporting website, Boxun, and may, in the future, publish other websites that he develops.  (Meng Decl. ¶ 10.)  Meng is the owner and administrator of Boxun, and serves as one of its four editors.  (*Id.*¶ 11.)   Yeeka also has about 30 reporters – most of whom are based in China.  (*Id.*)[4]

### China Free Press

A non-profit dedicated to promoting free speech by supporting writers and reporters in China, CFP provides free web hosting to twelve well-known websites for Chinese dissidents, including newcenturynews.com, chinesepen.org, msguancha.com, weiquanwang.org, Boxun and others.  (Goettig Decl. ¶ 8.)  Websites associated with CFP have broken news stories about some of the most

---

[4] Additional information about both CFP and Yeeka is set forth in Section II.B.2, *infra.*

3

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

prominent newsworthy incidents in China, including the SARS scandal, the avian flu outbreak, and the complicity of Yahoo! in China's arrest of Internet dissidents. (*Id.*¶ 9.)  CFP is fully funded by grants from the National Endowment for Democracy and overseen by a Board of prominent figures in the arenas of human rights advocacy, technology and media.  (*Id.*¶¶ 12-13.)

### The Articles

In February 2012, Meng began following and reporting on the political scandals surrounding Bo Xilai, the high-ranking Chinese Central Communist Party official, in the pages of Boxun.  (Doc. No. 21-1, ¶¶ 7-9; 20-21.)

The complaint arises from three articles in Boxun, dated May 28, May 30 and June 3, 2012.  (Doc. No. 1, Complaint ¶¶ 10-12 and Exs. A-C.)  The Articles reported that Zhang was paid substantial sums of money to sleep with Bo Xilai, Xu Ming and certain other senior officials and billionaires in China, that she was the subject of a government investigation, and that she had been prohibited from traveling out of China.  (*See id.* Exs. A-C.)  Given the accusations involving high-ranking Chinese officials, particularly one who was the subject of other recent scandals, the allegations about Zhang were of substantial public interest.

### This Lawsuit

On June 14, 2012, Zhang filed this action against Meng and CFP, asserting claims of libel per se, false light, intentional and negligent interference with prospective economic advantage and unlawful business practices in violation of California Business and Professions Code Section 17200 *et seq*.  (Doc. No. 1.)  On July 16, CFP answered the complaint, denying liability and asserting a number of affirmative defenses.  (Doc. No. 11.)

On August 15, Meng moved to dismiss for lack of personal jurisdiction, and on August 17, Meng moved to strike Plaintiff's complaint under California Code of Civil Procedure Section 425.16, the "anti-SLAPP" statute, on the grounds that Meng's conduct (1) was made in furtherance of his rights of petition or free speech;

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(2) was connected to an issue of public interest; and (3) was protected by the First Amendment, as (a) Plaintiff could not satisfy the "actual malice" standard; and (b) Meng's confidential sources are entitled to anonymity.

The parties have submitted a joint proposed case management plan, and have exchanged initial disclosures.  No other discovery has taken place yet.

## ARGUMENT

Recognizing that meritless lawsuits may have a pernicious effect on speech rights, the United State Supreme Court has observed that "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution [of a lawsuit], unaffected by the prospects of its success or failure." *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965).  Because "the costs of a successful defense can be the same or greater than what the damage awards would have been," *Suzuki Motor Corporation v. Consumers Union of U.S.*, 330 F.3d 1110, 1143 (9th Cir. 2003), courts have observed that publishers of expressive works "will tend to become self-censors" unless they "are assured of freedom from the harassment of lawsuits." *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966).

In keeping with these principles, the California Legislature enacted the anti-SLAPP statute to check a "disturbing increase" in suits that "chill the valid exercise of the constitutional right[] of freedom of speech," and "to nip SLAPP litigation in the bud[,]" by quickly disposing of claims that target the exercise of free-speech rights. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042, 61 Cal. Rptr. 2d 58 (1997).  The statute provides that any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless . . . the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. Proc. § 425.16(b)(1).  Section 425.16 "shall be

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

construed broadly."  Cal. Code Civ. Proc. § 425.16(a)(1); *Briggs v. Eden Council*, 19 Cal. 4th 1106, 1120-21, 81 Cal. Rptr. 2d 471 (1999).

A two-step process determines whether a cause of action must be stricken under Section 425.16.  *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d 530 (2002).  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity."  *Id*.  To make this showing, the defendant must demonstrate that the plaintiff's claim arises from actions by the defendant that "fit[] one of the categories spelled out in … section 425.16, subdivision (e)."  *Id*.  Under subdivision (e)(4), the statute protects "any … conduct [by the defendants] in furtherance of the exercise of the constitutional right … of free speech in connection with … an issue of public interest."  Second, if defendant makes this threshold showing, the burden shifts to plaintiff to establish, with competent evidence, "a probability that [plaintiff] will prevail on the claim[s]."  Cal. Code Civ. Proc. § 425.16(b)(1).  If a plaintiff cannot meet that burden, the court must dismiss their lawsuit <u>with prejudice</u>.  *Id*.

In this case, as is demonstrated below, CFP readily meets its burden of showing that this lawsuit arises from the exercise of protected speech on an issue of "public interest," and Plaintiff cannot meet her burden of establishing a probability of prevailing on her claims.

## I.  PLAINTIFF'S CLAIMS ARISE FROM CHINA FREE PRESS' CONDUCT IN FURTHERANCE OF FREE SPEECH IN CONNECTION WITH ISSUES OF PUBLIC INTEREST

The first prong of the anti-SLAPP statute contains two components:

*First*, the activity the plaintiff is challenging must have been conducted "in furtherance" of the exercise of free speech rights.  Cal. Code Civ. Proc. § 425.16(b)(1) & (e).  "By its terms, this language includes not merely actual exercises of free speech rights but also conduct that furthers such rights."  *Hilton v. Hallmark Cards*, 580 F.3d 874, 883-84 (9th Cir. 2009).  While California courts have not drawn the "outer limits" of activity that furthers the exercise of free speech

6

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

rights, they have interpreted the requirement loosely.  *Id.*  Here, Plaintiff's claims against CFP arise from CFP's hosting of the Boxun website and making the site available to the public.  CFP unquestionably engaged in conduct "in furtherance" of Boxun's speech by hosting Boxun's site on its servers.

*Second*, the speech must have been made "in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc. § 425.16 (e)(4).  It is well established that the determination of what constitutes an issue of "public interest," "like all of section 425.16, is to be construed *broadly*…."  *Seelig v. Infinity Borad. Corp.*, 97 Cal. App. 4th 798, 808, 119 Cal. Rptr. 2d 108 (2002) (emphasis added); *see also* Cal. Code Civ. Proc. § 425.16(a) (Section 425.16 "shall be construed broadly").  In short, an issue of public interest "is any issue in which the public is interested."  *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1043, 72 Cal. Rptr. 3d 210 (2008).  "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute – *it is enough that it is one in which the public takes an interest*."  *Id.* (emphasis added).  "[S]ocial or even low-brow topics may suffice."  *Hilton*, 580 F.3d at 886.

Articles connecting an international film star to the central figures in a corruption scandal reaching the highest levels of Chinese government surely relate to issues of public interest.  Indeed, even if the alleged affairs did *not* involve any public officials, the mere fact that Zhang is a "person…in the public eye" and that her career is "of concern to a substantial number of people" suffices to make these stories a matter of public interest.  *Hilton*, 580 F.3d t 887.  Plaintiffs have alleged as much.  (*See* Complaint ¶ 2 [Zhang is "an international motion picture actress"], ¶ 8 [she has appeared in numerous films, grossing over $1 billion worldwide and won many awards], ¶ 9 [she has appeared in numerous commercials, has an "excellent reputation throughout the world" and has been listed as one of the world's most influential people].)  If a caricature of a celebrity on a greeting card (*Hilton*) or a caustic discussion of a reality-television program about marrying millionaires

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(*Seelig*) qualify as matters of "public interest," clearly a scandal involving famous figures from the entertainment and political worlds fall within the broad scope of topics covered by the SLAPP statute.

For these reasons, Plaintiff's claims are subject to a special motion to strike under Section 425.16(e)(4).

## II.     PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON HER CLAIMS AGAINST CFP

Because CFP's conduct plainly falls within the scope of Section 425.16, the burden shifts to Plaintiff to present admissible evidence showing that she has a probability of success on the merits of her claims.  Cal. Code Civ. Proc. § 425.16 (b)(1); *Macias v. Hartwell*, 55 Cal. App. 4th 669, 675, 64 Cal. Rptr. 2d 222 (1997). To satisfy this burden, it is not sufficient that Plaintiff's Complaint survive a state-court demurrer.  *Navellier v. Sletten*, 106 Cal. App. 4th 763, 776, 131 Cal. Rptr. 2d 201 (2003).  Instead, the Court applies a summary judgment-like standard.  *Taus v. Loftus*, 40 Cal. 4th 683, 714, 54 Cal. Rptr. 3d 775 (2007).   Plaintiff's claims must be "supported by sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Id*. at 713-14. Plaintiff cannot rely on the bare allegations contained in her own pleading, but must "'establish evidentiary support for [her] claim.'" *Id*. at 775-76 (citation omitted); *Equilon Enterprises v. Consumer Cause*, 29 Cal. 4th 53, 67, 124 Cal. Rptr. 2d 507 (2002) (plaintiff must provide sufficient evidence, not theories in the complaint, to permit the court to determine whether he can prevail).  If Plaintiff fails to satisfy her evidentiary burden, the court must strike the Complaint.  Cal. Code Civ. Proc. § 425.16(b)(1).

For the reasons set forth below, Plaintiff cannot meet her burden and the Court must dismiss the action as to CFP.

///

///

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**A.**     **Section 230 of The Communications Decency Act Bars Plaintiffs' Claims Against CFP**

As set forth above, CFP is the host – not the author or editor – of the Boxun news site.  It has no involvement whatsoever with the content of the websites for which it provides hosting services, and it cannot be held liable based on their content.

Under Section 230, a defendant is immune from state-law liability if, like CFP, it is a "provider" or "user" of "an interactive computer service" that has published allegedly unlawful "information provided by another."  47 U.S.C. § 230(c), (e).  Congress enacted section 230 to promote "the continued development" of "interactive computer services and other interactive media" and "preserve the vibrant and competitive free market that presently exists" for these services.  47 U.S.C. § 230(b)(1), (2).  To that end, it "made a policy choice … not to deter . . . speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran v. America Online, Inc*., 129 F.3d 327, 330-31 (4th Cir. 1997).  Thus, Section 230 precludes courts from allowing claims against service providers for information originating with others.  This case falls squarely within Section 230 because it arises from CFP's role providing a hosting service for sites created by third parties.

For a finding of immunity, Section 230 requires that "(1) the defendant be a provider or user of an interactive computer service; (2) the cause of action treat the defendant as a publisher or speaker of information; and (3) the information at issue be provided by another information content provider." *Gentry v. eBay, Inc*., 99 Cal. App. 4th 816, 830, 121 Cal. Rptr. 2d 703 (2002); *see also Universal Comm'n Sys., Inc. v. Lycos, Inc*., 478 F.3d 413, 418 (1st Cir. 2007); *Batzel v. Smith*, 333 F.3d 1018, 1028-30 (9th Cir. 2003).  All three elements are present here.

*First*, CFP is a provider of an interactive computer service.  An "interactive computer service" is "any information service, system, or access software provider

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet….”  47 U.S.C. § 230(f)(2).  “[C]ourts have … adopt[ed] a relatively expansive definition of ‘interactive computer service.’”  *Batzel*, 333 F.3d at 1028-30.  There is no question that CFP is an information service that “provides or enables computer access by multiple users to a computer server.”  It provides access by hundreds of thousands of users to its servers, so that they can read the websites that CFP hosts.  (Goettig Decl. ¶ 8.)

*Second*, Plaintiff seeks to treat CFP as the publisher or speaker of content provided by a third party – here, the Boxun news website.  See 47 U.S.C. §§ 230(c)(1), (e)(3).  “[W]hat matters is not the name of the cause of action … [but] whether [it] inherently requires the court to treat the defendant as the ‘publisher or speaker’ of content provided by another.”  *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1101-02 (9th Cir. 2009).  The Complaint repeatedly treats CFP as the publisher of the Articles, and seeks to hold it liable for defamation and other torts based on their content.  (*See, e.g.,* Complaint ¶¶ 11-12, 15-18, 19-47.)

*Third*, CFP is not the “information content provider” of the Articles.  An “information content provider” is “any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.” 47 U.S.C. § 230(f)(3).  Courts have adopted a “restrictive definition of ‘information content provider.’”  *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1123 (9th Cir. 2003).  A service provider does not become a content provider merely by making other entities’ content available.  Indeed, even where the service provider “has an active, even aggressive role in making available content prepared by others,” *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998), such as where a service provider selects material for publication or engages in light editing, Section 230 applies. *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) (provider’s “minor alterations” to defamatory

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

material contributed by third party do not "rise to the level of 'development'" necessary for liability); *Zeran*, 129 F.3d at 330 ("lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred"); *Blumenthal*, 992 F. Supp. at 52 (provider's exercise of "editorial control" over defamatory third-party content fell within immunity).

Here, CFP merely makes the content available on its servers without reviewing, selecting or editing it, (Goettig Decl. ¶ 10; Meng Decl. ¶ 14), putting CFP well within the core area of Section 230's protection. *See Parisi v. Sinclair*, 774 F. Supp. 2d 310, 318-21 (D.D.C. 2011) (Barnes & Noble is internet service provider, not information content provider, of book descriptions posted on website); *Chicago Lawyers' Committee for Civil Rights Under the Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 698-99 (N.D. Ill. 2006) (Craigslist is not an information content provider of discriminatory advertisements on its site); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1117 (W.D. Wash. 2004) (Amazon is not an information content provider of content posted by third-party vendors).

Because CFP has satisfied all three elements of Section 230 immunity, all of Plaintiff's claims against it should be dismissed.

## B.  Plaintiff Cannot Show that CFP is the Alter Ego of Meng

Plaintiff seeks to clear the insuperable hurdle of Section 230 by arguing – in a wholly conclusory manner with no supporting factual allegations – that CFP is the "alter ego" of defendant Meng or non-party Yeeka.  (Complaint ¶ 7.)  Plaintiff has signaled its intent to add Yeeka, the owner and publisher of Boxun, as a party and to take "alter ego discovery" on the relationships between Meng, Boxun, Yeeka and CFP.  (Doc. No. 22 at 4-5, 9.)  Yet, regardless of whether she claims that CFP is the alter ego of Meng, Boxun or Yeeka, she has not and cannot satisfy her burden of providing evidence which would establish a probability of success. Plaintiff asks the Court to pierce the veil and to keep an unrelated party in this litigation, without

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

providing a semblance of the required prima facie showing.  The anti-SLAPP statute prohibits such an unwarranted leap in Plaintiff's favor.[5]

"Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors." *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993, 41 Cal. Rptr. 2d 618 (1995). "The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation." *Roman Catholic Archbishop v. Superior Court*,15 Cal. App. 3d 405, 411, 93 Cal. Rptr.  338 (1971). Courts have referred to Plaintiff's claim as "reverse piercing," because*,* instead of seeking to set aside the corporate form in order to hold the controlling individual or entity liable for the acts of the corporation, Plaintiff seeks to hold CFP liable for the alleged wrongdoing of Meng and/or  Boxun/Yeeka.[6]  *See Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 254, 625 S.E. 2d 800, 804 (2006) (describing "reverse piercing," as "where one entity is the alter-ego, or mere instrumentality, of another entity, shareholder, or officer, the corporate veil may be pierced to treat the two entities as one and the same, so that one cannot hide behind the other to avoid liability.").  For the reasons set forth below, a review of the factors relevant to the

---

[5] *Higher Balance, LLC v. Quantum Future Grp., Inc.,* No. 08-233-HA, 2008 WL 5281487 (D. Or. Dec. 18, 2008), which considered a motion brought under Oregon's anti-SLAPP statute, is instructive.  The plaintiff in *Higher Balance* sought to hold a corporation that financed and hosted an online discussion forum liable for statements made on that forum by the corporation's vice-president, Laura Knight-Jadczyk.  *Id.* at *7.  In an attempt to evade the broad immunity of Section 230, plaintiff, like Zhang here, made the unfounded allegation that the corporation was Knight-Jadczyk's alter ego (and therefore the postings at issue were not made by "another content provider" within the meaning of Section 230).  *Id* at *7-8.  Despite evidence that the corporation was "associated with Knight-Jadczyk through financial ties, location and Knight-Jadczyk's conduct" in a way that suggested "some measure of control over general operations," the court rejected the alter ego argument, finding that plaintiff failed to show "control over the specific conduct at issue," that is, the allegedly defamatory posts.  *Id.* at *8-9.

[6] CFP does not suggest, by this motion and/or argument, that Plaintiff has alleged viable claims against Defendant Meng, Boxun or Yeeka LLC.

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"alter ego" inquiry makes it plain that Plaintiff's theory is untenable and unsupported by the evidence. Further discovery could not alter this conclusion.

## 1.    Choice of Law

A court sitting in diversity in the Ninth Circuit applies the forum state's choice of law analysis. *Liew v. Official Receiver and Liquidator*, 685 F.2d 1192 (9th Cir. 1982). California's "governmental interests" test thus determines which state's law should apply to the alter ego liability of CFP. *See Wehlage v. Empres Healthcare, Inc*., 821 F. Supp. 2d 1122, 1129 (N.D. Cal. 2011). Under the governmental interests analysis, the court will first determine whether there is a true conflict between the laws of the two jurisdictions: here, California (the forum state) and North Carolina (the state of incorporation). Where there is a conflict, the court will proceed to the "governmental interest" step, weighing the interests of the two states. *Coufal Abogados v. AT&T, Inc*., 223 F.3d 932, 934 (9th Cir. 2000).

### a.    California Law

Under California law, a court will pierce the corporate veil if (1) if "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased," and (2) "an adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), quoting *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993). In performing this analysis, California courts look to a number of "alter ego factors," including:

> [i] the commingling of funds and other assets; [ii] identical
> equitable ownership in the two entities; [iii] observation of
> corporate formalities and the segregation of corporate records;
> [iv] use of the same offices and employees; [v] identity of
> directors and officers; [vi] sole ownership of all of the stock in
> a corporation by one individual or the members of a family;
> [vii] inadequate capitalization; [viii] failure to maintain arm's

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

length relationships among the related entities; [ix] the use of a
corporation as a mere shell, instrumentality or conduit for a
single venture or the business of an individual or another
corporation; and [x] the manipulation of assets and liabilities
between entities so as to concentrate the assets in one and the
liabilities in the other.

*In re Hydroxycut Marketing and Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1122
(S.D. Cal. 2011) (citation omitted).  On the second prong, California requires "some
form of misconduct or injustice to justify piercing the corporate veil."  *Id.*; *see also
VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 121 Cal. Rptr.
2d 1 (2002) ("Even if the unity of interest and ownership element is shown, alter ego
will not be applied absent evidence that an injustice would result from the
recognition of separate corporate entities.").

### b.   North Carolina Law

North Carolina applies the "instrumentality rule," which requires the plaintiff
to prove the following three elements:

(1) Control, not mere majority or complete stock control, but
complete domination, not only of finances, but of policy and
business practice in respect to the transaction attacked so that
the corporate entity as to this transaction had at the time no
separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to
commit fraud or wrong, to perpetrate the violation of a statutory
or other positive legal duty, or a dishonest and unjust act in
contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately
cause the injury or unjust loss complained of.

14

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E. 2d 326, 330 (1985).  On the first prong, courts have considered factors such as inadequate capitalization; failure to comply with corporate formalities; complete domination and control of the corporation so that it has no independent identity; and "excessive fragmentation of a single enterprise into separate corporations."  *Id.* at 455.  "Piercing the corporate veil is a drastic remedy and should only be invoked in an extreme case where necessary to serve the ends of justice."  *Best Cartage, Inc. v Stonewall Packaging, LLC*, 727 S.E. 2d 291, 300 (N.C. App. 2012).

### c.    Governmental Interests Analysis

While both jurisdictions consider similar "control" or "alter ego" factors and require proof that recognition of the corporate form would result in fraud, harm or injustice, the North Carolina standard is arguably more rigorous in that plaintiff must prove proximate cause.  Therefore, there is, at least arguably, a conflict between the laws of the two States.[7]  However, regardless of which state's law is applied, the outcome of the analysis is the same.

///

///

---

[7] In the case of alter ego claims and veil piercing generally, many jurisdictions have found that the state of incorporation has the greater interest.  *See Trans-World Int'l Inc. v. Smith-Hemion Prod., Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997) (collecting cases); *Schlumberger Logelco, Inc. v. Morgan Equipment Co.*, No. C 94-1776 MHP, 1996 WL 251951, at *3 (N.D. Cal. May 3, 1996) (finding, under the governmental interests analysis, that the state of incorporation has "a substantial interest in determining whether to pierce the corporate veil of one of its corporations"); *Wehlage v. Empres Healthcare Inc.*, 821 F. Supp. 2d 1122, 1130 (N.D. Cal. 2011) (noting that California's interest in "preventing corporate entities from escaping liability with an unwarranted corporate shield" was adequately mitigated through application of other state's alter ego law).

There are at least two Ninth Circuit cases stating that courts "apply the law of the forum state in determining whether a corporation is an alter ego of an individual."  *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), citing *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir.1993).  However, as the district court noted in *SEC v. Vaccallo*, No. Civ. S-9-0665, -- F. Supp. 2d --, 2012 WL 1868559, at *3 (E.D. Cal. May 22, 2012), "in both [of these] cases the forum state was also the state of incorporation.  It is not clear that the same rule would apply if the states were different."

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## 2.   Alter Ego Liability Cannot Be Imposed on CFP Under California or North Carolina Law

Plaintiff cannot prevail on her theory that CFP is the alter ego of either Meng or Yeeka, under either California or North Carolina law, for several reasons.

As an initial matter, Plaintiff's Complaint does not even allege facts that would support such a finding.  *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007).  In the Complaint, Plaintiff alleges that:

> there exists, and at all times existed, a unity of ownership
> between defendant China Free Press and defendant Meng, such
> that any individuality and separateness between them has
> ceased.  China Free Press and Meng are, and at all other times
> were, the alter ego of each other.  Under the circumstances,
> adherence to the fiction of the separate existence of defendants
> China Free Press and Meng, as distinct from one another, would
> promote injustice by protecting one from the prosecution of their
> own wrongful acts committed under the name of the other.

(Complaint ¶ 7.)  This "allegation" is nothing more than a recitation of the legal standard applicable to alter ego status under California law and does not further Plaintiff's claim.  *See, e.g., Nichols v. Brown*, -- F. Supp. 2d --, 2012 WL 1604852, at *4 (C.D. Cal. May 7, 2012) ("The court does not have to accept as true mere legal conclusions.  . . .  'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'") (quoting *Iqbal*, 556 U.S. at 674).  The remaining allegations in Plaintiff's complaint utterly fail to address CFP's alleged role or to support her veil piercing/alter ego argument in any way.  Instead, Plaintiff incorrectly attempts to attribute the alleged acts of

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

other defendants to CFP, without any legal or factual basis.  (*See, e.g.,* Complaint ¶¶ 3, 11-12, 15-18, 19-47.)[8]

Further, even if Plaintiff does attempt to put forth admissible evidence in response to this motion, she cannot prevail on her alter ego theory because none of the alter ego or control factors are present in this case.  Although Meng founded both CFP and Yeeka, they are separate entities in every sense, with separate accounts, books, offices, personnel, operations and purposes.  They are separately controlled and separately financed.  More specifically:

- Missions:  As mentioned above, CFP is a non-profit devoted to promoting free speech by supporting writers and reporters in mainland China, and thereby supporting Chinese reform efforts.  (Goettig Decl. ¶ 7.)  It does this by hosting political and human rights-oriented websites that would not be permitted to operate in China.  (*Id.* ¶¶ 6-8.)  Yeeka is a for-profit corporation organized to publish Boxun.  (Meng Decl. ¶ 13.)

- Operations:  CFP hosts websites operated by Chinese dissidents and publishes two sites of its own:  Chinafreepress.org and Canyu.org.[9] (Goettig Decl. ¶ 11.)  CFP has no involvement in Yeeka's operations; it does not publish and has no editorial control over Boxun.  (*Id.* ¶¶ 10-19; Meng Decl. ¶¶ 14-21.)  Likewise, Yeeka is not involved in CFP's activities in any way.  (*Id.*)  In short, neither entity controls or manages the other or serves as a "shell" or instrumentality for the other; neither entity uses the other to disguise its actions or to avoid responsibility for its conduct.  (Meng Decl. ¶ 21.)

---

[8] For instance, Plaintiff incorrectly states that China Free Press "does business as" Boxun News and "runs a blog using the web address www.boxunblog.com." (Complaint ¶ 3.)  These statements are false.  The news site Boxun is owned and published by Yeeka, a Delaware for-profit corporation that has no relationship to CFP beyond the fact that CFP hosts its website.  (Meng Decl. ¶¶ 10, 13.)

[9] There is no allegation that the articles in question were published on either of these sites; they were not.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- <u>Management/Personnel</u>:  CFP is governed by a Board of Directors, with a staff of four independent contractors.  (Goettig Decl. ¶¶ 13, 16.)  None of CFP's independent contractors do any work for Yeeka/Boxun.  (*Id.*; Meng Decl. ¶ 15.)  With the exception of Meng, none of the members of CFP's Board of Directors are involved in any way in Yeeka/Boxun – and Meng's involvement is completely outside of the scope of his duties as a CFP Director.  (Goettig Decl. ¶ 14; Meng Decl. ¶ 14.)  Yeeka/Boxun is administered by Meng, who is also one of its four editors, and has about 30 reporters – most in mainland China and a few in Hong Kong and New Zealand.  (Meng Decl. ¶ 11.)  All of these staff members are independent contractors; none of them do any work for CFP.  (Goettig Decl. ¶ 16; Meng Decl. ¶ 11.) Yeeka/Boxun has different accountants and attorneys than CFP. (Goettig Decl. ¶ 18; Meng Decl. ¶ 20.)  ***In short, other than Meng, the two entities have no officers, directors, employees or contractors in common.***

- <u>Funding</u>:  Both entities are adequately (and separately) funded.  CFP has been fully funded by grants from the National Endowment for Democracy since 2005.  (Goettig Decl. ¶ 12.)  The annual grant amount is currently $220,000.  (*Id.*)  Yeeka is fully funded by a grant from a different source – a non-profit based in France which has no connection to the National Endowment for Democracy or CFP – in the amount of $117,000 per year. (Meng Decl. ¶ 18.)

- <u>Accounts/Books</u>:  Yeeka and CFP have separate bank accounts – a requirement of their respective grantors – and their books and records are kept separately.  (Goettig Decl. ¶ 17; Meng Decl. ¶ 19.)   None of their funds are commingled or diverted from one entity to the other.  (*Id.*)  Neither entity has paid the expenses or debts of the other.  (*Id.*)  Salaries and other expenses for each entity are paid from its own account.  (*Id.*)

18

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Meng is the only person who draws a salary from both entities.  (Meng Decl. ¶ 19.)

- Offices:  The two entities have different offices.  Yeeka is operated out of Meng's home in Durham, North Carolina.  (Meng Decl. ¶ 16.)  CFP has a rented office space, also in Durham.  (Goettig Decl. ¶ 19.)  Yeeka and CFP share only a post office box. (*Id.*)

In short, CFP is a completely separate and independent entity from Yeeka, the owner and publisher of Boxun, and has no role in writing, publishing or reviewing Boxun's content.

In fact, the only connections between Yeeka and CFP are that Meng, the principal of Yeeka/Boxun, currently serves as one of five members of CFP's Board of Directors and that Yeeka and CFP share a post office box.  (Goettig Decl. ¶¶ 13, 19; Meng Decl. ¶¶ 15-16.)  Numerous cases have found far more intertwined entities (with multiple board members and/or executives in common) not to be alter egos. *See, e.g., Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (finding that complete identity of board members and senior executives between parent and subsidiary insufficient to establish an alter ego relationship); *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A.,* 802 F. Supp. 2d 1078, 1094 (N.D. Ca. 2011) ("[T]he mere fact that a parent and subsidiary share board members, standing alone, is not enough to meet the alter ego . . .test") (citation and quotation omitted).[10]

Further, even if these facts were sufficient to meet the "control" element of the test, Plaintiff has not (and could not) allege that any wrongdoing or injustice will

---

[10] Meng's involvement with Yeeka/Boxun is also completely distinct from his role as a director of CFP.  (Goettig Decl. ¶ 14; Meng Decl. ¶ 14.)  Plaintiff cannot circumvent Section 230 and/or pierce the corporate veil merely because Meng is involved with both organizations.  *See Raggi v. Las Vegas Met. Police Dep't*, No. 2:08CV943 JCM, 2009 WL 653000 (D. Nev. Mar. 10, 2009) (Section 230 protects union from liability for members' on-line posts where members were not posting within the scope of union business).

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

be sanctioned if the Court recognizes CFP's corporate form, as required by the *second* step of the analysis under both California and North Carolina law.  *See, e.g., State ex rel. Cooper v. Ridgeway Brands Manuf., LLC*, 362 N.C. 431, 440-42, 666 S.E. 2d 107 ( 2008) (disregarding corporate form where corporation was "mere instrumentality of shareholder" and used as "a shield for his activities in violation of the declared public policy or statute of the State"); *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) ("[W]here a parent corporation uses its subsidiary 'as a marketing conduit' and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied.").  There is no evidence that CFP is being used to insulate any other defendant or entity from liability for the allegedly defamatory statements.  (Meng Decl. ¶ 21.)  Plaintiff herself has acknowledged this by bringing this action against Mr. Meng in his individual capacity.[11]

Thus, to the extent Plaintiff's claims against CFP are predicated on the notion that it is the alter ego of Yeeka or Meng, the motion to strike should be granted.

## C.    The First Amendment Bars the Imposition of Liability on CFP

The First Amendment also precludes the imposition of liability on CFP in this case.  Assuming the Court rejects Plaintiff's alter ego theory – as it should for the reasons set forth in the preceding section – Plaintiff cannot impute Meng or Yeeka's alleged fault to CFP.  She must prove actual malice as to each defendant.  *See, e.g., Masson v. New Yorker*, 881 F.2d 1452 (9th Cir. 1989), *aff'd in part*, 501 U.S. 496, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991) (analyzing issue of actual malice as to each defendant separately).  Plaintiff cannot remotely satisfy this requirement with respect to CFP.[12]

---

[11] Given this, Plaintiff will necessarily be unable to prove the third prong of the analysis under North Carolina law, *i.e.,* that the alleged wrongdoing and misuse of the corporate form was the proximate cause of the alleged injury to the Plaintiff.

[12] Even assuming, *arguendo*, that the Court found CFP to be Meng's alter ego and treated them as one and the same, the Complaint should still be dismissed for

20

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Since its decision in *New York Times Co. v. Sullivan*, the U.S. Supreme Court has recognized that "erroneous statement is inevitable in free debate and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need ... to survive.'" 376 U.S. 254, 271-72, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). To carve out an area of breathing space so that protected speech is not discouraged, the Supreme Court requires public figure plaintiffs[13] to establish that a false, defamatory statement was published with actual malice.[14]  *New York Times*, 376 U.S. at 279-80; *Masson*, 501 U.S. at 510; *see also Lohrenz v. Donnelly*, 350 F.3d 1272, 1274 (D.C. Cir. 2003).  The actual malice standard is a constitutional requirement intended to encourage "uninhibited, robust, and wide-open" debate on public issues, *New York Times*, 376 U.S. at 270, and requires a public-figure plaintiff to prove that the defendant published a false statement "with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Masson*, 501 U.S. at 510 (quoting *New York Times*, 376 U.S. at 279-80).  As an additional safeguard, the First Amendment requires that plaintiffs prove actual malice by "clear and convincing" evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  This standard of proof imposes a "heavy burden [on plaintiffs], far in excess of the preponderance sufficient for most civil

---

the reasons set forth in Defendant Weican Null Meng's Special Motion to Strike Under California Civil Procedure § 425.16, which we incorporate herein by reference.  (Doc. No. 21 at 18-28.)

[13] As Meng has set forth, the actual malice standard applies because Plaintiff is a public figure.  (Doc. 21 at 18-20.)

[14] Plaintiff's duplicative false light, intentional and negligent interference with prospective economic advantage, and unlawful business practices claims are barred by the same defenses.  The United States Supreme Court has held that a plaintiff may not avoid constitutional defenses to a defamation claim by re-styling that claim as one for invasion of privacy, false light, or any other tort.  *See, e.g.*, *New York Times*, 376 U.S. at 269 (constitutional protection does not depend on the label given to cause of action); *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988); *see also Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1136, 212 Cal. Rptr. 838 (1985) (false light claim is a "duplication" of the libel claim and "hence must be dismissed as surplusage").

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

litigation." *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1252 (9th Cir. 1997).

Importantly, the actual malice inquiry is a subjective one, focusing solely on the defendant's actual state of mind "at the time of publication," and not an objective test focused on the reasonableness of the defendant's conduct. *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984); *Newton v. National Broadcasting Co.*, 930 F.2d 662, 668 (9th Cir. 1990) ("Actual malice consistently has been deemed subjective in nature, provable only by evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement."). "Mere negligence does not suffice" for actual malice, Masson, 501 U.S. at 510, nor does "an extreme departure from accepted professional standards of journalism[.]" *Newton,* 930 F.2d at 669. Rather, the term "[k]nowledge of falsity means simply that the defendant was actually aware that the contested publication was false." *Woods v. Evansville Press, Co., Inc.*, 791 F.2d 480, 484 (7th Cir. 1986). Similarly, to establish that the defendant published a statement with "reckless disregard" for the truth, the plaintiff must show "that the defendant actually had a 'high degree of awareness ... of probable falsity." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989). As explained by the Supreme Court, "reckless disregard" is not measured by a reasonableness standard:

> [Our] cases are clear that reckless conduct is not measured by what a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.

*St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L. Ed. 2d 262 (1968). Even "highly unreasonable conduct constituting an extreme departure from the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

standards of investigation and reporting ordinarily adhered to by responsible publishers" will not suffice to establish actual malice.  *Harte-Hanks Comm's, Inc. v. Connaughton*, 491 U.S. 657, 658, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989).

CFP's counsel are not aware of any court that has found a mere provider of servers or an on-line platform of any kind to be held liable for defamation.  In order to avoid making such providers into censors, courts have required a heightened level of "fault" to sustain a libel or similar action against "middle men" who make content available to others.  *See*, *e.g.*, *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 139 (2d Cir. 1984) ("First Amendment guarantees have long been recognized as protecting distributors of publications. . . .  Obviously, the national distributor of hundreds of periodicals has no duty to monitor each issue of every periodical it distributes.  Such a rule would be an impermissible burden on the First Amendment."); *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 318-21 (D.D.C. 2011) (online booksellers); *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 139 (S.D.N.Y. 1991) (host of online library, electronic bulletin boards, interactive online conferences, and topical databases); *Dworkin v. Hustler Magazine, Inc.*, 611 F. Supp. 781 (D. Wyo. 1985) (magazine distributor).

Actual malice cannot be implied and must be proven by direct evidence," which must "be such as to command the unhesitating assent of every reasonable mind."  *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 950, 52 Cal. Rptr. 2d 357 (1996).  A plaintiff opposing an anti-SLAPP motion must satisfy this clear-and-convincing-evidence standard.  *See, e.g., Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 275-78, 105 Cal. Rptr. 2d 674 (2001); *Sipple v. Foundation For Nat. Progress*, 71 Cal. App. 4th 226, 247, 83 Cal. Rptr. 2d 677 (1999); *Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1117, 57 Cal. Rptr. 2d 207 (1996).

Here, CFP has no oversight over articles that are published on the websites that it hosts, including those published on Boxun.  Meng did not disclose the fact that he intended to publish the Articles about Plaintiff, much less of the content of

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the Articles, to anyone associated with CFP prior to their publication. (Meng Decl. ¶ 14.) As such, even if the statements at issue are false, it is plainly impossible for CFP to have acted with actual malice at the time of publication – that is, with a subjective, actual awareness of the alleged falsity or a reckless disregard as to their truth or falsity. *Masson*, 501 U.S. at 510. Further, fundamental First Amendment principles counsel against the imposition of liability on these facts. Boxun is only one of twelve websites that CFP hosts and it alone has about 30 reporters, most in China. (Meng Decl.¶ 11; Goettig Decl. ¶ 8.) To hold CFP liable for content published on these websites would indeed turn CFP's role from service provider and host into that of censor – an idea that is antithetical to the First Amendment. *See, e.g.*, *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 129 (2d Cir. 1984).

Under such circumstances, Plaintiff cannot substantiate – much less with clear and convincing evidence – that CFP published the allegedly actionable statements with actual malice. Her claim against CFP thus fails and the motion to strike should be granted.

///
///
///
///
///
///
///
///
///
///
///
///
///

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## **CONCLUSION**

For the reasons set forth above, in the Complaint, and in the accompanying declarations, this Court should grant CFP's Special Motion to Strike the complaint in its entirety.


DATED: September 7 , 2012     DAVIS WRIGHT TREMAINE LLP
JAMES ROSENFELD (admitted pro hac vice)
LORING ROSE


By: _____/s/*James Rosenfeld*_____
             James Rosenfeld

Attorneys for Defendant
CHINA FREE PRESS
(erroneously sued herein as "China Free Press
doing business as Boxun News")

CHINA FREE PRESS' NOTICE AND MPO ISO SPECIAL MOTION TO STRIKE

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899