Marc J. Randazza (California Bar No. 269535)
Jason A. Fischer (California Bar No. 275469)
RANDAZZA LEGAL GROUP
ecf@Randazza.com
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com

Attorneys for Defendants,
*Weican Null Meng and Boxun News*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG ZIYI, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> CHINA FREE PRESS, INC., a North Carolina non-profit corporation doing business as BOXUN NEWS; WEICAN NULL MENG, an individual known as WATSON MENG and also WEICAN "WATSON" MENG; DOES 1-25, inclusive, <br><br> Defendants. | Case No. CV12-5216-DMG (PLAX) <br><br> **REPLY TO PLAINTIFF ZHANG ZIYI'S OPPOSITION TO DEFENDANT WEICAN NULL MENG'S *EX PARTE* MOTION FOR LEAVE TO SUPPLEMENT THE SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CIVIL PROCEDURE § 425.16** |

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

First and foremost, it is important for the Court to understand what this case is. This case is a SLAPP suit.[1]  The purpose of the case is to punish the Defendant for exercising his free speech rights; the end result is almost irrelevant. Accordingly, it is the Plaintiff's intent to make this case last as long as possible with as much expense to the Defendant as possible.  Once we understand that, we understand part of why the Plaintiff wishes to exclude Professor Ardia's expert report.  Once we understand the legal standards in play in this case, we understand it even more.

The plaintiff is, without a doubt, a public figure.  As a public figure, she must prove by clear and convincing evidence that the defendant knew the statements about her to be false, or that he harbored serious doubt as to the truth of the matter.  "[P]ublic figures . . . who sue for defamation must establish a probability that they can produce clear and convincing  evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578 (Cal. Ct. App. 2005).  The deposition testimony to date seems to conclusively remove any possibility of the Plaintiff meeting this standard.  **Exhibit A** at 34-53; **Exhibit B** at 26-31.  (Dkt 39-3)

Nevertheless, the Defendant operates a poorly-funded public service news organization representing the only reliable source of free information from behind communist China's wall of official censorship.  (Dkt 39-3)  If the case is resolved in the Defendant's favor early on, it will continue to be able to serve as the voice of the Chinese dissident community.  If it must endure unnecessary months of

---

[1] "SLAPP" stands for strategic lawsuit against public participation and is a lawsuit that is intended to censor, intimidate, and silence critics by burdening them with the cost of a legal defense until they abandon their criticism or opposition.

litigation, a victory in the case may be pyrrhic, as the cost of defense and the continued inability of its editor to perform his work may render it unable to continue operation.   California's Anti-SLAPP statute was designed to avoid this kind of event by allowing defendants to dispense with SLAPP suits early on in the case.  Cal. Code of Civ. P. § 425.16.  *See also Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003).   Unfortunately, when the Anti-SLAPP statute is employed in Federal Court, it fails to stop the case in its tracks while the court evaluates it – instead functioning as a Motion for Summary Judgment.   Accordingly, the only hope that the Defendant has of avoiding further punitive defense costs is front load the case with evidence supporting the position that the Plaintiff will never be able to show by clear and convincing evidence that anything said about her was <u>known</u> to be false or published with a reckless disregard for the truth.

Should the Anti-SLAPP motion fail, the case will continue, despite having no chance of eventually leading to a judgment in the Plaintiff's favor.  In fact, the case will wear on, and this court will eventually consider a subsequent motion for summary judgment again, after the Defendant has suffered through more months of abusive litigation.  This is what the Plaintiff wants.  She cannot prevail in this case, as Professor Ardia's Expert Report makes irrefutably clear.

However, she can pound the Defendants into bankruptcy by making sure that this litigation is as long and as arduous as possible.  Thus far, she has done so masterfully.  Mr. Meng has been deposed on three occasions.  One of his experts has been subjected to two.  The discovery in this case has been unnecessarily multiplied with costly inefficiency.  Now, the Plaintiff seeks to promote her goal with a further dilatory act – attempting to keep this Honorable Court from reviewing a document that will lay the Plaintiff's case bare, despite the fact that the Court can consider it along with the pending motion or as an exhibit to a subsequent motion, at a subsequent hearing.

If there were some reason to exclude the Expert Report from the case completely, one would not expect the Plaintiff to allow its entry into evidence without some kind of resistance.  However, there is no way to completely exclude the Report from the record.  Instead, the Plaintiff simply wishes to ensure that this case goes on longer, costs the Defendant more money, and thus achieving her goal – punish the Defendant for exercising his free speech and free press rights, despite the inevitable failure of the case.

Even if this were not a SLAPP suit, there would be good cause to allow the defendant to supplement its motion.  However, when deciding the instant motion, the court should take into account that this is an Anti-SLAPP motion.  The Court has a choice between two outcomes:

1)   Allow the Defendant to supplement his motion with Professor Ardia's report so that the Court may have a complete record when evaluating the Anti-SLAPP motion; or,

2)   Deny the Defendant the opportunity to supplement, so that the Defendant can simply file a new Anti-SLAPP motion, immediately thereafter, thus wasting party and judicial resources.

In the event that the Plaintiff credibly argues that she will be prejudiced by the first option, this can be easily remedied.  In fact, as discussed *infra*, the Defendant already offered to stipulate to a number of ways to accommodate any concerns.  The Plaintiff apparently prefers to needlessly multiply these proceedings with unnecessary motion practice – a hallmark of a SLAPP suit.

In the event that the Court is inclined to deny, it *may* be irrelevant.  If the court finds that the Anti-SLAPP motion should be granted, even without Professor Ardia's report, then no prejudice will come to the Defendant.   If the court admits Professor Ardia's report, yet denies the Anti-SLAPP motion, then seemingly neither party will suffer prejudice.  However, if the Court denies both motions,

then the Defendant will certainly suffer prejudice, as will the Plaintiff.  An Anti-SLAPP motion may be the subject of an immediate interlocutory appeal.  *Batzel*, 333 F.3d at 1025 (granting an immediate appeal of an anti-SLAPP motion to dismiss as a collateral order).  Both parties will then spend years awaiting an appellate ruling on this issue, when the case could have been resolved if only the Plaintiff had stipulated to the admission of the Expert Report, with the Defendant making reasonable accommodations – or if the Court had seen through the Plaintiff's maneuvers and saw fit to rule with as much information as possible before it.

Good cause exists to allow Defendant to file the recently acquired expert declaration as a supplement to its pending motion so the Court will have a full factual record in making its decision on the Defendant's Special Motion to Strike Under California Civil Procedure § 425.16.  (Dkt 21)  There is no good cause to deny it.

## 2.  FACTUAL ERRORS IN PLAINTIFF'S OPPOSITION.

At the heart of this matter, Plaintiff states that Defendant Meng accused "Plaintiff of being a high price prostitute." (Dkt 40 at 4)  Defendant Meng has not called Zhang Ziyi a "high price prostitute;" only Plaintiff's own attorneys and other media have referred to her in this manner.  In other words, the Plaintiff tries to color this motion with an inflammatory accusation.  Meanwhile, the Plaintiff refuses to acknowledge that it, quite simply, fabricated this "accusation."  **Exhibit A** at 24-27; **Exhibit B** at 12-23.

Plaintiff makes several additional notable errors. Plaintiff attempts to portray Defendant's disclosure of its experts as untimely, while acknowledging that Defendant provided Plaintiff with nearly two weeks' notice of Defendant's intent to utilize Mr. Ardia.  (Dkt 39-2)  Plaintiff falsely claims that "the only time [Meng]

offered to make Mr. Ardia available for deposition was November 28, 2012." (Dkt 40 at 2)  As shown in the record, counsel confirmed that Mr. Ardia was <u>available</u> on November 28, 2012.  The email clearly shows that the Plaintiff and Mr. Ardia could have discussed other dates – this was simply the one concrete date that Defendant secured for the Plaintiff.   The Plaintiff declined to so much as <u>ask</u> Professor Ardia whether he was otherwise available.   (Dkt 39-1)   Further, discrediting the Plaintiff's claim of prejudice, Defendant actually offered to <u>sacrifice</u> <u>his</u> <u>own</u> <u>time</u> <u>to</u> <u>reply</u> in order to attempt to help Plaintiff avoid any possible perception of prejudice.  The Defendant actually offered to sacrifice days from its own briefing schedule to give the Plaintiff more time.  In an email, counsel for the Defendant wrote:

> [Defendant] stipulate[s] that [Plaintiff's] opposition can be due a couple of days later than the current date of Nov. 30.  Say [Defendant] will stip that [Plaintiff] can file it on Monday morning, December 3rd, but that [Defendant's] Reply Brief will still be due on Dec. 7."  (Dkt 39-1 at 3)

Plaintiff refused this offer.   The Defendant offered to extend the hearing date.

> [Defendant] would be comfortable stipulating to pushing the hearing out, yet again so that [Plaintiff] will have time for all the discovery [Plaintiff] might want. (Dkt 39-1 at 3)

Plaintiff refused this offer, too.  Rather than consider either of these options or mention them in its opposition, Plaintiff simply ignored them.

Additionally, Plaintiff seems to present previous stipulations to delay as courtesies that were provided <u>by</u> <u>Plaintiff</u> <u>to</u> <u>Defendant</u> when the opposite is true. The Defendant agreed to these stipulations in order to allow Plaintiff to depose Defendant Meng on three separate occasions, despite Plaintiff's dilatory behavior

at the first two depositions.   The Plaintiff's counsel conducted Mr. Meng's depositions with a stunning degree of inefficiency.[2]  Plaintiff's counsel spent hours of deposition time on multiple extended breaks to telephone his office in Los Angeles (**Exhibit A** at 3-5, 19, 30-31 (despite Defendant being available from 10:00 a.m. until 4:30 p.m., deposition was only on the record for 1 hour and 58 minutes)); introduced "new" translations of articles with wording more favorable to the Plaintiff (**Exhibit B** at 3-10); and insisted that Meng, an American citizen involved in an American lawsuit in an American court testify in a foreign language (**Exhibit A** at 33).   On the occasion of Meng's *third* deposition, Meng finally insisted upon being deposed at his own attorney's offices, so that the Plaintiff's counsel would be less inclined to waste time.  This seemed to achieve its goal, as the third deposition took place in an orderly fashion.

## 3.   THE MOTION TO SUPPLEMENT HAD TO BE FILED QUICKLY.

California Civil Procedure § 425.16 requires any motion to strike under the grounds of the statute to be filed within sixty days of service of the complaint,

---

[2] During Mr. Meng's second deposition, counsel for both parties had an extended conversation regarding counsel for the Plaintiff's persistence in attempting to get the Defendant to reveal his sources.  **Exhibit A** at 5-18.  Despite having been previously alerted that Mr. Meng would not do so, Plaintiff's counsel spent valuable time attempting to extract this irrelevant information that could potentially endanger the lives of individuals in China.  Furthermore, any discussion regarding a protective order based upon the contents of the deposition should have happened prior to Mr. Meng's first deposition, and certainly prior to his second deposition.  This is not the only instance in which Plaintiff's counsel engaged in unnecessary discussion best reserved for communication between the parties through their attorneys, rather than in front of a witness during the deposition.  Plaintiff's counsel also forced the parties to expend time during the expert witness deposition to discuss translation discrepancies when the translations provided at the deposition did not comport with the translations attached to the complaint.  **Exhibit B** at 3-10.

absent discretionary leave of the court.  Cal. Civ. P. § 425.16 (f).  Experts like Professor Ardia are not available at any party's beck and call.  Thus, the Defendant was placed in the position of having to scramble and get the motion filed within the sixty-day limit with the evidence and expert reports available at the time.  As the case went on, the Plaintiff engaged in protracted discovery.  This provided an opportunity to retain Professor Ardia.  Once Defendant became aware that Professor Ardia was available, the Plaintiff was immediately informed.  The Defendant could not have secured this important report any sooner, acted more expeditiously, and offered any more courtesy.  Since the Plaintiff prefers the tactical advantage of excluding relevant and dispositive evidence, the Plaintiff declined to accept any courtesy.

## 4. DEFENDANT MENG HAS SHOWN GOOD CAUSE TO SUPPORT SUPPLEMENTING THE RECORD.

As outlined in Defendant Meng's initial request for leave to supplement the record, Defendant Meng is without fault in the current situation.  Defendant attempted to accommodate the Plaintiff with more than reasonable offers of extension.  The offers included extending the hearing date or simply giving the Plaintiff three days of the Defendant's briefing time, without extending the date. (Dkt 39-1 at 3)  Defendant informed Plaintiff of its intent to utilize David Ardia on November 9, 2012, as soon as Defendant knew that Mr. Ardia would be able to evaluate the case prior to the hearing on the Anti-SLAPP motion.  (Dkt 39-1; 39-2) Defendant secured one deposition date of November 28, 2012 and further provided Mr. Ardia's contact information to Plaintiff in order to allow Plaintiff to attempt to schedule an alternate date with Mr. Ardia.  (Dkt 39-1)  To the best of Defendant's knowledge, nobody from the Plaintiff's firm so much as attempted to schedule a date with Professor Ardia.  Furthermore, Defendant produced a draft of the declaration to Plaintiff on November 19, 2012 during Meng's third deposition.

(Dkt 39 at 6)  The Defendant provided the final report on the next day, November 20, 2012, less than two hours after it was transmitted to the Defendant.

Plaintiff relies upon Fed. R. Civ. P. 6(c)(2) and its requirement that supporting affidavits must be filed with the motion.  However, Plaintiff fails to recognize that requests to supplement the record are commonly approved, even with respect to motions brought under Cal. Civ. P. Code § 425.16.  *Graham-Sult v. Clainos*, Case No. C10-04877 2011 WL 2531201 at *1 (N.D. Cal. June 24, 2011) (granting defendant's motion to supplement record on Cal. Civ. P. Code § 425.16 motion, even when motion to supplement record was filed <u>after</u> hearing on motion).   In *Graham-Sult*, the court denied the plaintiff's objections to new evidence because of the evidence's relevance to the matter.  *Id.* at *3 n. 3; *see also Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050 SC, 2011 WL 843956 *3 (N.D. Cal. March 8, 2011) (submission of supplemental declarations allowed "in the interest of fairness"); *Banga v. Experian Information Solutions,* No. C-08-4147SBA, 2009 WL 1702052 *2 (N.D. Cal. June 17, 2009) (submission of supplemental declaration considered "in the interest of justice.").

The rule is that evidence available to a party prior to filing is not "newly discovered evidence" warranting reconsideration of summary judgment. *Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir.1985).  Here, this can be nothing but newly discovered evidence, obtained nearly three months after defendant filed his special motion to strike.  Moreover, the availability of this evidence was disclosed to Plaintiff practically in real time, as seen in Plaintiff's own submission – indicating Plaintiff had knowledge of Mr. Ardia's participation as an expert as early as November 9, 2012 and received an update on the subject matter of his report as early as November 14, 2012.

Rule 56(e)(1) specifically considers the court's ability to allow for supplementation of the record.  Fed. R. Civ. P. 56(e)(1); *Betz v. Trainer Wortham*

& Co., 610 F.3d 1169, 1171 (9th Cir. 2020). Indeed, even when a party's supplementation of the record does not affect the outcome of a motion for summary judgment – as Meng's special motion to strike is considered in this case – such supplementation is permitted. *Bell v. City of Los Angeles*, 835 F. Supp. 2d 836, 848 (C.D. Cal. 2011) (granting motion to supplement summary judgment record even when "the proposed evidence does not affect the resolution of defendants' motion for summary judgment").

However, in this case, it very likely will affect the pending motion. To defeat Meng's motion, Plaintiff must show a probability of prevailing on the merits of this case. This requires the Plaintiff to show with <u>clear</u> and <u>convincing</u> <u>evidence</u> that Meng's statements about Zhang Ziyi were made with actual malice – knowing of their falsity, or having reckless disregard for their truthfulness. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1167 (Cal. Ct. App. 2004). "[P]ublic figures . . . who sue for defamation must establish a probability that they can produce clear and convincing  evidence that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578 (Cal. Ct. App. 2005). In satisfying this standard, Plaintiff must show more than mere negligence, and that Meng himself entertained serious doubts about the truth of the matter. *St. Amant v. Thompson*, 390 U.S. 727 (1968). An examination of Mr. Meng's behavior by a law professor who specialized in his law practice in pre-publication review will be extremely probative to whether the Plaintiff can prove actual malice in this case.

Meng intends to rely upon Ardia's declaration for points separate from those covered in Hausch's testimony. Professor Ardia is a law professor with journalism experience, not a journalism professor. His perspective on the case is uniquely probative. At Mr. Meng's deposition and Ms. Hausch's deposition, Plaintiff introduced the standards of practice for the *Washington Post*. **Exhibit A** at 36;

**Exhibit B** at 24-25.  An expert who once conducted pre-publication review for the *Washington Post* will certainly bring a valuable perspective to the pending motion. (Dkt 39-3 at 3)

Finally, it is not for the Plaintiff to determine whether the Defendant has produced enough evidence so as not to be prejudiced.  Defendant intended to rely upon Ardia and disclosed this fact the moment he was aware that Ardia would be available.  (Dkt 39-1, 39-2)  Defendant further kept Plaintiff's counsel well informed of the pending timeline for Ardia's materials.  Any "prejudice" is self-inflicted, and Defendant has offered to stipulate to any number of cures for it.  If the Plaintiff prefers to keep the truth from the Court rather than permit key evidence to be considered, the Plaintiff must certainly be aware of the logical and legal bankruptcy of its case.

## 5.  THERE IS NO PREJUDICE IF DEFENDANT MENG IS PERMITTED TO SUPPLEMENT THE RECORD.

Plaintiff asserts that she will be prejudiced despite Defendant Meng's offers to stipulate to extensions, more discovery time, and even a sacrifice of Defendant's briefing time.  Plaintiff further asserts prejudice despite Defendant Meng's efforts to provide Ardia's declaration to Plaintiff as soon as it was received.  (Dkt 39-3)

As shown in the exhibits to Defendant Meng's request for leave to supplement, Meng has offered to Plaintiff the option of a short extension that would only decrease Meng's time to reply or the option of a longer extension pushing back the hearing schedule.  (Dkt 39-1; 39-2)  The Defendant actually offered to sacrifice days from its own briefing schedule to give the Plaintiff more time, as discussed *infra*.  (Dkt 39-1 at 3)  Plaintiff refused.  The Defendant offered to extend the hearing date, and the Plaintiff refused.  (Dkt 39-1 at 3)  Even in the Motion for Leave, the Defendant offered to stipulate to an extension. (Dkt 40 at 3) The Plaintiff seems to admit that this is appropriate.  However, simply stipulating

to this would not achieve the goals in a SLAPP suit – unnecessarily multiplying the proceedings in order to engage in censorship borne from financial attrition. Despite offering these accommodations to Plaintiff, Plaintiff refused to consider either option.

## 6.  CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant the *ex parte* application by either: (1) granting Defendant leave to supplement its pending summary judgment motion with David Ardia's declaration and report and deeming that declaration filed without any further action, or (2) in the alternative, granting Defendant relief from the scheduling order to file an amended motion with the Declaration of David Ardia and resetting the motion for hearing.


Dated November 28, 2012            Respectfully Submitted,
                                   RANDAZZA LEGAL GROUP


                                   _____
                                   Marc J. Randazza
                                   Jason A. Fischer
                                   Attorneys for Defendants,
                                   Weican Null Meng and Boxun News

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 28th day of November, 2012, I caused the document(s) entitled:

**REPLY TO PLAINTIFF ZHANG ZIYI'S OPPOSITION TO DEFENDANT WEICAN NULL MENG'S *EX PARTE* MOTION FOR LEAVE TO SUPPLMENT THE SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CIVIL PROCEDURE § 425.16**

and all attachments to be served by the Court's CM/ECF system.

 /s/ Marc J. Randazza
Marc J. Randazza