1  JOHN MASON - State Bar No. 51116
   jmason@glaserweil.com
2  PATRICIA L. GLASER - State Bar No. 55688
   pglaser@glaserweil.com
3  ADAM LEBERTHON - State Bar No. 145226
   aleberthon@glaserweil.com
4  LISA M. ZEPEDA – State Bar No. 231125
   lzepeda@glaserweil.com
5  GLASER WEIL FINK JACOBS
     HOWARD AVCHEN & SHAPIRO LLP
6  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
7  Telephone:  (310) 553-3000
   Facsimile:   (310) 556-2920
8
9  Attorneys for Plaintiff Zhang Ziyi

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  ZHANG ZIYI, an individual,              CASE NO.: cv 12-5216-DMG (PLAx)

14                                          **OPPOSITION OF PLAINTIFF**
                                            **ZHANG ZIYI TO DEFENDANT**
15                  Plaintiff,              **WEICAN NULL MENG'S MOTION**
                                            **TO DISMISS COMPLAINT FOR**
16          v.                              **LACK OF PERSONAL**
                                            **JURISDICTION PURSUANT TO**
17                                          **RULE 12(B)(2)**

18  CHINA FREE PRESS, INC., a North         **[Declarations of Zhang Ziyi, Ling**
    Carolina non-profit corporation doing   **Lucas, Michael Parks, Stanton L.**
19  business as BOXUN NEWS; WEICAN          **Stein, and Adam LeBerthon Filed**
    NULL MENG, an individual also known     **Concurrently Herewith]**
20  as WATSON MENG and also known as
    WEICAN "WATSON" MENG; DOES 1-           Date:        January 25, 2013
21  25, inclusive,                          Time:        9:30 a.m.
                                            Courtroom: 7
22                  Defendants.

23

24

25

26

27

28

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................................ 1

II.    FACTUAL BACKGROUND ........................................................... 4

III.   ARGUMENT .................................................................................. 7

    A.   Meng Has Waived Any Right to Challenge Personal Jurisdiction And/Or Venue. ......................................................... 7

    B.   This Court May Exercise Personal Jurisdiction Over Meng. .............. 8

    C.   By Publishing The Defamatory Articles in California, Meng Purposefully Directed His Conduct In the Forum. ........................... 11

        1.   Meng Committed An Intentional Act By Publishing The Defamatory Articles. ........................................................ 12

        2.   Meng's Acts Were Expressly Aimed At California. ................ 13

        3.   Plaintiff's Harm Was Likely To Be Suffered In California. ..... 14

    D.   Plaintiff's Lawsuit Arises Out Of Meng's Forum-Related Activities. ........................................................................ 15

    E.   Meng Has Have Failed To Satisfy His Burden To Present A Compelling Case That the Exercise of Jurisdiction Would Not Be Reasonable. ................................................................ 16

        1.   Defendant Has Purposefully Interjected Himself In California By Publishing The Defamatory Articles Here. ....... 17

        2.   Meng Cannot Show That He Would Be Unduly Burdened By Defending This Action In California. ............................... 17

        3.   California Has A Greater An Interest In Adjudicating This Dispute .......................................................................... 18

IV.    CONCLUSION ............................................................................. 19

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

i

782380

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Brayton Purcell LLP v. Recordon & Recordon,*
606 F.3d 1124 (9th Cir. 2010) ................................................. 8

*Calder v. Jones,*
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)............................ 12, 13, 15

*Corporate Inv. Bus. Brokers v. Melcher,*
824 F.2d 786 (9th Cir. 1987) ................................................. 17

*CYBERsitter, LLC v. P.R.C.,*
805 F. Supp. 2d 958 (C.D. Cal. 2011) ...................... 2, 3, 8, 9, 12, 13, 14, 15, 16, 17

*Gator.com Corp. v. L.L. Bean, Inc.,*
366 F.3d 789 (9th Cir. 2004) ................................................. 10

*Gator.com Corp. v. L.L. Bean, Inc.,*
398 F.3d 1125 (9th Cir. 2005) ................................................. 10

*Gator.com v. L.L. Bean, Inc.,*
341 F.3d 1072 (9th Cir. 2003) ................................................. 10

*Honor Plastic Indus. Co. v. Silverstein v. E360 Insight, LLC,*
2007 U.S. Dist. LEXIS 57695, 7 (C.D. Cal. Aug. 6, 2007)........................ 10

*Int'l Shoe Co. v. Washington,*
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)........................ 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
647 F.3d 1218 (9th Cir. 2011) ................................................. 14, 15

*Panavision Int'l, L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998) ................................................. 11

*Panavision Int'l, L.P. v. Toeppen,*
938 F. Supp. 616 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998) .. 13, 14, 15

*Rio Props., Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002) ................................................. 8, 12, 14, 15

*Zippo Mfg. Co. v. Zippo DOT Com, Inc.,*
952 F. Supp. 1119 (W.D. Pa. 1997)................................................. 10

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200, *et seq.*................................................. 6

Cal. Code Civ. P. § 410.10 ................................................. 8

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

ii

1

## **OTHER AUTHORITIES**

Joint Report of Fed. R. Civ. P. 26(f) Conference, Document No. 22, filed on
8/17/12, p. 4:1-20 ...................................................................................................... 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

**OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS**

782380

I.      **INTRODUCTION**

Plaintiff Zhang Ziyi ("Plaintiff"), a well-respected and highly acclaimed international motion picture actress, brings this defamation action in order to restore her reputation and to vindicate her right not to be falsely accused of being a prostitute, which is a crime in California, where Plaintiff regularly conducts business in the entertainment industry.  Defendants China Free Press, Inc. ("CFP"), doing business as Boxun News, and Weican Null Meng ("Meng") (collectively, "Defendants") have repeatedly published defamatory statements in articles on their website, Boxun News, an online internet newspaper (the "Articles").  The Articles allege that Plaintiff has earned over $110 million for having sexual relations with Chinese government officials and others.  By publishing the Articles, Defendants' misconduct was intentionally aimed at Plaintiff (a movie star and celebrity) in California, the center of the entertainment industry.  Defendants' actions were also targeted at Plaintiff in California.  In that regard, Defendants knew that the forum state has a substantial Chinese population (which, as Meng admits, is the "intended audience" of the Boxun News website), and is home to a significant Boxun News website user base and readership.  Due to their actions in California, Defendants could have reasonably anticipated defending a lawsuit in connection with the Articles here in California.  For these reasons, as well as those demonstrated below, this Court may exercise personal jurisdiction over Defendants.

As a preliminary matter, Meng has waived any right to challenge personal jurisdiction and/or venue.  In the instant case, Meng has filed a Motion for Order Requiring Plaintiff to Post an Undertaking Pursuant to California Code of Civil Procedure section 1030 (the "Bond Motion"), as well as a Motion to Strike under California Code of Civil Procedure section 425.16 (the "Motion to Strike").  By filing these motions, which request relief from this Court under California state law on the presumption that the Court has authority to hear the underlying action, Meng has submitted to the jurisdiction of this Court and made a general appearance here.  *See*

**OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS**

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

*Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("An appearance ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear.") Notably, "[n]othing in the Federal Rules of Civil Procedure requires a plaintiff to post a security for defendants' costs and attorney's fees." *Susilo v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 166638 (C.D. Cal. Nov. 19, 2012) (denying bond motion). By filing the Bond Motion and the Motion to Strike, Meng seeks to potentially benefit from California statutes, which require this Court to evaluate the merits of the case. Thus, Meng has waived any defense based on lack of personal jurisdiction and/or improper venue by filing these additional Motions and, therefore, submitting to the jurisdiction of this Court. *See Benny*, 799 F.2d at 492. Meng's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion to Dismiss") should be denied for this reason alone.

Furthermore, in his Motion to Strike, Meng fundamentally mischaracterizes the Boxun News website as an "informational and passive website." (Motion, p. 26:11-14.) Contrary to Meng's contention, the Boxun News website does not merely post information on its website. Rather, the Boxun News website allows users to post their own comments and information on the website, hosts forums for discussion, allows users to rate the information and articles posted on the website, and even allows users to make monetary contributions to Boxun News through the website. In that regard, Meng concedes that the website "has some level of activity due to its forums." (Motion, p. 17:5-6.) Thus, the Boxun News website actually functions as an interactive website—not a passive website, as Meng contends.

To determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant, the Ninth Circuit applies a three-part test. *CYBERsitter, LLC v. P.R.C.*, 805 F. Supp. 2d 958, 967 (C.D. Cal. 2011). First, "[t]he nonresident defendant must purposefully direct his activities or consummate some

OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.*   Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.*   Third, "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable."   Although the plaintiff bears the burden of satisfying the first two prongs of the test, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

Under the first prong, also known as the "purposeful availment" requirement, the Ninth Circuit "evaluates purposeful direction using the three-part '*Calder*-effects' test." *Id.* at 968.   Under this test, the defendant allegedly must have: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) causing harm that the defendant knows is likely to be suffered in the forum state.   *Id.*   Each of the three requirements under the *Calder*-effects test have been met here.   First, it is clear that Defendants committed an intentional act by publishing the defamatory statements in the Articles.   Second, Defendants' misconduct was expressly aimed at the forum state.   California is undisputely the "world-wide center of the entertainment industry."   (Complaint, ¶ 1.)   Defendants aimed their conduct at Plaintiff, knowing that she regularly conducts business in the entertainment industry and maintains a business office in California.   (*Id.*)   Moreover, Defendants targeted their conduct at Plaintiff in California, the home to a significant Chinese-American population, which Meng admits is the "intended audience" of the Boxun News website.   (Motion, p. 20:14-16.)   Third, it was entirely foreseeable that Plaintiff would be harmed by the Articles in California, due to Plaintiff's involvement in the entertainment industry here and the substantial Boxun News website user population which resides in California.

With respect to the second requirement, Plaintiff's defamation action arises out

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

3

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

of Defendants' forum-related activities.  The allegations in the Complaint demonstrate that "but for" the defamatory statements in the Articles, Plaintiff would not have "suffered loss of her reputation, shame, mortification, and hurt feelings," her business relationships with third parties would not have been disrupted, and the goodwill associated with Plaintiff and the products and brands she endorses would not have been reduced.  (*See e.g.* Complaint, ¶¶ 23, 36, 46.)

As to the third requirement, Meng has failed to meet his burden to present a compelling case that the exercise of jurisdiction in California would be unreasonable.  In that regard, Meng contends that he should not be forced to defend a lawsuit here simply because he is a North Carolina resident.  Meng's contention should be rejected.  The instant action involves witnesses located around the world.  Thus, whether the case is litigated in California or North Carolina (as Meng contends), the parties and witnesses will necessarily incur costs and other non-financial burdens associated with travel.  Notably, Meng's own counsel is not located in North Carolina and both Meng and Plaintiff's counsel had to travel to Meng's counsel's office in Las Vegas, Nevada for both his recent deposition and that of one of his designated experts in this case.  Indeed, Meng's burden would not be disproportionate to anyone else's burden here if this case is litigated in California.  Moreover, California clearly has a greater interest in adjudicating this dispute than North Carolina since it is home to both the entertainment industry, where Plaintiff conducts business, and a substantial Chinese American population, which is the intended audience of the Boxun News website.  Thus, Meng has failed to present any compelling case that the exercise of jurisdiction in California would not be reasonable.

## II.   FACTUAL BACKGROUND

On or about May 28, 2012, Defendants published an article on the Boxun News website that provided extensive details of payments allegedly made to Plaintiff for having sexual relations with a former Chinese official, a Chinese billionaire, and unnamed "other senior officials" in China.  (Complaint, ¶ 10, Exhibit A.)  These

4

782380

statements were all false and defamatory.  As set forth in the Complaint, as well as in the declarations of Zhang Ziyi ("Zhang Decl.") and Ling Lucas ("Lucas Decl.") filed concurrently herewith, the statements about Plaintiff are false.  (Complaint, ¶ 15; Zhang Decl., ¶¶ 6 & 8; Lucas Decl., ¶ 5.)

On or about May 30, 2012, Defendants published another article on the Boxun News website that allegedly "confirmed" that Plaintiff had a "sexual relationship" with a former Chinese official and wrongfully stated that she was being questioned by Chinese authorities who had banned her from leaving mainland China. (Complaint, ¶ 11, Exhibit B.)  These statements were also false and defamatory.

On or about June 3, 2012, Defendants published yet another article on the Boxun News website, threatening to retaliate against Plaintiff if she attempted to defend herself against the false and malicious accusations.  For example and without limitation, Defendants stated that "if [Plaintiff] continues to act, [they] will continue to massively disclose the details of the dates she had with several billionaires." (Complaint, ¶ 12, Exhibit C.)

In connection with the aforementioned three articles, dated May 28, May 30 and June 3, 2012 (collectively, the "Articles"), it is undisputed that Defendants never contacted Plaintiff before publishing the libelous statements.  (Complaint, ¶ 16.) Furthermore, the Articles never disclosed the source of any of the libelous statements about Plaintiff.  (*Id.*)  Instead, the Articles were published anonymously and attributed to unnamed sources such as "intelligence" and "different sources of information."  (*Id.*)

Following their publication, the Articles were picked up and promptly republished by other media outlets around the world, including but not limited to Apple Daily (Hong Kong), Apple Daily (Taiwan), Next Magazine, AsiaOne, Yahoo! Hong Kong, Yahoo! Taiwan, CNN, Variety, Entertainment Television, The Huffington Post, and countless others.  (*Id.* at 14.)

**OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS**

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

782380

On or about June 6, 2012, Plaintiff's counsel served Defendants with a letter specifically notifying them that the Articles contained false statements. (*Id.* at ¶ 18, Exhibit D.) The letter also demanded, among other things, that Defendants remove the Articles from the Boxun News website, publish a full and complete retraction, and apologize for the harm they caused Plaintiff. (*Id.*) Notwithstanding the June 6, 2012 letter, Defendants failed and refused to retract the defamatory statements contained in the Articles. (*Id.*) Instead, in response to Plaintiff's demand, counsel for Defendants issued a letter dated June 6, 2012, denying that the Articles contained any "defamatory words" about Plaintiff and saying that Boxun News "merely published what it believed to be true." (*Id.* at ¶ 18, Exhibit E.) In addition, Defendants published on the Boxun News website, yet another article which is substantially similar to the letter issued by Defendants' counsel stating that the defamatory statements contained in the Articles are "believed to be true." (*Id.* at ¶ 18, Exhibit F.)

On or about June 14, 2012, Plaintiff filed the operative complaint, which contains five causes of action against Defendants for: (1) libel per se; (2) false light invasion of privacy; (3) intentional interference with prospective economic advantage; (4) negligent interference with prospective economic advantage; and (5) unlawful business practices pursuant to Cal. Bus. & Prof. Code §§ 17200, *et seq.*

In connection with this litigation, Defendants have refused to reveal the identities of their "confidential sources," and instead, contend that such sources are entitled to blanket anonymity. Plaintiffs, however, have offered to enter into an appropriate protective order in an effort to assuage Defendants' concerns about confidentiality, but Defendants continue to refuse to disclose the identity of these witnesses. *See* Joint Report of Fed. R. Civ. P. 26(f) Conference, Doc. No. 22, filed on August 17, 2012, p. 4:1-20; *see also* Declaration of Adam LeBerthon ("LeBerthon Decl."), ¶ 3; Exhibit B, Deposition of Weican "Watson" Null Meng, dated October 17, 2012, pp. 22:5-25:9).

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

III.   **ARGUMENT**

A.   **Meng Has Waived Any Right to Challenge Personal Jurisdiction And/Or Venue.**

As a threshold matter, Meng has waived any right to challenge personal jurisdiction and/or venue and, therefore, his Motion to Dismiss for lack of personal jurisdiction should be denied.  As discussed above, Meng has filed both a Bond Motion and a Motion to Strike in this lawsuit.  These motions request relief from ***this Court*** under ***California law*** which acknowledges that ***this Court*** has authority to hear the underlying action.  *See Benny*, 799 F.2d at 492 ("An appearance ordinarily is an overt act by which the party comes into court and submits to the jurisdiction of the court.  This is an affirmative act involving knowledge of the suit and an intention to appear.")  "Nothing in the Federal Rules of Civil Procedure requires a plaintiff to post a security for defendants' costs and attorney's fees."  *Susilo*, 2012 U.S. Dist. LEXIS at *1 (denying bond motion).  "Although district courts often look to state practice to determine whether it is appropriate to require plaintiff to post a security, ***there is no requirement that federal courts do so***."  *Id.* at *2 (emphasis added).  The Ninth Circuit has explained that a court considering whether to require a plaintiff to post an undertaking must balance "(i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective."  *Id.* at 576.  Any bond required must be "fair in the light not only of the case itself and of the exigencies faced by the defendant, but also fair when illuminated by the actual financial situation of the plaintiff."  *Id.*  By filing the Bond Motion and Motion to Strike, Meng seeks to benefit from California statutes, which require this Court to evaluate the merits of the case.  Thus, Meng has waived any defense based on lack of personal jurisdiction and/or improper venue by filing the Bond Motion and, therefore, submitting to the jurisdiction of this

7

782380

Court.  *See Benny*, 799 F.2d at 492.  Meng's Motion to Dismiss should be denied for this reason alone.

### B.   This Court May Exercise Personal Jurisdiction Over Meng.

Contrary to Plaintiffs' contention, this Court may exercise personal jurisdiction over Meng.  In connection with a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) ("*Rio*").  The "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the  parties' affidavits must be resolved in [the plaintiff's] favor."  *Rio*, 284 F.3d at 1019.  In other words, "for the purpose of this prima facie demonstration, the court resolves all disputed facts in favor of the plaintiff."  *CYBERsitter, LLC v. P.R.C.*, 805 F. Supp. 2d 958, 967 (C.D. Cal. 2011) ("*CYBERsitter*") (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).

"In evaluating the appropriateness of personal jurisdiction over a  nonresident defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comports with federal due process.'"  *CYBERsitter*, 805 F. Supp. at 967 (citing *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 2011 U.S. App. LEXIS 10010, 2011 WL 1879210, at *7 (9th Cir. May 18, 2011)).  California permits the exercise of personal jurisdiction to the full extent permitted by due process.  Thus, courts need only determine whether jurisdiction over a defendant comports with due process."  *Id.*; *see* Cal. Code Civ. P. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  For due process to be satisfied, a defendant, if not present in the forum, must have "minimum contacts' with the forum state such that the assertion of jurisdiction "does not offend

782380

1  traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*,

2  326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

3       There are two types of personal jurisdiction—general and specific.

4  *CYBERsitter*, 805 F. Supp. at 967 (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470,

5  473 (9th Cir. 1995)). "Specific jurisdiction is only relevant if the defendant's

6  'contacts with the forum give rise to the cause of action before the court.'" *Id.*

7  (quoting *Bauman*, 2011 U.S. App. LEXIS 10010, 2011 WL 1879210 at *7. "By

8  contrast, 'when the cause of action does not arise out of or relate to the foreign

9  corporation's activities in the forum State,' the State is exercising 'general

10  jurisdiction over the defendant.'" *Id.* (quoting *Helicopteros Nacionales de Colombia,*

11  *S.A. v. Hall*, 466 U.S. 408, 414, 415 n.9, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

12       In his Motion to Dismiss, Meng contends that this Court lacks either general or

13  specific jurisdiction over him. Meng's contention is without any legal or factual

14  basis. As demonstrated below, Defendants' actions, by intentionally publishing the

15  defamatory statements in the Articles on the Boxun News website, give this Court

16  specific jurisdiction over Defendants.

17       As a preliminary matter, Meng fundamentally mischaracterizes the Boxun

18  News website as an "informational and passive website." (Motion, p. 26:11-14.)

19  Contrary to Meng's contention, the Boxun News website does not simply post

20  information on its website. Rather, the Boxun News website is interactive – it allows

21  users to post their own comments and information, hosts forums for discussion, and

22  allows users to rate the information and articles posted on the website. Indeed, Meng

23  even admits that the website "does have some level of activity due to its forums."

24  (Motion, p. 17:5-6.) Moreover, the Boxun News website is set up to accept monetary

25  donations from users through PayPal, Inc. (a subsidiary of eBay, Inc.), which is based

26  in San Jose, California. (*See* LeBerthon Decl., ¶ 3, Exhibit B, p. 12:4-22) According

27  to Meng, the Boxun News website has even received donations from several

28  California residents. (LeBerthon Decl., ¶ 3, Exhibit B, Exhibit 26.)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

9

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1      Meng's reliance on *Zippo Mfg. Co. v. Zippo DOT Com, Inc.*, 952 F. Supp.

2   1119 (W.D. Pa. 1997) ("*Zippo*") is misplaced.  As demonstrated above, the Boxun

3   News website is not a "passive website that does little more than make information

4   available to those who are interested in it."  (Motion, p. 12:11-21).  Rather, the Boxun

5   News website is an interactive website where users can exchange information, engage

6   in forum discussions, and provide commentary and make donations.  Moreover, the

7   Court in *Zippo* determined that the defendant was an interactive website, like the one

8   at issue here.  The Court therefore denied defendant's motion to dismiss for lack of

9   personal jurisdiction, holding that it had personal jurisdiction over the defendant.

10   Accordingly, *Zippo* fails to support Meng's position and in fact supports the exercise

11   of personal jurisdiction in this case.

12      In his Motion to Dismiss, Meng also relies on *Gator.com v. L.L. Bean, Inc.*,

13   341 F.3d 1072, 1079 (9th Cir. 2003) ("*Gator.com*") extensively to suggest that,

14   among other things, "[n]o court has exercised general personal jurisdiction over a

15   defendant based solely on that defendant's Internet presence in the forum state."

16   (Motion, p. 14:22-23).  Plaintiff's reliance on *Gator.com* is improper.  In *Gator.com*,

17   the Ninth Circuit agreed to rehear the case *en banc*, and vacated the decision

18   erroneously relied upon by Meng.  *Gator.com Corp. v. L.L. Bean, Inc.*, 366 F.3d 789

19   (9th Cir. 2004). The parties subsequently informed the Ninth Circuit that they had

20   reached a settlement agreement, which led the *en banc* majority to find the appeal to

21   be moot and state that "we must await another opportunity to resolve the important

22   issues of personal jurisdiction originally raised by this appeal" because the panel

23   decision "no longer has the force of law."  *See Gator.com Corp. v. L.L. Bean, Inc.*,

24   398 F.3d 1125, 1143 (9th Cir. 2005). Thus, *Gator.com Corp. v. L.L. Bean, Inc.*, 341

25   F.3d 1072 (9th Cir. 2003), is not precedent and is not binding this Court.  *See Honor*

26   *Plastic Indus. Co. v. Silverstein v. E360 Insight, LLC*, 2007 U.S. Dist. LEXIS 57695,

27   7-9 (C.D. Cal. Aug. 6, 2007) (holding that *Gator.com* is not precedent and may not be

28   relied upon as authority binding on the district court).

10

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

As demonstrated below, this Court may exercise specific personal jurisdiction over Meng.[1]  The Ninth Circuit applies a three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant:

> 1.   The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> 2.   The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> 3.   The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*CYBERsitter, LLC v. P.R.C.*, 805 F. Supp. 2d at 967 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

The plaintiff bears the burden of satisfying the first two prongs of the test.  *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

## C.   By Publishing The Defamatory Articles in California, Meng Purposefully Directed His Conduct In the Forum.

The purposeful availment requirement "ensures that a nonresident defendant will not be haled into court based upon 'random, fortuitous or attenuated' contacts with the forum state." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Burger King*, 471 U.S. at 475).  The phrase "purposeful

---

[1] Defendant CFP has not challenged personal jurisdiction.

**OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS**

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

availment" includes both purposeful availment and purposeful direction, which are distinct concepts. *CYBERsitter*, 805 F. Supp. at 968. While a purposeful availment analysis is used in suits sounding in contract, a purposeful direction analysis is used in suits sounding in tort. *Id.* The instant lawsuit involves causes of action for libel *per se*, false light invasion of privacy, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and unlawful business practices. Accordingly, the instant action is a tort action and "[p]urposeful direction is therefore the proper analytical framework in this case." *See id.*

The Ninth Circuit "evaluates purposeful direction using the three-part 'Calder-effects' test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)." *Id.* "Under this test, 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

### 1. Meng Committed An Intentional Act By Publishing The Defamatory Articles.

Courts "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *CYBERsitter*, 805 F. Supp. at 969 (citing *Schwarzenegger*, 374 F.3d at 806). In the instant case, Plaintiff clearly satisfies the intentional act requirement. As a matter of law, by publishing the defamatory statements in the Articles, the Defendants acted intentionally. *See e.g.*, *Rio Props.*, 284 F.3d at 1020 (concluding that operating a passive website was an intentional act); *see also Schwarzenegger*, 374 F.3d at 806 (holding that placing a newspaper advertisement was an intentional act).

**OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS**

782380

## 2.    Meng's Acts Were Expressly Aimed At California.

As the Ninth Circuit has recognized, "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *CYBERsitter*, 805 F. Supp. at 970 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d at 1104, 1111 (9th Cir. 2007)). In *Calder*, the Supreme Court held that defendants' actions were "expressly aimed at California" because defendants wrote and edited an article "that they knew would have a potentially devastating impact upon [plaintiff]" and "they knew the brunt of that injury would be felt by [plaintiff] in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Calder*, 465 U.S. at 789-90. Under those circumstances, the Supreme Court held that defendants must "reasonably anticipate being haled into court there." *Id.* at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

Similarly, in *Panavision Int'l, L.P. v. Toeppen*, 938 F. Supp. 616, 621-22 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998), the Court determined that defendant, an Illinois resident, "has harmed Panavision, the brunt of which Panavision has borne in California, which [defendant] knew would likely happen because Panavision's principal place of business and *the heart of the theatrical motion picture and television camera and photographic equipment business are in California*." *Id.* (emphasis added). Accordingly, the Court held that "[j]urisdiction is proper because [defendant's] out of state conduct was intended to, and did, result in harmful effects in California. Panavision should not now be forced to go to Illinois to litigate its claims." *Id.*

In the instant case, Meng aimed his conduct at Plaintiff—a movie star and celebrity—knowing that she regularly conducts business in the entertainment industry and maintains a business office in California. (Complaint, ¶ 1.) The Complaint specifically alleges, and Meng does not dispute, that "as a world-wide center of the

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

13

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

entertainment industry, much of the business conducted by Plaintiff around the world is handled in Los Angeles." (*Id*.)

Meng also aimed his conduct at Plaintiff in California, the home to a significant Chinese-American population, which Meng admits is the "intended audience" of the Boxun News website. (Motion, p. 20:14-16.) In that regard, the Complaint alleges that "Boxun News is an international publication targeted towards Chinese readers around the world, including readers located in the State of California." (Complaint, ¶ 3.) Moreover, the Complaint alleges that "[t]he Articles were seen and read by countless persons around the world and in Los Angeles, California, which is the world-wide center of the entertainment industry." (*Id*. at ¶ 21.) Although Meng argues that "California has no presence among the top 10 cities to view Boxun," the evidence demonstrates that, during an approximately four-month period in 2012, the Boxun News website was visited and/or viewed by approximately 285,000 people in California. (Motion, p. 15:15-16; LeBerthon Decl., ¶ 2, Exh. A.) In contrast, the Boxun News website was only viewed by approximately 85,000 people in North Carolina. (*Id*.) Thus, Defendants' actions were intentional, tortious, and aimed at Plaintiff in California. *See Panavision*, 938 F. Supp. at 621-22 (C.D. Cal. 1996); *see also Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1230-32 (9th Cir. 2011) ("*Mavrix*").

### 3.   Plaintiff's Harm Was Likely To Be Suffered In California.

To satisfy the third part of the *Calder*-effects test, "the 'brunt' of the harm need not be suffered in the forum state," but only "a jurisdictionally sufficient amount of harm." *CYBERsitter*, 805 F. Supp. 2d at 973 (quoting *Yahoo! Inc.*, 433 F.3d at 1207) "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Id*. (quoting *Brayton*, 606 F.3d at 1131).

In *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1012 (9th Cir. 2002) ("*Rio*"), for example, the defendant was the operator of a passive website that "allows customers throughout the United States and the world to place wagers on sporting

OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS

782380

events." Despite Meng's argument that operating a passive website cannot confer personal jurisdiction, the Court in *Rio Props* specifically recognized that "operating even a passive website in conjunction with 'something more'--conduct directly targeting the forum--is sufficient to confer personal jurisdiction." *Id*. at 1020. The Court concluded that the purposeful availment requirement for the exercise of personal jurisdiction was satisfied because, among other things, defendant "knowingly injured [plaintiff] in Nevada its principal place of business and *the capital of the gambling industry*." *Id*. at 1020 (emphasis added).

In the instant case, Meng knowingly injured Plaintiff in California, the capital of the entertainment industry. The Complaint specifically alleges that "as a world-wide center of the entertainment industry, much of the business conducted by Plaintiff around the world is handled in Los Angeles." (Complaint, ¶ 1.) The Complaint also alleges that "[t]he Articles were seen and read by countless persons around the world and in Los Angeles, California, which is the world-wide center of the entertainment industry." (*Id*. at ¶ 21.) Based on the foregoing, it was foreseeable that Plaintiff would be harmed by the defamatory statements in California—the very heart of the entertainment industry. *See Panavision*, 938 F. Supp. at 621-22; *see also Mavrix*, 647 F.3d at 1230-32. Accordingly, Plaintiff has satisfied the third and final element of the *Calder*-effects test and, therefore, has demonstrated purposeful direction as to Meng.

### D.    Plaintiff's Lawsuit Arises Out Of Meng's Forum-Related Activities.

The second requirement for specific personal jurisdiction is that plaintiff's action arises out of or relates to the defendant's forum-related activities. *CYBERsitter*, 805 F. Supp. 2d at 973. In this analysis, a court "must determine if the [plaintiff] would not have been injured 'but for' the [defendant's] conduct directed toward [plaintiff] in California." *Id*. (quoting *Panavision*, 141 F.3d at 1322.)

In the instant case, the allegations in the Complaint demonstrate that "but for" the defamatory statements in the Articles that were published by Defendants, Plaintiff

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

OPPOSITION TO DEFENDANT WEICAN NULL MENG'S MOTION TO DISMISS

would not have been harmed and/or injured.  For example and without limitation, the Complaint alleges, among other things:

- "As a direct and proximate result of the publication of the Articles, Plaintiff has suffered loss of her reputation, shame, mortification, and hurt feelings, all to her general damage."  (Complaint, ¶ 23.)

- "As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Plaintiff's business relationships with third parties have been disrupted and Plaintiff has been damaged, and Defendants' wrongful conduct . . . was a substantial factor in causing Plaintiff's harm."  (*Id*. at ¶ 36.)

- "Plaintiff has been and is likely to continue to be injured as a result of Defendants' actions which undermine and reduce the goodwill associated with Plaintiff and the products and brands she endorses, for which Plaintiff has no adequate remedy at law."  (*Id*. at ¶ 46.)

Moreover, as set forth in the accompanying Declarations of Zhang Ziyi and Ling Lucas, the defamatory statements in the Articles caused her to lose at least two potential jobs as a spokesperson representing multinational companies and luxury brands.  (*See* Zhang Decl., ¶¶ 11-12, Exhibits D and E; Lucas Decl., ¶¶ 6-7, Exhibits A and B.)  Accordingly, Plaintiff has satisfied this element.

### E. <u>Meng Has Have Failed To Satisfy His Burden To Present A Compelling Case That the Exercise of Jurisdiction Would Not Be Reasonable.</u>

As demonstrated above, Plaintiff satisfied the first two elements for specific jurisdiction.  Thus, the burden shifts to Meng to "present a compelling case that the exercise of jurisdiction would not be reasonable." *CYBERsitter*, 805 F. Supp. 2d at 973 (internal quotations omitted).  "The exercise of jurisdiction is reasonable if it comports with traditional notions of fair play and substantial justice." *Id*. (quoting *Rio*, 284 F.3d at 1021). Courts consider seven factors in making this determination:

16

782380

1  (1) the extent of a defendant's purposeful interjection; (2) the

2  burden on the defendant in defending in the forum; (3) the

3  extent of conflict with the sovereignty of the defendant's state;

4  (4) the forum state's interest in adjudicating the dispute; (5) the

5  most efficient judicial resolution of the controversy; (6) the

6  importance of the forum to the plaintiff's interest in convenient

7  and effective relief; and (7) the existence of an alternative

8  forum. *Id*.

9  For the reasons demonstrated below, Meng has not met his burden to "present a

10  compelling case that the exercise of jurisdiction would not be reasonable." *See id*.

**1.**  **Defendant Has Purposefully Interjected Himself In California**

**By Publishing The Defamatory Articles Here.**

13  The first factor, purposeful interjection, "is analogous to the purposeful

14  direction analysis," which was discussed above in Section III.A. *Id*. (quoting *Sinatra*

15  *v. Nat'l Enquirer, Inc*., 854 F.2d 1191, 1199 (9th Cir. 1988)); *see also Corporate Inv.*

16  *Bus. Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987) (noting that the "Ninth

17  Circuit cases give the 'purposeful interjectment' factor no weight once it is shown

18  that the defendant purposefully directed its activities to the forum state" and that "the

19  Supreme Court does not include this factor in its list of relevant factors at all").

20  Accordingly, for the reasons stated above, Meng has purposefully directed and

21  interjected his activities to California. *See id*.

**2.**  **Meng Cannot Show That He Would Be Unduly Burdened By**

**Defending This Action In California.**

24  In his Motion, Meng argues that "because he has no contacts with California,

25  he would suffer severe hardship in terms of cost and asymmetries of information if

26  forced to defend a lawsuit in the Central District of California." (Motion, p. 26:24-

27  27:5.)  Meng's contention is unavailing.  In the instant case, witnesses are scattered

28  around the globe and whether the case is tried in California or North Carolina (as

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

17

782380

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   Meng suggests), the parties will necessarily incur costs and other non-financial

2   burdens associated with travel and with transporting witnesses and evidence.

3   Notably, Meng's own counsel and one of the experts who submitted a declaration in

4   support of his anti-SLAPP motion are located in Las Vegas, Nevada.  Consequently,

5   Meng and Plaintiff's counsel both traveled to Nevada for Meng's recent deposition

6   and the deposition of expert witness Mary Hausch in this case.  In addition, since

7   Meng refuses to disclose the identities of his so-called "confidential sources" for the

8   defamatory statements in the Articles, the location of many of the witnesses in this

9   case is not currently known with any certainty.  Accordingly, Meng cannot show that

10  his burden would be disproportionate to Plaintiff's burden if this case is heard in

11  California, rather than North Carolina.

12       Notably, defendant China Free Press, Inc. did not challenge personal

13  jurisdiction in the instant action and withdrew its anti-SLAPP motion.  Accordingly,

14  if Meng's motion to dismiss is granted and part of the case transferred to North

15  Carolina, there will be two lawsuits pending—both of which arise out of the same

16  facts and involve the same issues in two different forums—one in California and one

17  in North Carolina.  That result is contrary to the law and Meng's Motion should be

18  denied.  *See Lens.com, Inc. v. 1-800 Contacts, Inc*., 2012 U.S. Dist. LEXIS 48209

19  (D. Nev. Apr. 4, 2012) (emphasizing that "[litigation of related claims in the same

20  tribunal is strongly favored because it facilitates efficient, economical and

21  expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation

22  and inconsistent results").

23       **3.   California Has A Greater An Interest In Adjudicating This**
             **Dispute**

24

25       Meng contends that California "can only have a minimal interest (if any) in

26  adjudicating this dispute" because the parties do not actually reside here.  (Motion, p.

27  27:23-24.)  He then argues that North Carolina has a greater interest in adjudicating

28  this lawsuit merely because Meng is a North Carolina resident.  For all the reasons

18

782380

1  demonstrated above, California has a greater interest in adjudicating this dispute.

2  Meng purposefully directed the conduct at issue here to California, which is the

3  center of the entertainment industry and where a substantial Chinese population (and

4  Boxun News website readership) resides.  Accordingly, Meng could reasonably

5  anticipate defending a lawsuit in California in connection with the Boxun publication

6  of the defamatory statements about Plaintiff in the Articles.

7  **IV.**   **<u>CONCLUSION</u>**

8       For the foregoing reasons, Plaintiff respectfully requests that the Court deny

9  the Motion to Dismiss.

10

11  DATED:  January 4, 2013         GLASER WEIL FINK JACOBS

12                      HOWARD AVCHEN & SHAPIRO LLP

13

14               By:  <u>/s/ Adam LeBerthon</u>

15                  JOHN MASON

                     PATRICIA L. GLASER

16                  ADAM LEBERTHON

                     LISA M. ZEPEDA

17                  Attorneys for Plaintiff Zhang Ziyi

18

19

20

21

22

23

24

25

26

27

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

782380