1   JOHN MASON - State Bar No. 51116
     jmason@glaserweil.com
2   PATRICIA L. GLASER - State Bar No. 55688
     pglaser@glaserweil.com
3   ADAM LEBERTHON - State Bar No. 145226
     aleberthon@glaserweil.com
4   LISA M. ZEPEDA – State Bar No. 231125
     lzepeda@glaserweil.com
5   GLASER WEIL FINK JACOBS
       HOWARD AVCHEN & SHAPIRO LLP
6   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
7   Telephone:  (310) 553-3000
    Facsimile:   (310) 556-2920
8
    Attorneys for Plaintiff Zhang Ziyi
9

10            UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

13   ZHANG ZIYI, an individual,              CASE NO.: cv 12-5216-DMG (PLAx)

14                                           **OPPOSITION OF PLAINTIFF
                   Plaintiff,                ZHANG ZIYI TO DEFENDANT
15                                           WEICAN NULL MENG'S SPECIAL
                                             MOTION TO STRIKE UNDER
         v.                                  CALIFORNIA CIVIL
16                                           PROCEDURE CODE § 425.16**

17   CHINA FREE PRESS, INC., a North         **[Declarations of Zhang Ziyi, Ling
     Carolina non-profit corporation doing  Lucas, Michael Parks, Stanton Larry
18   business AS BOXUN NEWS; WEICAN          Stein, and Adam LeBerthon Filed
     NULL MENG, an individual also known     Concurrently Herewith]**
19   as WATSON MENG and also known as
     WEICAN "WATSON" MENG; DOES 1-           Date:        January 25, 2013
20   25, inclusive,                          Time:        9:30 a.m.
                                             Courtroom:   7
21                 Defendants.

22

23

24

25

26

27

28

777181

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ..................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................... 3

III.   MENG'S ANTI-SLAPP MOTION SHOULD BE DENIED ........................ 5

    A.     Meng Has Failed To Meet His Burden Under The Anti-SLAPP
        Statute................................................................................................ 6

        1.   Meng Has Failed To Meet His Burden Of Showing That
             The Defamatory Statements Occurred In A "Public Forum" ..... 7

        2.   Meng Has Failed To Meet His Burden Of Showing That
             The Defamatory Statements Concern An Issue Of Public
             Interest .......................................................................... 8

    B.     There Is A Probability That Plaintiff Will Prevail On Her Claims .... 11

        1.   Plaintiff Has Alleged, And There Is Sufficient Evidence To
             Show, That Plaintiff Will Prevail On Her Claims ................... 11

        2.   Clear and Convincing Evidence Demonstrates That The
             Defamatory Statements Were Made With Actual Malice ........ 14

    C.     Alternatively, If The Court Determines That Additional Evidence
        Regarding Defendants' Actual Malice Is Necessary, The Motion
        To Strike Should Be Denied In Order to Allow Plaintiff To Obtain
        The Identities Of The "Confidential Sources" ................................... 22

IV.    CONCLUSION ..................................................................................... 24

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

i

777181

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ................................................................ 6

*Bosley Med. Inst., Inc. v. Kremer*
403 F. 3d 672 (9th Cir. 2005) ................................................ 7

*Condit v. Nat'l Enquirer, Inc.*
248 F. Supp. 2d 945 (E.D. Cal. 2002) ......................... 7, 8, 9, 10

*Curtis Pub. Co. v. Butts*
388 U.S. 130 (1967) ............................................................. 15

*Dangerfield v. Star Editorial, Inc.,*
817 F. Supp. 833 (C.D. Cal. 1993) ....................................... 22

*Globetrotter Software v. Elan Computer Group*
63 F. Supp. 2d 1127 (N.D. Cal. 1999) .................................... 7

*Kaelin v. Globe Communications Corp.*
162 F.3d 1036 (9th Cir. 1998) ............................................ 14

*Masson v. New Yorker Magazine, Inc.*
501 U.S. 496 (1991) ............................................................ 14

*New York Times Co. v. Sullivan*
376 U.S. 254 (1964) ............................................................ 14

*Rogers v. Home Shopping Network, Inc.*
57 F. Supp. 2d 973 (C.D. Cal. 1999) ......................... 1, 5, 6, 8, 9

*St. Amant v. Thompson*
390 U.S. 727 (1968) ............................................................ 14

*Suzuki Motor Corp. v. Consumers Union of United States, Inc.*
330 F.3d 1110 (9th Cir. 2003) ................................... 14, 15, 19

*Zerilli v. Smith*
656 F. 2d 705 (D.C. Cir. 1981) ............................................ 22

**STATE CASES**

*Annette F. v. Sharon S.*
119 Cal. App. 4th 1146 (2004) ............................................ 14

*Briggs v. Eden Council for Hope & Opportunity*
19 Cal. 4th 1106 (1999) ........................................................ 5

*Briscoe v. Reader's Digest Ass'n*
4 Cal. 3d 529 (1971) ........................................................... 12

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

ii

777181

*Childers v. San Jose Mercury Printing & Publishing Co.*
  105 Cal 284 (1894) ................................................................ 12

*Lafayette Morehouse, Inc. v. Chronicle Publ'g, Co.*
  37 Cal. App. 4th 855 (1995) .................................................. 8

*Motors, Inc. v. Times Mirror Co.*
  102 Cal. App. 3d 735 (1980) ................................................ 13

*Pink v. Catanich*
  51 Cal. 420 (1876) ............................................................... 11

*Settimo Assocsiates v. Environ Systems, Inc.*
  14 Cal. App. 4th 842 (1993) ................................................ 13

*Sipple v. Founds for Nat'l Progress*
  71 Cal. App. 4th 226 (1999) .......................................... 10, 11

*Weinberg v. Feisel*
  110 Cal. App. 4th 1122 (2003) .............................................. 8

*Wong v. Jing*
  189 Cal. App. 4th 1354 (2010) ............................................ 11

*Youst v. Longo*
  43 Cal. 3d 64 (1987) ............................................................ 12


**STATE STATUTES**

Cal. Bus. & Prof. Code section 17200, *et seq.* ........................ 13

California Civil Code § 45(a) .................................................... 2

California Civil Code § 46(4) .................................................. 11

California Civil Code § 47 ........................................................ 12

California Code of Civil Procedure § 425.16 ......................... 7, 8

California Code of Civil Procedure § 425.16(a) ..................... 6, 9

California Code of Civil Procedure § 425.16(b)(1) ..................... 2

California Code of Civil Procedure § 425.16(c) ..................... 6, 7


**FEDERAL RULES**

Federal Rules of Civil Procedure §56(f) ................................... 6

Federal Rules of Civil Procedure§ 26(f) ............................. 5, 23

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

iii

777181

## I.    INTRODUCTION

Plaintiff Zhang Ziyi ("Plaintiff"), a well-respected and highly acclaimed international motion picture actress, brings this defamation action in order to restore her reputation and to vindicate her right not to be falsely accused of being a "prostitute," which is illegal in China, where Plaintiff resides, as well as in California, where Plaintiff regularly conducts business in the entertainment industry. Defendants China Free Press, Inc. ("CFP"), doing business as Boxun News, and Weican Null Meng ("Meng") (collectively, "Defendants") have repeatedly published articles which allege that Plaintiff has earned over $110 million for having sexual relations with Chinese government officials, amongst others, and these articles have now been republished by other media outlets around the world.  Despite the fact that Plaintiff specifically informed Defendants that the published articles contain false statements, they have failed and refused to print a retraction and, instead, publicly stated that the articles are "believed to be true." As discussed below, Boxun News never had any legitimate basis to publish the articles regarding Plaintiff.  In fact, at Meng's deposition it became clear that Defendants published the articles knowing that they were based on nothing more than rumors, innuendo and rank hearsay – perhaps many times over.  Defendants' conduct shows that Boxun News has clearly compromised its purported mission to "become the #1 most trusted Chinese online news service," in order to publish sensationalized (and false) headlines – at Plaintiff's expense.

Unlike the instant lawsuit, "Strategic Lawsuits Against Public Participation ("SLAPP suits") are legally meritless suits filed in order 'to obtain [a political or] economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff.'" *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999).  The instant lawsuit concerns Plaintiff's legal right to protect her reputation, profession, and business interests – not a meritless case brought to obtain a financial or political advantage over, or to silence, a defendant, which California's

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  anti-SLAPP statute is designed to discourage.  Contrary to the intent of the anti-

2  SLAPP law, by his Special Motion to Strike (the "Motion to Strike"), Meng seeks to

3  improperly utilize Section 425.16 to gain immunity for Defendants' defamatory

4  statements, not to be free of a wrongfully intimidating and meritless lawsuit

5  calculated to stifle desirable political or public speech.

6       As demonstrated below, the Motion to Strike should be denied for at least

7  three separate and independent reasons.  First, Meng has failed to meet his initial

8  burden to show that Plaintiff's causes of action arise from protected activity.  As a

9  matter of law, the defamatory statements are only protected "if they can be

10 characterized as statements made in a public forum or in furtherance of the exercise

11 of the constitutional rights of petition or speech in connection with an issue of public

12 interest."  Meng has failed to demonstrate that the defamatory statements occurred in

13 a "public forum" and/or "in connection with an issue of public interest."  In that

14 regard, the defamatory statements were published on the Boxun News website,

15 which Meng admits is a "news website."  As such, as a matter of law, it is not a

16 "public forum" for purposes of section 425.16.  Moreover, contrary to Meng's

17 contention, simply because Plaintiff is a celebrity does not mean that all speech about

18 her is a "public issue" or "issue of public interest."  For example and without

19 limitation, allegations that Plaintiff is a prostitute who has made "sex deals" with

20 various billionaire boyfriends obviously have nothing to do with a "major political

21 scandal," as Meng contends, or any "public issue" for purposes of section 425.16.

22      Second, even assuming *arguendo* that Meng has made the required threshold

23 showing (which he has not), Plaintiff has presented sufficient evidence to

24 demonstrate a probability of success at trial.  The articles at issue here were

25 published and contain false, unprivileged statements.  The defamatory statements

26 accuse Plaintiff of a crime and unchastity.  Accordingly, they constitute libel *per se*,

27 which is actionable without even proof of special damages.  Cal. Civ. Code § 45(a),

28 46(4).  Moreover, the defamatory statements were made with "actual malice"

1  because Defendants failed to act reasonably in investigating the false statements and,

2  therefore, purposefully attempted to avoid the truth of the matters asserted.  In that

3  regard, Meng testified at his deposition that the defamatory statements were based on

4  "information" he purportedly obtained from just three "sources," *including another*

5  *reporter's unidentified former cellmate (who Meng has never met and/or*

6  *contacted) and another anonymous source, who knew of the "information" based*

7  *on other information he allegedly obtained from another unidentified source.  At*

8  *best, the articles were based on pure rumor and hearsay.*  Accordingly, Meng had

9  every reason to doubt the accuracy of these defamatory statements.  Defendants'

10 conduct in publishing the Articles was particularly egregious because they refused to

11 retract the defamatory statements even *after* they were specifically notified that the

12 articles contained false statements, and, instead, publicly stated that the articles are

13 "believed to be true."  Based on the foregoing, Defendants' acted with actual malice

14 and Plaintiff will likely prevail on her defamation claim, as well as her other claims.

15       Third, to the extent the Court determines that additional evidence is necessary

16 to show that Defendants acted with "actual malice" by publishing the defamatory

17 statements, the Motion to Strike should be denied in order to enable Plaintiff to

18 complete the necessary discovery.  As a matter of law, Plaintiff is entitled to obtain

19 the identities of the "confidential sources" for the defamatory statements in the

20 articles.

21       For the foregoing reasons, as well as those demonstrated below, the Court

22 should deny the Motion.

23 **II.    FACTUAL BACKGROUND**

24       On or about May 28, 2012, Defendants published an article on the Boxun

25 News website that provided extensive details of payments allegedly made to Plaintiff

26 for having sexual relations with a former Chinese official, a Chinese billionaire, and

27 unnamed "other senior officials" in China.  (Declaration of Adam LeBerthon

28 ("LeBerthon Decl."), ¶ 7, Exhibit F.)

3

777181

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   On or about May 30, 2012, Defendants published another article on the Boxun

2   News website that allegedly "confirmed" that Plaintiff had a "sexual relationship"

3   with a former Chinese official and stated that she was being questioned by Chinese

4   authorities who had banned her from leaving mainland China.  (LeBerthon Decl., ¶ 8,

5   Exhibit G.)

6   On or about June 3, 2012, Defendants published another article on the Boxun

7   News website, threatening to retaliate against Plaintiff if she attempted to defend

8   herself against the false and malicious accusations.  For example and without

9   limitation, Defendants stated that "if [Plaintiff] continues to act, [they] will continue

10   to massively disclose the details of the dates she had with several billionaires."

11   (LeBerthon Decl., ¶ 9, Exhibit H.)  It is undisputed that Defendants never contacted

12   Plaintiff before publishing the libelous statements.  (Complaint, ¶ 16.)  Furthermore,

13   the Articles were published anonymously and attributed to unnamed sources such as

14   "intelligence" and "different sources of information."  (*Id.*)

15   Following their publication, the Articles were picked up and promptly

16   republished by other media outlets around the world, including but not limited to

17   Apple Daily (Hong Kong), Apple Daily (Taiwan), Next Magazine, AsiaOne, Yahoo!

18   Hong Kong, Yahoo! Taiwan, CNN, Variety, Entertainment Television, The

19   Huffington Post, and countless others.  (*Id.* at 14.)

20   As set forth in the Complaint, as well as in the declarations of Zhang Ziyi

21   ("Zhang Decl.") and Ling Lucas ("Lucas Decl.") filed in support of this Motion, the

22   statements about Plaintiff are false.  (Complaint, ¶ 15; Zhang Decl., ¶ 8; Lucas Decl.,

23   ¶ 5.)

24   On or about June 6, 2012, Plaintiff's counsel served Defendants with a letter

25   specifically notifying them that the Articles contained false statements.  (Complaint,

26   ¶ 18, Exhibit D.)  The letter also demanded, among other things, that Defendants

27   remove the Articles from the Boxun News website, publish a full and complete

28   retraction, and apologize for the harm they caused Plaintiff.  (*Id.*)  Notwithstanding

4

777181

1   the June 6, 2012 letter, Defendants failed and refused to retract the defamatory

2   statements contained in the Articles.  (*Id.*)  Instead, in response to Plaintiff's

3   demand, counsel for Defendants issued a letter dated June 6, 2012, denying that the

4   Articles contained any "defamatory words" about Plaintiff and saying that Boxun

5   News "merely published what it believed to be true." (*Id.* at ¶ 18, Exhibit E.)  In

6   addition, Defendant published yet another article on the Boxun News website, which

7   is substantially similar to the letter issued by Defendants' counsel stating that the

8   defamatory statements contained in the Articles are "believed to be true." (*Id.* at ¶

9   18, Exhibit F.)

10        In connection with this litigation, Defendants have refused to reveal the

11   identities of their "confidential sources," and instead, contend that such sources are

12   "entitled to anonymity." (Motion, pp. 23-27.)  Plaintiff, however, has offered to

13   enter into an appropriate protective order in an effort to assuage Defendants'

14   concerns about confidentiality, but Defendants continue to refuse to disclose the

15   identity of these witnesses.  *See* Joint Report of Fed. R. Civ. P. 26(f) Conference,

16   Document No. 22, filed on August 17, 2012, p. 4:1-20; *see also* LeBerthon Decl., ¶

17   3, Exhibit B, Deposition of Watson Meng, Volume 2, dated October 17, 2012, pp.

18   17:6-30:9.)

19   **III.   <u>MENG'S ANTI-SLAPP MOTION SHOULD BE DENIED</u>**

20        SLAPP lawsuits "are legally meritless suits filed in order 'to obtain [a political

21   or] economic advantage over the defendant, not to vindicate a legally cognizable

22   right of the plaintiff.'"  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973,

23   976 (C.D. Cal. 1999); *quoting Briggs v. Eden Council for Hope & Opportunity*, 19

24   Cal. 4th 1106, 1126 (1999).  Recognizing that SLAPP suits "tend to chill the exercise

25   of the constitutional right to free speech by instilling fear of enormous recoveries and

26   legal fees into their targets," section 425.16 was enacted "to encourage continued

27   participation in matters of public significance," especially by small groups and lone

28   individuals whose "participation should not be chilled through abuse of the judicial

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    process." Cal. Civ. Proc. Code § 425.16(a).

2         A special motion to strike under section 425.16, also known as an "anti-
3    SLAPP" motion, can be based on a defect in the complaint, or a failure to support a
4    stated claim with evidence, analogous to a motion for summary judgment under
5    Federal Rule of Civil Procedure 56.  *Rogers*, 57 F. Supp. 2d at 983.  Although
6    section 425.16 applies in federal court, it cannot be used in a manner that conflicts
7    with the Federal Rules.  Accordingly, "[i]f a defendant makes a special motion to
8    strike based on the plaintiff's alleged failure of proof, the motion must be treated in
9    the same manner as a motion under Rule 56 except that again the attorney's fees
10   provision of § 425.16(c) applies."  *Id*.  In the instant case, it is undisputed that the
11   Motion to Strike is governed by the standards of Rule 56.  (Motion to Strike, p.
12   12:17-19.)[1]

13   **A.    Meng Has Failed To Meet His Burden Under The Anti-SLAPP**
14          **Statute**

15          To succeed under a special motion to strike, a defendant must first make a
16   *prima facie* showing that the claims to which the motion is directed arise out of the

17   _____

18   [1]     The Federal Rules discourage motions for summary judgment based on
19   evidence outside the record until the nonmoving party has had the opportunity to
     conduct discovery. *Id*. Rule 56(f) provides that if the party opposing a motion for
20   summary judgment cannot yet submit evidence supporting its opposition, "the court
21   may refuse the application for judgment or may order a continuance to
     permit affidavits to be obtained or depositions to be taken or discovery to be had or
22   may make such other order as is just." Fed. R. Civ. P. 56(f). The Supreme Court has
23   restated this rule as ***requiring***, rather than merely permitting, denial of the motion
     "where the nonmoving party has not had the opportunity to discover information that
24   is essential to his opposition." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5
25   (1986).
          As discussed in Section III.C. of Plaintiff's Opposition, to the extent the Court
26   finds that additional evidence of "actual malice" is required, the Motion should be
27   denied in order to allow Plaintiff to conduct further discovery with respect to the
     factual basis for the defamatory articles and the identities of Defendants'
28   "confidential sources"

6

**OPPOSITION TO DEFENDANT WEICAN NULL MENG'S SPECIAL MOTION TO STRIKE**

1   categories described in Section 425.16.  Defendant bears the burden of proof to show

2   that his defamatory statements were protected.  *Bosley Med. Inst., Inc. v. Kremer*,

3   403 F. 3d 672, 682 (9th Cir. 2005).  Under Section 425.16, only specific categories

4   of statements or conduct are protected.

5       In the instant case, Meng contends that Plaintiff's claims arise out of

6   subsections (3) and (4) of Section 425.16.  Subsection (3) applies to "any written or

7   oral statement or writing made in a place open to the public or a public forum in

8   connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3).

9   Subsection (4) applies to "any other conduct in furtherance of the exercise of the

10  constitutional right of petition or the constitutional right of free speech in connection

11  with a public issue or an issue of public interest."  Cal. Civ. Proc. Code §

12  425.16(e)(4).  In other words, statements are only protected "if they can be

13  characterized as statements made in a public forum or in furtherance of the exercise

14  of the constitutional rights of petition or speech in connection with an issue of public

15  interest."  *Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp. 2d 945, 953-54 (E.D. Cal.

16  2002); *citing Globetrotter Software v. Elan Computer Group*, 63 F. Supp. 2d 1127,

17  1130 (N.D. Cal. 1999); Cal. Civ. Proc. § 425.16(e)(3)-(4)

18      For the reasons set forth below, Meng has failed to meet his burden under

19  section 425.16.  He has failed to demonstrate that the defamatory statements

20  occurred in a "public forum" and/or "in connection with an issue of public interest."

21  *See id.*

22      **1.  <u>Meng Has Failed To Meet His Burden Of Showing That The</u>**

23          **<u>Defamatory Statements Occurred In A "Public Forum"</u>**

24      In his Motion to Strike, Meng admits that Plaintiff's claims are based on

25  statements that "he published through the Boxun News ('Boxun') website" – an

26  "independent Chinese dissident news website," which Meng administers.  (Motion to

27  Strike, p. 8:15-20.)  Meng then makes the conclusory assertion that his "news

28  reporting with Boxun is precisely the type of conduct that Cal. Civ. Code § 425.16(e)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1   was intended to protect as expression of speech in the public interest." (*Id.* at p.
2   15:3-5.)

3        To the contrary, numerous courts have held that newspapers and similar news
4   media outlets should not be considered "public forums" for purposes of section
5   425.16. *See, e.g., Rogers v. Home Shopping Net., Inc.*, 57 F. Supp. 2d 973, 985, n. 7
6   (C.D. Cal. 1999) ("A newspaper should not be deemed a 'public forum' for purposes
7   of §425.16"); *Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp. 2d 945, 951 (E.D. Cal.
8   2002) (same); *see also Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1130-31 (2003)
9   ("Means of communication where access is selective, such as most newspapers,
10  newsletters, and other media outlets, are not public forums."); *Lafayette Morehouse,*
11  *Inc. v. Chronicle Publ'g, Co.*, 37 Cal. App. 4th 855, 863 (1995) ("'[n]ewspaper
12  editors or publishers customarily retain the final authority on what their newspapers
13  will publish in letters to the editor, editorial pages, and even news articles, resulting
14  at best in a controlled forum not an uninhibited 'public forum.'") Thus, Plaintiff has
15  not met his burden to show that the defamatory statements at issue here occurred in a
16  public forum. *See id.* For this reason alone, Meng's Motion to Strike should be
17  denied.

18        2.   **Meng Has Failed To Meet His Burden Of Showing That The**
19             **Defamatory Statements Concern An Issue Of Public Interest**
20        Meng also argues that "Plaintiff is clearly a public figure, thus making any
21  discussion of her a matter of public interest." (Motion to Strike, p. 15:12-13.)
22  Meng's contention is directly contradicted by the law.

23        For example, the Court in *Rogers* noted that no California court has held that
24  "celebrity-watching is inherently a public issue." In that regard, the Court
25  emphasized that simply because "a celebrity might be a public figure for purposes of
26  the *First Amendment* should not mean that all speech about that celebrity is
27  necessarily a public issue or an issue of public interest for purposes of § 425.16(e)."
28  *Rogers*, 57 F. Supp. 2d at 985, n. 7 (italics in original).

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

8

777181

Moreover, in *Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp. 2d 945 (E.D. Cal. 2002) ("*Condit*"), the Court denied the defendant's entire anti-SLAPP motion, finding that California's anti-SLAPP suit statute did not apply to the defamatory statements at issue. In *Condit*, the plaintiff was the wife of former United States Congressman Gary Condit. She sued defendant, *The National Enquirer*, for statements it reported on its website and its weekly publication concerning her involvement in the disappearance of Mr. Condit's intern, Chandra Levy. The defendant argued that the plaintiff was properly the subject of public interest because she was the wife and family member of a United States Representative. The Court recognized that "[a]lthough section 425.16 is to be construed broadly, *see* Cal. Civ. Proc. Code § 425.16(a), it does not appear Defendant is being sued for making statements related to a 'public issue' or 'issue of public interest' within the meaning and intent of California's anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16(e)(4)." *Id*. at 954. "Even assuming *arguendo* that Plaintiff is a 'public figure' for First Amendment purposes, not all speech concerning her necessarily bears on a 'public issue' or an 'issue of public interest' for purposes of § 425.16(e)." *Id.*, citing *Rogers*, 57 F. Supp. 2d at 985 n.7.

In his Motion to Strike, Meng contends that the defamatory statements at issue here were supposedly not about Plaintiff, but were "incidental to a major political scandal involving Bo Xilai, a prominent politician in the Chinese Central Communist Party." (Motion to Strike, p. 15:13-17.) In that regard, Meng argues that "Bo Xilai's fitness for an office of public trust . . . is a quintessential matter of public interest." *Id*. at p. 16: 16-17. Meng, however, wholly mischaracterizes the defamatory statements, which have nothing to do with Mr. Bo's fitness for office. For example and without limitation, the defamatory statements provide that Plaintiff "is well-known for exploitation of money, jewellery [sic] and real estates by sleeping with wealthy persons. Usually she has 5-6 billionaires as boyfriends, but there will only be 1 'official boyfriend' publicly." (LeBerthon Decl., ¶ 5, 6, 7, 8, 9, Exhibit D-H,

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

9

777181

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  (Deposition of Mary Hausch, Volume 1, dated October 12, 2012, Exhibits 11-15.)

2  The statements also provide that "Boxun (believes that) [Plaintiff] at least earns

3  RMB¥700 million [approximately $110 million] in the past 10 year pursuant to sex

4  deals..." (*Id.*)[2]  How many boyfriends Plaintiff allegedly had and/or the details of

5  her purported "sex deals," have nothing to do with any "major political scandal" and

6  do not involve any "public issue" or any "issue public interest" for purposes of

7  section 425.16(e). *See Condit,* 248 F. Supp. 2d at 954.  Indeed, to the extent Meng

8  wanted to report on Bo Xilai's use of prostitutes as indicative of Mr. Bo's corruption,

9  he did not have to identify Plaintiff at all.

10      Moreover, Meng's reliance on *Sipple v. Founds for Nat'l Progress*, 71 Cal.

11  App. 4th 226 (1999) ("*Sipple*") is misplaced. (*See e.g.*, Motion to Strike, pp. 16:4-

12  15; 18:3-8.)  In *Sipple*, the plaintiff was a nationally known political consultant who

13  had developed campaigns for political candidates based on the prevention and

14  punishment of domestic violence and other crimes against women.  The plaintiff

15  brought a defamation action against a magazine that published an article regarding a

16  custody dispute between the plaintiff and his first wife, revealing testimony of his

17  first and second wives that he had physically and verbally abused them.  The Court

18  concluded that "the details of appellant's career and appellant's ability to capitalize

19  on domestic violence issues in his advertising campaigns for politicians known

20  around the world, while allegedly committing violence against his former wives, are

21  public issues, and the article is subject to the protection of section 425.16." *Sipple*,

22  71 Cal. App. 4th at 239-40.  In *Sipple*, it was the fact that the plaintiff's public

23  position on domestic violence was directly contradicted by the allegations that he

24  committed domestic violence in his personal life, which the Court found to be the

25

26

27  [2]  During his deposition, Meng stated that the RMB¥700 ($100 million) million amount was incorrect, and instead Plaintiff earned at least twice that amount as a prostitute, which makes these allegation even more suspect. (LeBerthon Decl., ¶ 3,

28  Exhibit B, p. 61:1-18.)

OPPOSITION TO DEFENDANT WEICAN NULL MENG'S SPECIAL MOTION TO STRIKE

1  relevant "public issue" for purposes of the anti-SLAPP motion.

2      *Sipple* is clearly distinguishable. The statements at issue here involve false

3  statements that Plaintiff is a prostitute. Unlike *Sipple*, there is no evidence to

4  suggest, and Defendants do not contend, that Plaintiff has somehow "capitalized" on,

5  or attempted to advance her career by, advocating against or saying anything

6  whatsoever about prostitution. Thus, *Sipple* is inapposite.

7      **B.   There Is A Probability That Plaintiff Will Prevail On Her Claims**

8      As noted above, even if a defendant meets its initial burden under the anti-

9  SLAPP statute, the plaintiff may defeat a motion to strike by establishing that the

10  plaintiff's claims have a probability of success by presenting substantial evidence to

11  support a *prima facie* case of these claims. For the reasons demonstrated below,

12  even assuming *arguendo* that Meng has satisfied his initial burden (which he has not,

13  as demonstrated in Section IV.A), Plaintiff can clearly establish a *prima facie* case

14  against Defendants. For this additional reason, the Motion to Strike should be

15  denied.

16      **1.   Plaintiff Has Alleged, And There Is Sufficient Evidence To**

17          **Show, That Plaintiff Will Prevail On Her Claims**

18      The elements of a defamation claim are: "(1) a publication that is (2) false, (3)

19  defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes

20  special damage." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010). Civil Code

21  section 45 provides that "[l]ibel is a false and unprivileged publication by writing,

22  printing, picture, effigy, or other fixed representation to the eye, which exposes any

23  person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned

24  or avoided, or which has a tendency to injure him in his occupation."   An allegation

25  that the plaintiff is guilty of a crime and/or unchaste is libelous on its face and,

26  therefore, actionable without proof of special damages. Cal. Civ. Code §§ 45(a),

27  46(4); *see Pink v. Catanich* 51 Cal. 420 (1876) (the words "you are a thief and a

28  whore," when spoken of a person, are actionable *per se*).

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1    In the instant case, each of the elements of a defamation claim has been

2    satisfied.  First, it is undisputed that the Articles constitute a publication.  Second,

3    Meng's statements are false.  Plaintiff is not, and has never been, a prostitute.

4    (Zhang Decl., ¶ 8; Lucas Decl., ¶ 5.)  Moreover, she has never even met Bo Xilai and

5    has never received any form of renumeration from him.  (Zhang Decl., ¶ 8; Lucas

6    Decl., ¶ 5.)  Third, the Articles are defamatory because they contain allegations that

7    plaintiff is a prostitute, which is illegal in China, where Plaintiff resides, as well as in

8    California, where Plaintiff regularly conducts business in the entertainment industry.

9    Fourth, the statements at issue here are "unprivileged."  *See* Cal. Civ. Code § 47.

10   Fifth, the allegations that plaintiff is guilty of a crime and/or unchaste are libelous

11   *per se* and, therefore, establish a claim for damages.  *See* Cal. Civ. Code § 45a; *see*

12   *also Childers v. San Jose Mercury Printing & Publishing Co.*, 105 Cal 284 (1894)

13   (publication charging the plaintiff with commission of a felony, if false, is libelous

14   per se and establishes a cause of action for actual damages).

15   With respect to Plaintiff's cause of action for false light invasion of privacy,

16   the requirements of this claim have been met for the same reasons as her defamation

17   claim.  *See Briscoe v. Reader's Digest Ass'n*, 4 Cal. 3d 529, 543 (1971) (a "false

18   light" cause of action "is in substance equivalent to . . . [a] libel claim, and should

19   meet the same requirements of the libel claim").

20   The five elements of a cause of action for intentional interference with

21   prospective economic advantage are: "(1) an economic relationship between the

22   plaintiff and some third party, with the probability of future economic benefit to the

23   plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the

24   part of the defendant designed to disrupt the relationship; (4) actual disruption of the

25   relationship; and (5) economic harm to the plaintiff proximately caused by the acts of

26   the defendant."  *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987).  The evidence shows that

27   Plaintiff has presented substantial evidence as to each of these elements.  For

28   example and without limitation, the defamatory statements about Plaintiff in the

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

777181

1   Articles caused her to lose at least two potential jobs as a spokesperson representing

2   multinational companies and luxury brands. (*See* Zhang Decl., ¶¶ 11-12, Exhibits C,

3   6/17/2012 email from Todd Jacobs and Exhibit D, 6/20/12 email from Ai Wan.)

4   Defendants knew or should have known of these third-party relationships and

5   intentionally interfered with Plaintiff's relationships by publishing the Articles. As a

6   result of Defendants' misconduct, Plaintiff has been harmed. *Id.*

7      Based on the foregoing misconduct, Plaintiff has sufficiently demonstrated a

8   cause of action for negligent interference with prospective economic advantage

9   against Defendants, because they have also failed to act with reasonable care by

10  publishing the Articles. *See Settimo Associates v. Environ Systems, Inc.*, 14 Cal.

11  App. 4th 842, 845 (1993) ("The tort of intentional or negligent interference with

12  prospective economic advantage imposes liability for improper methods of

13  disrupting or diverting the business relationship of another which fall outside the

14  boundaries of fair competition.")

15     Furthermore, there also is a probability that Plaintiff will prevail on her cause

16  of action for unlawful and unfair business practices under Cal. Bus. & Prof. Code

17  section 17200, *et seq.* The California Unfair Competition Law prohibits "unfair

18  competition," which is defined as "any unlawful, unfair or fraudulent business act or

19  practice and unfair, deceptive, untrue or misleading advertising and any act

20  prohibited by [the California false advertising statute]." Cal. Bus. & Prof. Code §

21  17200; *see also Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740-41

22  (1980). As demonstrated above, Defendants engaged in unlawful, unfair, and/or

23  fraudulent business acts and practices by publishing the Articles, which contain

24  defamatory statements about Plaintiff. Defendants' actions have harmed Plaintiff,

25  including but not limited to harm to Plaintiff's reputation and the goodwill associated

26  with her and the brands and products she endorses. (Zhang Decl., ¶ 10; Lucas Decl.,

27  ¶¶ 6-7.)

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

2. **Clear and Convincing Evidence Demonstrates That The Defamatory Statements Were Made With Actual Malice**

In the instant case, the evidence also shows that the defamatory statements at issue here were made with "actual malice." Actual malice means that the defendant made a false statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *St. Amant v. Thompson*, 390 U.S. 727, 728 (1968); *citing New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Actual malice can be proven by direct or circumstantial evidence. *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1167 (2004).

For purposes of an anti-SLAPP motion, the relevant question is "whether a reasonable jury could find, by clear and convincing evidence, that [the plaintiff] has shown actual malice." *Suzuki Motor Corp. v. Consumers Union of United States, Inc.*, 330 F.3d 1110, 1132 (9th Cir. 2003); *quoting Kaelin v. Globe Communications Corp.*, 162 F.3d 1036, 1039 (9th Cir. 1998). In answering this question, the Court "must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Suzuki*, 330 F.3d at 1132; *quoting Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). To survive the defendant's motion, the plaintiff need only present evidence from which a jury might return a verdict in plaintiff's favor. If the plaintiff does so, there is a genuine issue of fact that requires a trial. *Id.*

The Ninth Circuit has recognized that there are two different tests for proving "reckless disregard" in connection with the "actual malice" standard: (1) "Where the jury has proof that a publisher actually had a high degree of awareness of probable falsity, that alone will establish that it in fact entertained serious doubts as to the truth of [its] publication;" and (2) "Where such direct proof is missing, the jury may nevertheless infer that the publisher was aware of the falsity if it finds that there were obvious reasons to doubt the accuracy of the story, and that the defendant did not act reasonably in dispelling those doubts . . . . Although failure to investigate will not

14

1    alone support a finding of actual malice, the purposeful avoidance of the truth is in a

2    different category." *Suzuki*, 330 F. 3d at 1134 (internal quotations and citations

3    omitted).

4        Under the second test regarding "purposeful avoidance," the critical inquiry is

5    whether the publisher failed to act reasonably in investigating an article or a claim,

6    and did so in a manner that suggested it was purposefully attempting to avoid

7    discovering the truth of the matter asserted. *Id.* at 1138; *citing United States v.*

8    *Jewell*, 52 F.2d 697, 700 (9th Cir. 1976) (willful blindness tantamount to knowledge).

9        In *Curtis Pub. Co. v. Butts*, 388 U.S. 130 (1967) ("*Butts*"), for example, the

10    United States Supreme Court affirmed a judgment in favor of the appellee in a libel

11    lawsuit because sufficient evidence supported a finding of highly unreasonable

12    conduct constituting an extreme departure from the standards of investigation and

13    reporting ordinarily adhered to by responsible publishers. In *Butts*, the Court

14    emphasized that the publisher knew the source of the information for the subject

15    articles had been placed on probation in connection with criminal charges, but

16    proceeded to publish the story on the basis of his affidavit without substantial

17    independent support. *Id.* at 157. The Court also noted that the information "was in

18    no sense 'hot news' and the editors of the magazine recognized the need for a

19    thorough investigation of the serious charges. Elementary precautions were,

20    nevertheless, ignored." *Id.* Based on the foregoing evidence, the Court found that

21    the publishers acted with "actual malice" to support a libel claim, *Id.*

22        **a.    There Was Insufficient Factual Basis To Publish The**

23              **Articles Alleging That Plaintiff Was A Prostitute.**

24        In the instant case, there is clear and convincing evidence to conclude that

25    Boxun News did not have sufficient basis to publish any of the Articles, and Meng

26    purposefully avoided the truth. At his deposition, Meng initially testified that the

27    defamatory Articles were based on information provided to him by only two

28    "sources," but he later changed his testimony and said that he utilized three.

15

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1 (LeBerthon Decl., ¶ 3, Exh. B, p. 44:13-15; LeBerthon Decl., ¶ 4, Exh. C, pp. 125:7-

2 126:3)  However, the information provided by these purported sources amounts to

3 nothing more than rumors, innuendo and hearsay – several if not many times

4 removed.

5   Source A.  Meng refused to identify Source A.  He even refused to disclose

6 where Source A is located or his/her occupation.  (LeBerthon Decl., ¶ 3, Exh. B, pp.

7 52:14-55:5; 62:22-63:2; LeBerthon Decl., ¶ 4, Exh. C p. 17:1-7.  He would only say

8 that anonymous Source A was someone who "has access to the connection of the

9 people in different departments of the Chinese government."  (LeBerthon Decl., ¶ 4,

10 Exh. C, p. 18:8-11.)

11   Source A is the most important source for purposes of this lawsuit, as Meng

12 testified that he/she provided all of the lurid details about Plaintiff's work as an

13 alleged prostitute as discussed in the Articles dated May 28 and May 30.  (LeBerthon

14 Decl., ¶ 3, Exh. B, pp. 61:19-24; 62:10-14.)  According to Meng, he believes that

15 Source A learned this information from leaks from someone with some kind of

16 affiliation with the Chinese government with knowledge of the interrogation of

17 Chinese businessman Xu Ming.  But Meng does not know when Xu Ming was

18 interrogated, the identity of the interrogators, or anyone affiliated with the

19 interrogation.  (LeBerthon Decl., ¶ 3, Exh. B, p. 58:13-15; LeBerthon Decl., ¶ 4, Exh.

20 C, p. 15:2-16.)  And, most importantly, he has no information whatsoever as to how

21 Source A purportedly learned of this information.  He believes that Source A may

22 have obtained this information from other unnamed sources, but he does not know

23 who or how many they are.  LeBerthon Decl., ¶ 3, Exh. B, pp. 55:10-16; 61:25-62:4;

24 62:10-20; LeBerthon Decl., ¶ 4, Exh. C, pp. 15:17-16:25; 16:21-25; 18:17-25.)  That

25 is, Source A clearly does not have first-hand knowledge of any of the allegations that

26 Plaintiff is a prostitute, and Meng could not say if Source A even had second-, third-,

27 or fourth-hand knowledge of these purported facts.  Meng conceded that the

28 information may have come through a series of other people.  (LeBerthon Decl., ¶ 4,

Exh. C, p. 16:21-25.)  But, Meng never even asked.  (LeBerthon Decl., ¶ 3, Exh. B, p. 62:10-20; LeBerthon Decl., ¶ 4, Exh. C, p. 15:17-16:19.)  According to Meng's retained expert, David Ardia, Meng did not want to know how Source A learned of this information because Meng was concerned that disclosure of such sources "could be forced out in litigation like this."  (LeBerthon Decl., ¶ 1, Exh. E, Deposition of David Ardia, dated December 19, 2012, pp. 70:24-72:3.)  Clearly, Meng remained deliberately ignorant of the factual basis underlying the allegations made by Boxun News about Plaintiff.  And, at best, the information provided by anonymous Source A is nothing more than unsubstantiated.

Source B.  Like Source A, Meng refused to identify Source B.  (LeBerthon, Decl., ¶ 4, Exh. C., pp. 19:25-20:2.)  He described Source B only as a "researcher" in the "social science area" located somewhere in China.  (Id., p. 20:3-13.)  According to Meng, Source B is someone "familiar with stories in the entertainment industry. . . . This source does not particularly have access to confidential information."  (Id., pp. 19:8-24; 126:19-24.)  Instead, this source provided only what Meng characterized as "background information" about the Chinese entertainment industry with particular relevance to Plaintiff.  (Id., pp. 20:14-25; 31:6-12.)  This information included the purported facts that Plaintiff failed to appear at an international movie festival she had been expected to attend, and that several years ago Plaintiff was involved in what he described as the "Ink Splash scandal."  (Id. pp. 21:1-24:7.)  None of this information supports Boxun News' allegations that Plaintiff is a prostitute.

Zhao Yan.  Meng identified his third source as freelance reporter Zhao Yan. (LeBerthon Decl., ¶ 3, Exh. B, pp. 44:16-45:4.)  Mr. Yan previously lived in China, but he now resides somewhere in New York City.  (Id., p. 45:5-24.)  According to Meng, when Zhao lived in China, he was arrested and imprisoned for leaking information relating to the Chinese leadership to the foreign media.  (LeBerthon Decl., ¶ 3, Exh. B, pp. 39:15-43:6.)  Meng testified that, while in prison, Zhao had a cellmate who had been convicted and sentenced to death for corruption as part of "a

1  big scandal" involving the Chinese Ministry of Public Health.  (*Id.*, p. 49:2-25.)

2  Meng did not know the name of the cellmate, who he said had been imprisoned under

3  an alias.  Indeed, Meng testified that he did not even know the alias used by the

4  cellmate.  (*Id.*, pp. 49:2-50:11; LeBerthon Decl., ¶ 4, Exh. C, pp. 42:20-43:6.)

5  According to Meng, Zhao told him that the anonymous cellmate was a former

6  university classmate and friend of Plaintiff.  (LeBerthon Decl., ¶ 3, Exh. B, pp. 47-

7  8:21; 51:5-8.)  The anonymous cellmate allegedly told Zhao that Xu Ming had some

8  kind of unspecified relationship with Xu Ming.  (*Id.*, pp. 48:22-49:1.)  Meng also

9  testified that the anonymous cellmate allegedly told Zhao that the cellmate had

10  previously once had sex with Plaintiff in exchange for RMB¥50 million

11  (approximately $8 million).  (*Id.*, pp. 47:23-49:1; *see also* LeBerthon Decl., ¶ 4, Exh.

12  C, p. 42:3-19.)  This constitutes nothing more than jailhouse gossip – one cellmate

13  telling another the he supposedly had sex with a world famous movie star.

14        **b.      Meng Had Doubts About The Truth Of The Articles,**

15                  **But Altered A Critical Fact To Try To Make The Story**

16                  **More Believable.**

17        There were obvious reasons to doubt the reports received by Boxun News that

18  Plaintiff was a prostitute.  Plaintiff is an internationally acclaimed motion picture

19  actress.  To say the least, it is highly improbable that she would also work as a high-

20  priced prostitute.  Most importantly, Meng admitted that he himself had doubts about

21  the allegations against her.  He testified that he was skeptical about the reports he

22  received from Source A based on the astronomical amounts of money attributed to

23  her purported earnings as a prostitute.  (LeBerthon Decl., ¶ 4, Exh. C, pp. 143:12-

24  144:10.)  In fact, Source A initially told him that Plaintiff earned RMB¥1.4 billion

25  (approximately $220 million) as a prostitute.  (*Id.*, 38:22-39:9.)  According to Meng,

26  he decided to reduce that amount by one-half to RMB¥700 million (approximately

27  $110 million) for purposes of the May 28 article because he "wanted to be more on

28  the conservative side."  (*Id.*, pp. 38:22-39:9.)  However, rather than being

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  "conservative," Meng's deliberate alteration of the facts was calculated to make an

2  unbelievable defamatory story seem somewhat more believable.  Thus, Defendants

3  clearly acted with actual malice by publishing the Articles.  *See Suzuki*, 330 F. 3d at

4  1138

5            **c.**      **Meng Failed To Even Attempt To Contact Plaintiff To**

6                  **Get Her Side Of The Store Before Publication.**

7        Good journalism practices required that Boxun News contact Plaintiff and

8  solicit a comment from her before publishing stories accusing her of being a

9  prostitute.  (Declaration of Michael Parks ("Park Decl."), ¶¶ 17-18; Declaration of

10  Stanton L. Stein, ¶¶ 7-9.)  However, it is undisputed that Meng never made any

11  attempt whatsoever to contact Plaintiff in order to determine if the stories were true

12  or obtain her side of things.  (Zhang Decl., ¶ 7.)

13        There was no reason why Meng could not do so.  According to Meng, he made

14  no effort to contact Plaintiff because he did not believe he had any reason to

15  disbelieve the information his anonymous sources provided.  (Meng Decl., ¶ 11.)

16  Apparently, accusations that Plaintiff was a prostitute were just "too good to check."

17  Instead, in a rush to publish a story that that was not subject to any sort of deadline

18  whatsoever, Boxun News published the first article with all of its salacious details

19  about Plaintiff just "one or two days" after receiving the initial reports.  (LeBerthon

20  Decl., ¶ 4, Exh. C, p. 138:5-12.)  Meng's own retained expert, Mary Hausch, initially

21  testified that as a former managing editor of the Las Vegas Review Journal, she

22  would not have published the Articles without first soliciting a comment from

23  Plaintiff.  (LeBerthon Decl., ¶ 5, Exh. D, Deposition of Mary Hausch dated October

24  12, 2012, pp. 148:21-149:17.)  Furthermore, in the article dated June 12, 2012, Boxun

25  News stated that it "has always published Ms. Zhang's statements and reports, thus

26  showing fairness on their part."  This false statement creates the impression that

27  Boxun solicited a comment from Plaintiff, and she either declined to provide any or

28  had nothing to say.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

19

777181

In addition to the above, Defendants' conduct is particularly egregious considering that, even after Plaintiff contacted Defendants and specifically informed them that the defamatory statements contained in Articles were false, Defendants refused to retract them. (Complaint, ¶ 18, Exhibit F.) Instead, Boxun News published the June 12 article stating that the stories it published accusing Plaintiff of being a prostitute were "believed to be true." This is further evidence of malice.

### d. The Articles Go Far Beyond Recitals Of Alleged Facts And Instead Threaten And Taunt Plaintiff.

Taken as a group, the four articles published by Boxun News dated May 30 and June 3, 12 and 20 go well beyond the ordinary practice of political and investigative journalism and suggest a malicious campaign by Boxun News against Zhang Ziyi. Parks Decl., ¶¶ 25-34. The Boxun articles increasingly take on a threatening tone, suggesting that if Plaintiff continues to deny the allegations and defend her reputation, "more secrets will be exposed and all 'rumors' become the truth." *See* Article dated May 30, 2012 (LeBerthon Decl., ¶ 8, Exh. G.) In this, Boxun News almost becomes an avenging angel. According to Meng, "Boxun has the responsibility of making known to the public the corruption and trades of power for money involved in reports relating to Zhang Ziyi." *See* Article dated June 20, 2012 (LeBerthon Decl., ¶ 11, Exh. J.)

While it may not be unusual for news organizations to defend their reporting on controversial matters, the Articles published by Boxun News are extremely malicious. For example, in the May 30 article, Boxun News taunts Plaintiff and challenges her to travel outside China to Hong Kong or the United States in order for her to prove that its initial report (May 28 ) was untrue and that her movements had not been restricted by investigators in connection with the Xu Ming interrogation. According to the article, "Any other attempt to deny this truth is in vain."

In the article dated June 3, 2012, Boxun News stated that Zhang Ziyi's public relations team had begun a counterattack, blaming a rival actress, Fan Bingbing, as

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1  the "black hand" behind the allegations. "However, such PR stunts and technical

2  manipulations have impacts so low that nothing changes the fact that the word

3  'prostitution' is being directly used in the reports by Western media," Boxun said.

4  And Boxun threatened that further denials by Zhang Ziyi will lead its "source close to

5  the Central Commissioner for Discipline Inspection of the CPC" to release details of

6  alleged affairs that Xu Ming said she had with "several billionaires."  Meng testified

7  in his deposition that he believed that Boxun News' readers would be offended by

8  Plaintiff's efforts to defend herself against the charges leveled against her, and it

9  published the June 3, 2012, article because anonymous Source A "felt it necessary to

10  make a response to her statement." (LeBerthon Decl., ¶ 4, Exh. C, pp. 35:1-36:5.)

11      Writing under his pen name of Wei Shi, Meng went even further in the June 20

12  article to assert that this lawsuit is part of a conspiracy to silence them. "Such a

13  frivolous lawsuit indicates Zhang Ziyi's suit against Boxun and the other media is a

14  political event, and not simply a civil dispute." (LeBerthon Decl., ¶ 9, Exh. H.)  In

15  his deposition, Meng went much further, asserting that one of China's top 10 leaders

16  was in a conspiracy with Plaintiff to sue Boxun and ultimately silence it because of

17  its support of Chinese political dissidents. (LeBerthon Decl., ¶ 4, Exh. C, pp. 66:14-

18  69:6.)  He said he had this on very good authority from a political commentator in

19  Beijing and a senior editor at a Chinese newspaper in Hong Kong. (*Id.*)

20      Boxun News even set up a "Zhang Ziyi 'Prostitution-gate'" section on the "hot

21  topics" portion of its website, but averred that Boxun has never used the word

22  "prostitution" in describing Ms Zhang's alleged activities and is simply borrowing it

23  from Western news media reports. The purpose of the "hot topics" section is to

24  aggregate all the Zhang Ziyi reports in one place – and drive user traffic to them,

25  particularly from outside search engines. (Parks Decl., ¶ 31.)  All of this goes far

26  beyond mere news reporting.  Boxun News and Meng apparently have a vendetta

27  against Plaintiff, and they published the Articles in an effort to harm her.

28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

21

777181

**C.**   **Alternatively, If The Court Determines That Additional Evidence Regarding Defendants' Actual Malice Is Necessary, The Motion To Strike Should Be Denied In Order to Allow Plaintiff To Obtain The Identities Of The "Confidential Sources"**

If the Court determines that further evidence of Defendants' actual malice is necessary, the Motion to Strike should be denied because Meng has refused to provide the identities of his "confidential sources" for the Articles.  As a matter of law, information regarding the factual basis for the defamatory statements and the identities of the "confidential sources" is relevant to prove that Defendants acted with actual malice.  *See Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833 (C.D. Cal. 1993) ("*Dangerfield*") (emphasizing that the identity of a reporter's sources may be essential to prove "actual malice"); *see also Zerilli v. Smith*, 656 F. 2d 705 (D.C. Cir. 1981) (stating that proof of actual malice depends on knowing the identity of newspaper's informant in order to show that informant is unreliable).

In *Dangerfield*, a well-known comedian filed a libel suit against the defendants in connection with an article in which he was negatively depicted.  The comedian subsequently filed a motion to compel the defendants to disclose the identities of their sources for the article.  The Court granted the motion and ordered the defendants to disclose the identities to the comedian's counsel for purposes of the libel suit.  In its ruling, the Court emphasized that:

> The nature of Plaintiff's cause of action--a libel claim brought by a public figure in which a media defendant asserts the First Amendment privilege--places it squarely in the realm of cases where disclosure is appropriate. Because Plaintiff seeks the identity of Defendants' sources in order to prove that Defendants acted with actual malice, it is clear that the information sought goes to the heart of the claim.

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

777181

1 | *Id.* at 837.

2 |   The Court in *Dangerfield* recognized that the First Amendment privilege

3 | against the disclosure of confidential media sources could be overridden by showing

4 | a compelling need for the information.  Because the comedian was a public figure, he

5 | had to show that defendants had acted with actual malice in their publication of the

6 | article.  Since the article was based on the informants' statements, the Court

7 | concluded that their identities were essential to prove that defendants acted with

8 | actual malice in publishing the article.  *Id.*

9 |   In the instant case, the Articles are based almost entirely on statements from

10 | "confidential sources."  (*See* Meng Decl., ¶¶ 10-13, 18-20.)  Plaintiff has repeatedly

11 | requested the identity of Defendants' sources for purposes of the instant defamation

12 | lawsuit.  Defendants, however, have failed and refused to provide the requested

13 | information.  Plaintiff has even offered to enter into an appropriate protective order

14 | in an effort to alleviate any concerns about confidentiality.  *See* Joint Report of Fed.

15 | R. Civ. P. 26(f) Conference, Docket No. 22; *see also* LeBerthon Decl., ¶ 3, Exh. B,

16 | pp. 17:6-30:5.)  Despite the foregoing, Defendants have refused and, instead,

17 | baselessly contend that "Meng's sources are entitled to anonymity."  (Motion to

18 | Strike, pp. 23-27.)

19 |   Like the plaintiff in *Dangerfield*, Plaintiff has a powerful interest in knowing

20 | the identity of Meng's sources because such information is relevant to prove that

21 | Defendants acted with actual malice, which goes directly to Plaintiffs' libel *per se*

22 | claim, among others.  *See Dangerfield*, 817 F. Supp. at 837.  In particular, the

23 | identities of Defendants' sources are necessary to test their veracity and reliability,

24 | and to determine whether such sources even exist.  *Id.* (recognizing that a libel

25 | plaintiff may seek "the identity of confidential sources in order to test their veracity

26 | and reliability or determine whether such sources exist").

27 |   Moreover, Plaintiff has no other means to discover the identities of these

28 | confidential sources.  *See id.* at 838.  According to Defendants, the Articles are

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

23

777181

largely based on statements from "confidential sources," including:  (1) an unidentified "citizen journalist;" (2) a person who allegedly used to work for the New York Times in some unknown capacity, who allegedly heard rumors about Plaintiff from his unidentified former prison cellmate and (3) another anonymous source who was purportedly familiar with the entertainment industry in China.  (*See* Meng Decl., ¶¶ 10-13, 18-20; *see also* LeBerthon Decl., ¶ 4, Exhibit C, p. 126:17-25.)  Defendants have not identified any non-confidential sources with personal knowledge for their information, because there are none.  (*Id.*)

For the foregoing reasons, if the Court determines that additional evidence of Defendants' actual malice is necessary, the Motion to Strike should be denied in order to allow Plaintiff to obtain the identities to the "confidential sources" for purposes of this lawsuit.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion and permit Plaintiff to proceed on her claims.

DATED:  January 4, 2013          GLASER WEIL FINK JACOBS
                                 HOWARD AVCHEN & SHAPIRO LLP


                                 By:  /s/ Adam LeBerthon
                                     JOHN MASON
                                     PATRICIA L. GLASER
                                     ADAM LEBERTHON
                                     LISA M. ZEPEDA
                                     Attorneys for Plaintiff Zhang Ziyi

OPPOSITION TO DEFENDANT WEICAN NULL MENG'S SPECIAL MOTION TO STRIKE

777181