JOHN MASON - State Bar No. 51116
 jmason@glaserweil.com
PATRICIA L. GLASER - State Bar No. 55688
 pglaser@glaserweil.com
ADAM LEBERTHON - State Bar No. 145226
 aleberthon@glaserweil.com
LISA M. ZEPEDA – State Bar No. 231125
 lzepeda@glaserweil.com
GLASER WEIL FINK JACOBS
  HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Plaintiff Zhang Ziyi

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG ZIYI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CHINA FREE PRESS, INC., a North Carolina non-profit corporation doing business as BOXUN NEWS; WEICAN NULL MENG, an individual also known as WATSON MENG and also known as WEICAN "WATSON" MENG; DOES 1-25, inclusive,<br><br>Defendants. | CASE NO.: 2:12-cv-05216-DMG (PLAx)<br><br>**DECLARATION OF STANTON L. STEIN, ESQ.**<br><br>Date:           January 25, 2013<br>Time:          9:30 a.m.<br>Courtroom: 7 |

## DECLARATION OF STANTON L. STEIN

I, Stanton L. Stein, declare as follows:

1. I am an attorney at law duly licensed to practice before the Courts of the State of California and this Court. I am a name partner with the law firm of Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP (hereafter "the Firm"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. I am a senior partner in the Los Angeles office of the Firm, and I am the head of the Firm's Entertainment and Media Litigation department. I received my J.D. degree in 1969 from the University of Southern California and have been actively practicing law in Los Angeles since then. My practice focuses on entertainment litigation, and my clientele includes actors, writers, directors, producers, musicians, high net worth individuals, entertainment guilds, talent agencies, independent production companies and interactive gaming companies. A copy of my Firm biography is attached hereto as Exhibit "A."

3. I was profiled in California Lawyer as one of the top five "A-List Entertainment Lawyers" changing Hollywood. I have been featured in Forbes Magazine, the Daily Journal's California Law Business, and was listed in the "Rising" section of Entertainment Weekly's "101 Most Powerful People in Entertainment." I am regularly listed as a "Super Lawyer" in Los Angeles Magazine and appeared on the cover of the National Law Journal. I was named "Entertainment Lawyer of the Year" by the Beverly Hills Bar Association and earlier by the Century City Bar Association.

4. I received the ACLU Foundation's Pro Bono Civil Liberties Award. I was listed in The Best Lawyers in America and the Daily Journal's "100 Most Influential Lawyers in California." I am among the Lawdragon 500's Leading Lawyers in America. I am regularly listed in "Who's Who in L.A. Law" by the Los Angeles Business Journal and have consistently ranked No. 1 in the publication

Chambers USA: America's Leading Business Lawyers.

5. As part of my practice, I have successfully litigated numerous defamation actions on behalf of well-known individuals against both publications and other individuals. In the very early years of my practice, I obtained significant confidential settlements in defamation actions I brought on behalf of Michael Landon and Melissa Gilbert against the *National Enquirer*. More recently, I handled defamation matters on behalf of actress Eva Longoria and basketball player Tony Parker against *X17* Online, actor David Duchovny against the *Daily Mail* and against *E! Online*, actor Eddie Cibrian against *Life & Style Weekly*, musician 50 Cent against his former girlfriend, actress Ashley Olsen against the *National Enquirer*, and actor Rob Lowe against website Celebslam. Each of these cases resulted in a confidential settlement agreement and most of them also resulted in printed retractions by the publication defendants.

6. In addition, I frequently lecture on the topic of defamation in the entertainment industry. For the past seven years, I have been an adjunct professor of Entertainment Law at the USC Gould School of Law, where my entertainment litigation course includes a class on defamation. In 2008, I taught entertainment law (including a class about defamation) at Stanford Law School. I also annually lecture on the topic of celebrity defamation litigation at the University of California Berkeley School of Law.

7. As part of my practice representing high-profile individuals, I am frequently contacted by reporters of both print and online publications and websites or blogs prior to their publication of a story. During such calls, the reporter typically gives me an outline of his proposed story and asks whether I or my client would like to comment and/or correct any of the information. It is my practice to then call my client, advise him or her of the proposed story, and obtain more facts. In some cases, the proposed story is true and we do nothing. However, if the story is false, it is my practice to immediately inform the reporter of its falsity and to provide facts,

documentary evidence and, occasionally, sworn declarations, that either demonstrate its falsity or otherwise support the actual truth. Upon receiving this information from me, the reporter or publication often kills the proposed story entirely or substantially revises it in accord with the evidence that I have provided.

8. In connection with this matter, I have reviewed Ms. Zhang's Complaint, and Defendant Weican Null Meng's Special Motion to Strike and the various declarations submitted in connection therewith.

9. In this case, Mr. Meng did not contact Ms. Zhang or her representatives before he published his salacious and false story about her. It is my understanding that his excuse for not doing so was that he did not think that Ms. Zhang or her representatives would have responded. However, this is contrary to my extensive experience as a representative of high-profile talent in the entertainment industry. Further, it makes no sense to me that a reporter would not at least attempt to contact representatives of the subject of his story because of a belief that they would not return a call. Indeed, it is obvious that Mr. Meng recognized the need to verify his story with Ms. Zhang, or her representatives, but remarkably he instead chose not to even attempt to do so. At a minimum, this demonstrates a reckless disregard for the truth.

10. Over the decades in which I have been practicing entertainment law, I have witnessed the entertainment community become increasingly international in nature. Both stars from abroad and the entertainment product they create are becoming more popular in the United States than ever before. Like Ms. Zhang, many of such individuals come from countries with political systems different from ours. Although I understand and respect the general concept of confidential sources and the various reasons that reporters and publications protect them, this case demonstrates the perils of taking such protections too far. Here, Mr. Meng is the only person who knows the identity of his alleged sources, which he refuses to divulge. He further refuses or is unable to explain the manner in which the alleged information was

provided to him or, in some cases, to his sources. However, such information is critical to assessing whether Mr. Meng published the story with reckless disregard for its truth. If reporters are permitted to write false statements and then hide behind anonymous sources known only to them allegedly out of concern about what might happen to such sources if they are disclosed, they can say whatever they want with impunity. Under such circumstances, there is no way to determine the validity of the source or the information they have allegedly provided. Defamed individuals will be left with no recourse to protect their names, reputations, and livelihoods.

11. The SLAPP statute, California Code of Civil Procedure Section 425.16, specifically gives the Court the power to permit specified discovery notwithstanding the general stay of discovery proceedings that takes effect upon the filing of a SLAPP motion. This exception is particularly necessary for plaintiffs who are required to prove the probability of ultimate success on the merits at a very early juncture in their case. Here, it is my opinion that it is both appropriate and necessary for the Court to devise some mechanism where, through discovery, Ms. Zhang, the Court, or even a neutral third party could gain more information regarding Mr. Meng's alleged anonymous sources and the manner in which information was allegedly communicated to them, while simultaneously protecting confidentiality. Without this information, it is not possible to legally determine whether Mr. Meng's reliance on such sources on its own constitutes reckless disregard for the truth.

12. I have not served as an expert witness in a state or federal case in the last four years. My hourly fee for legal services, including expert witness services, is $850/hour.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 4th day of January, 2013, at Los Angeles, California.

/s/ Stanton L. Stein
Stanton L. Stein