Marc J. Randazza (California Bar No. 269535)
Jason A. Fischer (California Bar No. 275469)
RANDAZZA LEGAL GROUP
mjr@Randazza.com
jaf@Randazza.com
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com

Attorneys for Defendant,
*Weican Null Meng*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG ZIYI, an individual, | Case No. CV12-5216-DMG (PLAX) |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) (ECF 18)** |
| vs. | |
| CHINA FREE PRESS, INC., a North Carolina non-profit corporation doing business as BOXUN NEWS; WEICAN NULL MENG, an individual known as WATSON MENG and also WEICAN "WATSON" MENG; DOES 1-25, inclusive, | Date: January 25, 2013<br>Time: 9:30 a.m.<br>Dept.: 7 |
| Defendants. | |

1

546470.1

# TABLE OF CONTENTS

TABLE OF AUTORITIES ............................................................................... ii

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT ...........................................................................................1

   A.   Meng Has Not Waived His Personal Jurisdiction Defenses ............................1

   B.   Meng's Conduct Was Not Directed At the State of California or This
      District; Arguments to the Contrary are Frivolous ...........................................2

   C.   The Court's Exercise of Jurisdiction Over Meng Would Be
      Unreasonable ...................................................................................................4

      i.    Meng Has Insufficient Ties to California To Justify Him, a North
          Carolina Resident, Being Sued Within This State.................................5

      ii.   Plaintiff's Evidence Does Not Support The Conclusion that Meng's
          Conduct Caused Harm Within California ..............................................9

      iii.  The Factors This Court Must Consider Weigh Against Exercising
          Personal Jurisdiction Over Meng ........................................................11

III.  CONCLUSION.....................................................................................13

546470.1

1

**TABLE OF AUTHORITIES**

2

3
*Adobe Sys., Inc. v. Trinity Software Dist., Inc.,*
4
   Case No. 12 cv 1614, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012).......................6

5
*AF Holdings LLC v. Does 1-96,*
6
   Case No. C-11-03335, 2011 WL 5864174 (N.D. Cal. Nov. 22, 2011) ................ 7-8

7
*Bancroft v. Masters, Inc. v. Augusta Nat'l, Inc.,*
8
   223 F.3d 1082 (9th Cir. 2000) ...................................................................................9

9
*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ...................................................................................2

10
*Benny v. Pipes,*
11
   799 F.2d 489 (9th Cir. 1986) .....................................................................................2

12
*Brayton Purcell LLP v. Recordon & Recordon,*
13
   606 F.3d 1124 (9th Cir. 2010) ..........................................................................2, 3, 9

14
*Burger King Corp. v. Rudzewicz,*
15
   471 U.S. 462 (1985) .................................................................................................12

16
*Calder v. Jones,*
17
   465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).............................................2

18
*CollegeSource, Inc. v. AcademyOne, Inc.,*
19
   Case No. 08-CV-1987, 2009 WL 2705426 (S.D. Cal. Aug. 24, 2009)....................7

20
*Cybersell, Inc. v. Cybersell, Inc.,*
   130 F.3d 414 (9th Cir. 1997) ................................................................................3, 5

21
*Digital Sin, Inc. v. Does 1-5698,*
22
   Case No. C-11-04397, 2011 WL 5362068 (N.D. Cal. Nov. 4, 2011) ......................8

23
*In re Petition by Ingenuity 13 LLC,*
24
   Case No. 2:11-ms-84 2012, WL 968080 (E.D. Cal. Mar. 21, 2012)........................7

25
*Jimena v. UBS AG Bank, Inc.,*
26
   Case No. 1:07-cv-00367, 2011 WL 2551413 (E.D. Cal. June 27, 2011)...............10

27

28

                             ii

*Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.,*
   Case No. CV 08-3226, 2008 WL 5412431 (C.D. Cal. Dec. 29, 2008) ...................4

*McIntyre v. Ohio Elections Comm'n,*
   514 US. 335 (1995) ................................................................13

*Nicosia v. De Rooy,*
   72 F. Supp. 2d 1093 (N.D. Cal. 1999)........................................2, 4

*NuboNau, Inc. v. NB Labs, Ltd.,*
   Case No. 10 cv 2631 2012, WL 843503 (S.D. Cal. Mar. 9, 2012)...........................6

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) .................................................2

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ..................................................2

*Wenz v. Memery Crystal,*
   55 F.3d 1503 (10th Cir. 1995) .................................................4

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
   952 F. Supp. 1119 (W.D. Pa. 1997) ............................................5

**STATUTES**

California Civil Procedure Code § 425.16 ........................................ 2

Fed. R. Evid. 801 .............................................................. 10

Fed. R. Evid. 802............................................................... 10

iii

546470.1

Defendant Weican "Watson" Null Meng ("Meng," or the "Defendant") files this reply brief in support of his pending motion to dismiss by and through counsel.

## I.     Introduction

Meng is a resident of North Carolina who runs <boxun.com> ("Boxun News"), a Chinese dissident news service that is available throughout the internet, but which is geared toward the People's Republic of China.  He does not promote it within California (ECF 18).   Like Meng, all of the information he possesses necessary to complete this case is in his possession, within the state of North Carolina.  Because he published statements about Plaintiff on the Internet, though, she has haled him into this Court in California, presumably for her attorney's convenience.

Despite living in China, Plaintiff claims to have some vague business interest in Los Angeles.  Under her theory of personal jurisdiction, alleging the importance of Los Angeles to the global entertainment industry – despite being incapable to show or truthfully allege any harm within that forum – is sufficient to subject anyone who writes about her to the personal jurisdiction of California's courts. Apparently, the Plaintiff takes the position that the Central District of California is a special jurisdiction where any actor, from any country, may assert jurisdiction over anyone who offends them.  Despite the underlying journalistic works focusing on China, emanating from North Carolina and Hong Kong, the Plaintiff seeks to create a new "movie star jurisdiction" rule.  This is not only improper, it is <u>madness</u>.  This is an insufficient basis for Meng to be subject to a California court's personal jurisdiction.  Dismissal of this action against Meng for the Court's lack of personal jurisdiction is proper.

## II.     Argument

### A. Meng Has Not Waived His Personal Jurisdiction Defenses.

Meng's filing of additional motions beyond a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction does not constitute a waiver of this defense.  In

1

546470.1

1
2
3
4

*Nicosia v. De Rooy*, the United States District Court for the Northern District of California provided no indication that the defendant's Rule 12(b)(2) defenses were waived in any way by filing a special motion to strike under California Civil Procedure Code § 425.16. 72 F. Supp. 2d 1093 (N.D. Cal. 1999).

5
6
7
8
9
10
11
12

By all appearances, filing both a Rule 12(b)(2) motion to dismiss and special motion to strike under California Civil Procedure Code § 425.16 is a common practice. *See Batzel v. Smith*, 333 F.3d 1018, 1023 (9th Cir. 2003).  Under Rule 12(h), Meng's defense to personal jurisdiction is waived only if it is not raised in his first responsive pleading.  The defense was timely raised (ECF 18) and properly before the Court.  While Meng may have waived this defense if he had made a general appearance before filing his motion to dismiss under Rule 12(b)(2), that is not the case in this litigation, and his objection to this Court's personal jurisdiction over him remains intact. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).

13
14

### B. Meng's Conduct Was Not Directed At the State of California or This District; Arguments to the Contrary are Frivolous.

15
16
17
18
19
20
21
22
23
24
25
26

Even if Plaintiff establishes that Meng's conduct is willful, she still must satisfy the remaining two prongs of the *Calder* test to show that the Court may exercise personal jurisdiction over Meng. *Calder v. Jones*, 465 U.S. 783 (1984). Specifically, Plaintiff must show that Meng directed his conduct into the forum state – California – and that he reasonably foresaw that the injury would be felt in the forum state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).  Mere contact with the forum state is not sufficient to meet this standard; "something more than mere foreseeability [is needed] in order to justify the assertion of personal jurisdiction." *Id.* at 1129.  Plaintiff has the burden of showing that the intentional acts allegedly committed by Meng were explicitly targeted at the forum. *See generally Id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).

27
28

2

Plaintiff has not demonstrated that Meng's conduct is expressly directed into the state of California or this district.

Plaintiff's claims that Meng directed his activity into California because of his supposed knowledge of Ms. Zhang's business contacts there.  These conclusory and illogical assertions are insufficient to create personal jurisdiction.  Plaintiff's own claims rely on inference and speculation that Meng supposedly knew of the importance of Los Angeles to Plaintiff, a resident of China, and therefore directed his actions into California.  This logical leap is unsupported by precedent, and fails to satisfy the "something more" required beyond mere foreseeability to warrant this Court's exercise of personal jurisdiction. *Brayton Purcell*, 606 F.3d at 1129.

The "something more" required by law is completely absent.  Meng did nothing to solicit or seek California viewers to Boxun News (ECF 18-1 ¶¶ 13-16).  Meng did not specifically target California with Boxun's content, and further understood Plaintiff to be a resident of China, rather than California (*id*. ¶¶ 13-16, 20-22).  Meng has not received any donations or financial backing from within California other than those it received through PayPal (Meng Depo. Vol. II at 15:1-11).  Most tellingly, the articles at issue neither mention California nor Plaintiff's claimed connections within this state (ECF 1, 49-6 through 49-8).  Where there is no encouragement of forum residents to visit the website, courts have declined to exercise personal jurisdiction over the defendants. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).  In this case, there is not only an absence of encouragement for Californians to read Boxun, but silence as to the whole state with respect to Plaintiff's claims.

Plaintiff's claims that Meng is subject to suit solely because Los Angeles is an entertainment center is untenable, and threatens to subsume due process analysis altogether if accepted: If true, then anyone who criticizes any entertainer ever may be amenable to suit within California.  This rule, if manufactured by the Court, will create a brand-new "entertainment industry exception" to the due process clause.  If

3

accepted, perhaps any news article mentioning chowder will create jurisdiction in Boston; any writing about peaches will *per se* establish Atlanta jurisdiction; any story about a car – even a German-made Porsche – will subject the author to jurisdiction in Detroit.

### C. The Court's Exercise of Jurisdiction Over Meng Would Be Unreasonable.

Neither party resides in California.  This case is pending within this District simply because it is where Plaintiff's attorneys are located, based on the conclusory premise that Los Angeles is the "world-wide center of the entertainment industry." (ECF 1 ¶ 21, *see also* ¶ 1) Bollywood would disagree.[1]  The Court need not assume the truth of bizarre conclusory allegations regarding Plaintiff's connection to Los Angeles, and the city's import within the global entertainment industry. *Nicosia*, 72 F. Supp. 2d at 1097, *citing Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  While Plaintiff and Meng dispute the level of interactivity of Boxun News' website, the "mere maintenance of an interactive website" is insufficient to show specific jurisdiction. *Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*, Case No. CV 08-3226 *2008 WL 5412431* at *4 (C.D. Cal. Dec. 29, 2008).

As for Plaintiff's claims that have been disputed and contradicted, Meng's evidence shows that personal jurisdiction is unreasonable.  Plaintiff alleges that Boxun's articles were "seen and read by countless persons" within Los Angeles (ECF 1 ¶ 21).  This is inaccurate, as the parties know that from June 1 to October

---

[1] As far back as 2007, Bollywood – India's equivalent of Hollywood and representative of India's burgeoning film industry, produced 1,000 movies a year, an estimated 10 times of the Los Angeles' film industry's total at the time, to entertain a nation with a population three times the size of the United States. Jason Overdorf, *Bigger Than Bollywood*, The Daily Beast (Sept. 9, 2007), http://www.thedailybeast.com/newsweek/2007/09/09/bigger-than-bollywood.html (*last accessed* Jan. 9, 2012).  While one can quibble about the relative merits of Los Angeles compared to other entertainment hubs, common knowledge casts Plaintiff's claim that Los Angeles is "the" singular hub of the entertainment industry into serious doubt.  By this logic, the real proper jurisdiction is Mumbai.

4

546470.1

1   12, 2012, Boxun's articles were seen in Los Angeles by, *at most*, 0.47% of Boxun's

2   readership (ECF 49-1 at 67-78).   This venue represents less than one half of one

3   percent of Boxun's theoretical Internet traffic.   As explained below, Plaintiff's

4   reliance on Internet traffic statistics is misplaced, and does not give rise to personal

5   jurisdiction over Meng.

6                    **i.   Meng Has Insufficient Ties To California To Justify Him,**

7                    **a North Carolina Resident, Being Sued Within This State.**

8           In order to satisfy the due process requirements of personal jurisdiction, a

9   defendant must have sufficient pre-existing contacts with the forum state. *Cybersell*,

10  130 F.3d at 414.   In *Cybersell*, the United States Court of Appeals for the Ninth

11  Circuit held that "the likelihood that personal jurisdiction can be constitutionally

12  exercised is directly proportionate to the nature and quality of commercial activity

13  that an entity conducts over the Internet." *Id*. at 419, *quoting Zippo Mfg. Co. v.

14  Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).   Among the factors

15  recognized for showing a connection with the forum state are the number of "hits"

16  received by a web page from residents of the forum state and evidence that the

17  Internet activity "bore fruit" in the forum state. *Cybersell*, 130 F.3d at 419.   Meng's

18  contacts with California fall far short of this mark, and are insufficient to justify

    personal jurisdiction over him.

19         In 2012, Boxun News received three donations totaling $33.08 after

20  processing fees. (See Declaration of J. Malcolm DeVoy (hereinafter "DeVoy

21  Decl.") ¶ 4, Exhibit A)  Since 2011, Boxun News has received only $50.00 in gross

22  funds from California donations (*id*.).   Additionally, $45 of the $50 Boxun received

23  from California sources was realized before Meng had ever reported on Plaintiff

24  (DeVoy Decl. ¶ 4, Exhibit A).   Boxun did not receive recognizable income

25  originating in California from any other sources. (Meng Depo. Vol. I 14:8-15)

26         While PayPal, the service that processed these donations for Boxun News

27  does have operations within California, its Worldwide Operations headquarters is

28

                                            5

located in Nebraska, and its International headquarters is found in Singapore.[2]  Even if PayPal were wholly based in California, Boxun News' use of the popular Internet service used by many modern retail businesses does not warrant specific jurisdiction in California. *Adobe Sys., Inc. v. Trinity Software Dist., Inc.*, Case No. 12 cv 1614 *2012 WL 3763643* at *6 (N.D. Cal. Aug. 29, 2012); *NuboNau, Inc. v. NB Labs, Ltd.*, Case No. 10 cv 2631 *2012 WL 843503* at *4 (S.D. Cal. Mar. 9, 2012) (finding that even a website that is not inherently passive but has conducted virtually no commercial activity, the exercise of personal jurisdiction would be improper). Boxun News' use of the PayPal service for donations is unrelated to the alleged defamation at issue, and cannot independently be a basis for personal jurisdiction.  If receiving $50 over the course of two years from California is sufficient to make being subject to suit in California reasonable, then the United States Supreme Court should dispatch with due process analysis for personal jurisdiction altogether.

Plaintiff contends that Boxun News was accessed by tens of thousands of people from Los Angeles, out of its more than 6.4 million viewers between June 1 and October 12, 2012 (ECF 49-1 at 67-78), and therefore jurisdiction is proper. Assuming, generously, that every "visitor" listed as originating from a Los Angeles internet protocol address actually resided within this district, this accounts for only 0.47% of Boxun's visitors in the period for which statistics are available.[3]  Even accepting Plaintiff's figure of Boxun News receiving 285,000 visits from California from June 1 through October 12, 2012 (ECF 47 at 18:11-14), this represents only 4.5% of Boxun's visitors.  Additionally, a number of these California "visits" may arise from automated traffic from search engines and webcrawlers based in California, which automatically scour the web for content to index and archive.

---

[2] *See* https://www.paypal-media.com/about.
[3] Even if IP addresses identified as originating from San Francisco – which ranks higher than Los Angeles – are included, these two metropolitan areas constitute less than 1% of Boxun's total visits from June 1 to October 12, 2012. (ECF 49-1 at 67-78)

6

*CollegeSource, Inc. v. AcademyOne, Inc*., Case No. 08-CV-1987 *2009 WL 2705426* at *4 (S.D. Cal. Aug. 24, 2009), *rev'd on other grounds*.

However, the "visits" shown on the report tell only part of Boxun's reading demographic.  These visits are tracked by Internet Protocol ("IP") Address, and performed by "visitors."[4] Each visitor can visit the site repeatedly, with each new trip to <boxun.com> counted as a new visit – despite being performed by the same person.  Thus, the same person could check Boxun once on her smart phone, twice from work, twice from home, and count as five separate "visits" to Boxun.[5]  Thus, the number of "visits" from Los Angeles to Boxun represents the absolute theoretical outer limit of how many people could have visited the site between June 1, 2012 and October 12, 2012; the absolute number of visitors, and their proportion of Boxun readership likely is even lower.[6]

Additionally, IP addresses originating from within Los Angeles do not necessarily represent people who reside within Los Angeles.  An IP address represents only the location from which an individual is recorded accessing the internet – not the physical location of the individual at that time of access.  An "internet connection could have been used […] by an unknown party." *In re Petition by Ingenuity 13 LLC*, Case No. 2:11-ms-84 *2012 WL 968080* at *5 (E.D. Cal. Mar. 21, 2012), *citing AF Holdings LLC v. Does 1-96*, Case No. C-11-03335 *2011 WL 5864174* at *4 (N.D. Cal. Nov. 22, 2011); *Digital Sin, Inc. v. Does 1-5698*, Case No. C-11-04397 *2011 WL 5362068* at *4 (N.D. Cal. Nov. 4, 2011)  As far back as 2008, *The Atlantic* explained how Chinese residents could access the entire Internet outside of their country's mercurial firewall and censorship:

---

[4] For a full explanation of "visits," "visitors," and the distinction between them, Google provides an explanatory video at http://services.google.com/analytics/breeze/en/v5/interpreting_reports_visits_v16_a d1/.
[5] *Id*.
[6] *Id*.

7

546470.1

> As a practical matter, **anyone in China who wants to get around the firewall can choose between two well-known and dependable alternatives**: the proxy server and the VPN. A proxy server is a way of connecting your computer inside China with another one somewhere else—or usually to a series of foreign computers, automatically **passing signals along to conceal where they really came from**.
>
> A VPN […] creates your own private, encrypted channel that runs alongside the normal Internet. From within China, a VPN connects you with an Internet server somewhere else. **You pass your browsing and downloading requests to that American […] server, and it finds and sends back what you're looking for**.

James Fallows, *The Connection Has Been Reset*, The Atlantic (Mar. 2008), *available at* http://www.theatlantic.com/magazine/archive/2008/03/-the-connection-has-been-reset/306650/ (*last accessed* Jan. 9, 2013) (emphasis added).  There are hundreds, if not thousands, of proxy servers in existence, many of which are located within California and even Los Angeles, giving the appearance of Chinese citizens and residents – a key target for Boxun's message (ECF 18-1 ¶ 11) – of accessing the site from Los Angeles or California.[7]  Boxun News' readers often use these services to access the site from China, as Meng testified in his deposition: "I know Boxun visitors – many visitors from China, they must go to proxy VPN." (Meng Depo. Vol. I 100:12-14)

　　As a result, the evidence Plaintiff rests upon to show Boxun and Meng's connection to this state and district – tenuous as it is in the first place – is revealed to be even weaker than the Plaintiff misleadingly tries to color it.[8]  The number of actual visitors from California and specifically Los Angeles to Boxun is much lower than the visits found in Plaintiff's submission.  When considering the Chinese residents whose visits to Boxun may appear to originate in California due to

---

[7] *See generally* http://www.freeproxylists.net/.

[8] *See* http://services.google.com/analytics/breeze/en/v5/interpreting_reports_visits_v16_ad1/ *supra* at n. 4.

546470.1

circumvention of the Great Firewall of China, California's putative readership of Boxun drops even farther, and becomes a rounding error rather than any genuine basis for jurisdiction within the state.  In comparison, Boxun News' readership from Hong Kong alone is greater than Plaintiff's alleged California visits (ECF 49-1 at 67).  During the relevant time period, Boxun News' Los Angeles visits may have helped Shanghai overtake Beijing as a top source for visits within mainland China if they were transferred to that city, but overall represent a tiny fraction of Boxun News' traffic – Los Angeles, for all of its population, is *at most* equal to 8.4% of the visits Boxun News receives from Hong Kong.

### ii.  Plaintiff's Evidence Does Not Support The Conclusion that Meng's Conduct Caused Harm Within California.

Plaintiff alleges that jurisdiction is proper in California because Meng's statements caused her harm.  However, Plaintiff must show that defendant knew his conduct would cause her harm <u>within</u> <u>the</u> <u>forum</u>. *Brayton Purcell*, 606 F.3d at 1128. A defendant's intentional conduct must be "targeted at a plaintiff whom the defendant <u>knows</u> to be a resident of the forum state." *Bancroft v. Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  This standard is not satisfied by Plaintiff's evidence. Plaintiff's own declaration establishes that she is not a resident of California, and instead resides in Beijing, China.  Additionally, Plaintiff's declaration fails to establish any specific actual or potential harm within the forum, as she admits to performing most of her entertainment work in films that are not shown (and by extension likely not filmed) within the United States, and comments on specious instances of lost potential engagements that were not scheduled to occur within the United States (ECF 50).  The Plaintiff's own evidence shows that no harm occurred in Los Angeles, and that the proper place for this suit is in China.

Although Plaintiff claims Meng's statements cost her two promotional appearances, neither of the rejections so much as mention Boxun News, or even the

9

546470.1

allegedly defamatory statements at issue in this suit (ECF 50 Exhs. C, D).  Both of Plaintiffs' rejections reference only "rumors" and "bad press," with no reference to Boxun News or even the nature of those rumors (*id*.). The statements of Williams Morris Endeavor, based on its communications with Michael Kors' representatives, and the communications from Cirtroen's representatives, are hearsay and inadmissible for the purpose of establishing that either company terminated their potential relationships with Plaintiff based on any "rumors" circulating within China. (And in the case of Michael Kors, double hearsay.) Fed. R. Evid. 801, 802; *Jimena v. UBS AG Bank, Inc.*, Case No. 1:07-cv-00367 2011 WL 2551413 at *8 (E.D. Cal. June 27, 2011).  To the extent they can be countenanced, though, they belie Plaintiff's argument for the Court to exercise personal jurisdiction over Meng.

In the case of Plaintiff's negotiations with Michael Kors through William Morris Endeavor, wherein Plaintiff sought 1 million RMB for her promotion in addition to taxes as a counter-offer to Michael Kors' offer of $120,000.[9] (ECF 50 Exh. C)  Based on the emails submitted to the Court, Plaintiffs' representatives were silent for one month before Kors withdrew from negotiations – making it clear that the unspecified "rumors" about Plaintiff from an unknown source were likely

---

[9] As 1 RMB equals $0.16, Plaintiff's counter offer to Michael Kors was for approximately $160,000 plus taxes – a significant increase from Kors' offer of $120,000.  Without testimony from Michael Kors' representatives, it is unclear whether the rumors regarding Bo Xilai had a single thing to do with this case.  In fact, Plaintiff has had a lot of public relations problems, including the alleged embezzlement of donations collected for relief from the 8.0 magnitude 2008 Szechuan earthquake and a separate incident where hooded men defaced a large advertisement depicting Plaintiff using black ink, that apparently left her suicidal. Lester Gan Wai Lun, *Zhang Ziyi Admits Being Suicidal Once*, Yahoo! News (Oct. 13, 2011), http://sg.entertainment.yahoo.com/news/zhang-ziyi-admits-being-suicidal-once-072400205.html (*last accessed* Jan. 10, 2013); *Zhang Ziyi Embroiled in Donation Scandal*, Channel News Asia (Feb. 5, 2010), http://www.channelnewsasia.com/stories/entertainment/view/1035556/1/.html (*last accessed* Jan. 10, 2013).

nothing but a pretext to terminate negotiations with a party who sought more money than the company was willing to pay (*id*.).

Similarly, Cirtroen terminated its negotiations with Plaintiff's representative after two weeks of silence, attributing the decision to unspecified "rumors," the source of which was unidentified (ECF 50 Exh. D).  It is unclear whether their rejection of Plaintiff was actually based on unspecified "rumors," or if it was merely an excuse to terminate negotiations and pursue a less expensive promoter (*id*.).  Presumably, if Plaintiff has any evidence at all that these "rumors" were started by the Defendant, she would have provided it after nearly seven months of litigation.

Finally, both of these emails reveal that the harm Plaintiff believes was caused by Meng occurred entirely outside not just California, but outside the United States as well.  Michael Kors' proposed endorsement entailed attendance at events in China, and specifically covered "China" as a territory. (ECF 51 Exh. A)  Cirtroen, a French company, had also explored the possibility of Plaintiff promoting their products in Beijing, China (ECF 51 Exh. B).  Neither of these locations are in the United States, let alone California.  There is no evidence that the negotiations for these contracts occurred within the United States or California.  The Plaintiff's own evidence strongly disproves her jurisdictional allegations.

### iii.   The Factors This Court Must Consider Weigh Against Exercising Personal Jurisdiction Over Meng.

In analyzing its ability to exercise personal jurisdiction over Meng, the Court must consider a number of factors enunciated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985):

> 1) the burden on the defendant of defending in the forum;
> 2) the forum state's interest in adjudicating the dispute;
> 3) the plaintiff's interest in obtaining convenient, effective relief;
> 4) the court's interest in obtaining the most efficient resolution of the controversy; and

546470.1

5) the states' shared interest of furthering fundamental substantive social policies.

These factors weigh in favor of dismissing Plaintiff's action against Meng on personal jurisdiction grounds.

While Meng has retained counsel closer than he to Los Angeles, this does not remove the financial burden of litigation, particularly on the opposite side of the country.  Meng, who resides in North Carolina, has already faced a considerable burden defending this action in California, leading him to seek Plaintiff to post an undertaking of $200,000 (ECF 43).  Simultaneously, Plaintiff is not a resident of California, but has filed suit here because of a tenuous link between her interests as an entertainer and Los Angeles' claimed importance to the entertainment industry (despite Plaintiff's economic potential engagements that are identified to the court being located in China).

While the Plaintiff may receive effective relief before this Court, she may also obtain relief in a Chinese court, or in the courts of North Carolina where Meng is a resident.  As she is a resident and citizen of China, a Chinese court would be the most convenient option; pursuing this litigation in North Carolina would be no less burdensome than proceeding in California for the foreign Plaintiff.  As both the evidence and parties needed to litigate this case are found outside this district (ECF 1 ¶ 2; 18-1 ¶¶ 2, 29), the Court would most effectively resolve the litigation by declining to exercise personal jurisdiction over Meng and requiring this action be brought in one of these alternative jurisdictions.

As to the final factor, the entire United States has an interest in preventing this kind of litigation before the Court.  While the First Amendment protects Americans' free expression, similar protections do not exist abroad, and journalists – including Boxun's (ECF 21-1 ¶¶ 13-14, 21-3 ¶¶ 20-36, 38-41) – are regularly imprisoned and punished for spreading the truth.  Plaintiff's oppositions in this case make it clear that the litigation's true purpose is to use the United States' courts to compel the

12

546470.1

identification of Boxun's sources so that they can be dealt with in China (ECF 51 ¶ 11), with prison or worse, just as China has previously addressed Boxun's contributors (ECF 21-1 ¶¶ 14-18).  The motivations underlying this litigation are against the substantive public policy of the United States and any western government, and it would be in the states' common interest to stop litigation commenced solely to identify and silence political dissidents dead in its tracks. *McIntyre v. Ohio Elections Comm'n*, 514 US. 335, 357 (1995) (Anonymity is a shield from the tyranny of the majority […] It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation – and their ideas from suppression – at the hand of an intolerant society"); *see generally* The Federalist Papers.

## III.    Conclusion

Meng's objection to personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is intact, and Plaintiff has failed to refute it.  Meng has not directed any activities into the state of California.  Plaintiff's theory of "entertainer jurisdiction" is patently frivolous.  Similarly, Meng's connections with California are too attenuated to support the Court's exercise of personal jurisdiction over him in this matter.

All of the factors before this Court weigh in favor of declining to exercise personal jurisdiction over Meng.  The Court should grant Meng's pending Motion to Dismiss for lack of personal jurisdiction.


DATED this 11 day of January 2013

Respectfully Submitted,

RANDAZZA LEGAL GROUP


/s/ Marc J. Randazza
Marc J. Randazza
Jason A. Fischer
*Attorneys for Defendant,*
*Weican Null Meng*

13

546470.1

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 11th day of January 2013, I caused the document(s) entitled:

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(b)(2) (ECF 18)**

and all attachments to be served by the Court's CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza