Marc J. Randazza (California Bar No. 269535)
Jason A. Fischer (California Bar No. 275469)
RANDAZZA LEGAL GROUP
mjr@Randazza.com
jaf@Randazza.com
6525 W. Warm Springs Road, Suite 100
Las Vegas, NV 89118
Telephone: 888-667-1113
Facsimile: 305-437-7662
www.Randazza.com

Attorneys for Defendant,
*Weican Null Meng*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHANG ZIYI, an individual, | Case No. CV12-5216-DMG (PLAX) |
| Plaintiff, | |
| vs. | **DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CIVIL PROCEDURE CODE § 425.16 (ECF 21)** |
| CHINA FREE PRESS, INC., a North Carolina non-profit corporation doing business as BOXUN NEWS; WEICAN NULL MENG, an individual known as WATSON MENG and also WEICAN "WATSON" MENG; DOES 1-25, inclusive, | |
| Defendants. | Date: January 25, 2013 |
| | Time: 9:30 a.m. |
| | Dept.: 7 |

-1-

546470.1

# TABLE OF CONTENTS

TABLE OF AUTORITIES .................................................................................. ii

I.     INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 1

   A.    Meng is Entitled to The Protections of Cal. Civ. P. Code § 425.16 ........... 1

      i.   Boxun News is a Public Forum Under § 425.16(e)(3) ........................ 1

      ii.   Boxun News' Reporting on Plaintiff Concerned a Matter of
         Public Interest ..................................................................................... 3

   B.    Plaintiff Failed to Show She Has a Probability of Prevailing on the Merits in
     this Case ....................................................................................................... 6

      i.   Plaintiff Cannot Show a Probability of Proving, By Clear and
         Convincing Evidence, that Meng Acted with Actual Malice .............. 7

         1.   The Declaration of Stanton Stein ............................................... 7

         2.   The Declaration of Michael Parks .............................................. 8

         3.   Plaintiff's Other Evidence ....................................................... 10

      ii.   Boxun News' Reporting on Plaintiff Concerned a Matter of
         Public Interest ................................................................................... 12

   C.    While Plaintiff's Newfound Experts Do Not Defeat Meng's Special Motion
     to Strike, Their Testimony is Inadmissible ............................................... 15

      i.   Plaintiff's Rebuttal Expert Testimony Should Be Disregarded for Non-
         Compliance with Fed. R. Civ. P. 26 ................................................. 15

      ii.   Park and Stein's Declarations Contain Impermissible Legal
         Conclusions, Which the Court Must Disregard ................................. 16

      iii.   The Testimony of Michael Parks Should Additionally Be Disregarded
         for Non-Compliance with Fed. R. Civ. P. 26(a)(2)(B)(v) and (vi) ..... 17

      iv.   The Declarations of Ling, Zhang, and Parks all Fail to Comply with
         Local Rule 5-4.3.4 and May Be Stricken or Disregarded ................. 18

546470.1

D.   The Identities of Meng's Confidential Sources are Irrelevant to this Motion, and Unnecessary to Prove Actual Malice ................................................... 18

III.  CONCLUSION ............................................................................................. 21

-ii-

546470.1

1

2

# TABLE OF AUTHORITIES

*Ampex Corp. v. Cargle,*
   128 Cal. App. 4th 1569, 1578 (Cal. Ct. App. 2005)....................................7

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 255 (1986) ...........................................................................7

*Barrett v. Rosenthal,*
   40 Cal. 4th 33, 41 n. 4 (Cal. 2006) ............................................................2

*Beilenson v. Superior Court,*
   44 Cal.App.4th 944 (Cal. Ct. App. 1996)...................................................6

*Blatty v. N.Y. Times Co.,*
   728 P.2d 1177, 1182 (Cal. 1986)................................................................7

*Bose Corp. v. Consumers Union of United States, Inc,*
   466 U.S. 485, 510-11 (1984) ....................................................................16

*Brae Transp., Inc. v. Lybrand,*
   790 F.2d 1439, 1443 (9th Cir. 1986) ........................................................18

*Carpenter v. Universal Star Shipping, S.A.,*
   924 F.2d 1539, 1547 (9th Cir. 1991) ........................................................15

*Coliniatis v. Dimas,*
   965 F. Supp. 511, (S.D.N.Y. 1997) ............................................................8

*Condit v. National Enquirer, Inc.,*
   248 F. Supp. 2d 945 (E.D. Cal. 2002) ..................................................5, 20

*Crow Tribe of Indians v. Racicot,*
   87 F.3d 1039, 1045 (9th Cir. 1996) ..........................................................16

*D.A.R.E. America v. Rolling Stone Magazine,*
   101 F. Supp. 2d 1270, 1284 (C.D. Cal. 2000) ...........................................8

*Dangerfield v. Star Editorial, Inc.,*
   817 F. Supp. 833, 835-36 (C.D. Cal. 1993)..............................................19

-iii-

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,*
    47 Cal.App.4th 777, 783-84 (Cal. Ct. App. 1996) ....................................6

*Farr v. Pritchess,*
    522 F.2d 464 (9th Cir. 1975) ................................................... 19-20

*Garland v. Torre,*
    259 F.2d 545 (2d Cir. 1958) ........................................................20

*Garrison v. La.,*
    379 U.S. 64, 74 (1964) ....................................................9, 12, 13

*Gilbert v. Sykes,*
    147 Cal. App. 4th 13, 23 (Cal. Ct. App. 3d Dist. 2007) .......................... 1-2

*Harte-Hanks Comms. v. Connaughton,*
    491 U.S. 657, 688 (1989) ...............................................9, 10, 16

*Mello v. Great Seneca Fin'l Corp.,*
    526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007) ....................................6

*Mitchell v. Sup. Ct. (Synanon Church),*
    37 Cal.3d 268, 274 (Cal. 1984) .....................................................20

*Mukhtar v. Cal. State Univ., Hayward,*
    299 F.3d 1053, 1066 n. 10 (9th Cir.2002 ........................................16

*New York Times Co. v. Sullivan,*
    376 U.S. 254, 280-82 (1964) ...................................................9, 12

*Newton v. National Broadcasting Co.,*
    930 F.2d 662, 680 (9th Cir.1990) ..........................................12, 13

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027, 1037 (Cal. Ct. App. 2008)................................ 2-3

*Price v. Stossel,*
    590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008) ....................................6

*Quevedo v. Trans-Pacific Shipping, Inc.,*
    143 F.3d 1255, 1258 (9th Cir. 1998) ............................................15

*Riley v. City of Chester,*
    612 F.2d 708, 716-17 (3d Cir. 1979)............................................20

546470.1

*Sipple v. Founds for National Progress,*
    71 Cal. App. 4th 226 (Cal. Ct. App. 1999)..........................................4-5, 6

*St. Amant v. Thompson,*
    390 U.S. 727, 731 (1968) ...................................................................passim

*U.S. v. Brodie,*
    858 F.2d 492, 496 (9th Cir.1988) ................................................................16

*U.S. v. Curtis,*
    782 F.2d 593, 599 (6th Cir.1986) ................................................................16

*Wilbanks v. Wolk,*
    121 Cal. App. 4th 883, 897 (Cal. Ct. App. 2004).........................................2

*Zerelli v. Smith,*
    656 F.2d 705 (D.C. Cir. 1981)...................................................................20

**STATUTES**

California Civil Procedure Code § 425.16...........................................passim

Fed. R. Civ. P. 26 ...........................................................................passim

Fed. R. Civ. P. 56 ...........................................................................18

546470.1

Defendant Weican "Watson" Null Meng ("Meng," or the "Defendant"), by and through his counsel, files this reply in support of his Special Motion to Strike under California Civil Procedure Code § 425.16 (ECF 21).

## I. Introduction

Plaintiff Zhang Ziyi (the "Plaintiff") cannot meet her burden of showing a probability of prevailing on the merits in this case. This shortcoming is underpinned by Meng's First Amendment protections, requiring Plaintiff – a proud public figure with an extensive entertainment career – to prove, by clear and convincing evidence, that Meng made false statements about her with actual malice: Knowledge of the statements' falsity, or a reckless disregard for their truth. Plaintiff's evidence, including her two previously undisclosed experts, fall far short of the mark.

To the extent Plaintiff's evidence can even be credited by the Court, it fails to show that Meng acted with actual malice. Meng went above and beyond his duties in running the Boxun News website to ensure the stories he published were provided by credible sources and even corroborated. As Meng undertook this task while brokering in highly sensitive information smuggled out of repressive mainland China, he faced considerable disadvantages, including sources who feared for their safety. Nonetheless, he conducted Boxun News with journalistic standards that would be accepted by the Western media. Based on Meng's conduct, Plaintiff not only fails to show a probability of prevailing on the merits, but she has not shown even a *possibility* of doing so.

## II. Argument

### A. Meng Is Entitled to The Protections of Cal. Civ. P. Code § 425.16.

#### i. Boxun News is a Public Forum Under § 425.16(e)(3).

In order to successfully strike Plaintiff's claims under § 425.16, Boxun News must constitute a "public forum" under subsection (e)(3). Plaintiff's attempts to distinguish Boxun News as a newspaper or magazine are unpersuasive in light of California's precedent. In *Gilbert v. Sykes*, the California Court of Appeal reversed

546470.1

the trial court's denial of the defendant's special motion to strike where defendant operated her own website on the Internet, which she used to criticize the plaintiff. 147 Cal. App. 4th 13, 23 (Cal. Ct. App. 3d Dist. 2007).   The California Supreme Court has held that websites accessible to the public are "public forums" for the purpose of § 425.16. *Barrett v. Rosenthal,* 40 Cal. 4th 33, 41 n. 4 (Cal. 2006).

Contrary to Plaintiff's contentions, the *Barrett* court clarified that public *access*, rather than the public's *ability to comment*, is the hallmark of a public forum. *Id*. Statements on the Internet, even where there is not the opportunity for direct response, are considered made on a public forum because the statements "can be read by anyone who is interested, and because others who chose to do so, can post a message through the same medium that interested persons can read." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (Cal. Ct. App. 2004).   Thus, *any* statement made through the Internet is made on a public forum under California law.

Even if Boxun News were more akin to a "newspaper" or "magazine" than an online publication, Plaintiff's legal basis for claiming Boxun is not a public forum is outdated.   In 2008, the California Court of Appeal recognized the dichotomy of earlier precedent holding that certain publications were protected as "public" while others were not. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1037 (Cal. Ct. App. 2008) (holding that homeowners association bulletin was a public forum under 425.16(e)). The *Nygard* court held that publications "need not be an *open* forum to be a *public* forum," as § 425.16 provides protection to written statements made either in "a place open to the public" or "a public forum," compelling a broad interpretation of § 425.16(e)(3)'s protection to statements made both in places open to the public and public fora.   In fact, exclusion of newspapers and magazines under § 425.16(e)(3) would render the statute's protections "one-sided," when the purpose of the statute is to protect all expression. *Id*. at 1038.   Under *Nygard*'s logic, a broad reading of public forum "comports with the fundamental purpose underlying the anti-SLAPP statute, which seeks to protect against 'lawsuits brought primarily to

-2-

chill the valid exercise of constitutional rights' and 'abuse of the judicial process.'" *Id.*, *citing* Cal. Civ. P. Code § 425.16.

### ii. Boxun News' Reporting on Plaintiff Concerned a Matter of Public Interest.

Plaintiff erroneously likens Boxun News to idle celebrity-watching (ECF 21-1 ¶ 21), and from that vantage point decries its reporting on her.[1]  This argument is undermined by the very exhibits to her Complaint: the first sentence of the first article states "the famous movie star Zhang Ziyi is confirmed to get involved in the Bo Xilai incident."  This is no curious prying into Plaintiff's personal affairs, but connecting her to a massive political scandal within China that had earned international attention prior to Meng writing anything about her. (ECF 21-5, Declaration of J. Malcolm DeVoy ("DeVoy Decl.") ¶¶ 6, 7, Exhs. B, C)[2]

Plaintiff's role in the Bo Xilai affair is inherently of public interest.  Bo Xilai spearheaded an aggressive anti-corruption drive within his province of Chongqing during his rule over the area (DeVoy Decl. Exh. B, ECF 21-5 at 1).  Ironically, Mr. Bo's corruption went unpunished until it was revealed that his wife, Gu Kilai, was suspected of murdering British businessman Neil Heywood (ECF 21-5).  Boxun News reported on Bo Xilai's fall from power, highlighting the hypocrisy of his own actions while cracking down on the corruption within the province under his control. This exposé included his extramarital relationship with Plaintiff (DeVoy Decl. ¶¶ 12, 13, Exh. H ("Deposition of Meng Vol. I") at 11:16-12:6, Exh I ("Deposition of Meng Vol. II") at 34:11-20).  At base, the Bo Xilai story – including Plaintiff's involvement – was one about "corruption" and "stealing huge amounts of money

---

[1] All the while, the Plaintiff ignores the fact that the only parties involved in this case to call her a "prostitute" are her own lawyers.

[2] Even if it <u>were</u> merely an idle celebrity gossip column, this would have no bearing on the applicability of California Civil Procedure Code § 425.16.  "[A]n issue of public interest" within the meaning of section 425.16, subdivision (e)(3) is *any issue in which the public is interested.*" *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (Cal. Ct. App. 2008) (emphasis in original).

-3-

from the people or from his country," including violating Chinese laws against having "inappropriate relationship[s] with a number of wom[e]n." (Meng Depo. Vol. II at 35:18-36:13)

The public's interest in Plaintiff's involvement in the Bo Xilai affair is heightened not only by Plaintiff's celebrity, but her proclivity for being embroiled in scandal.   This lawsuit is hardly Plaintiff's first exposure to bad publicity due to alleged malfeasance. (DeVoy Decl. ¶ 8, Exh. D)  However, her involvement in this particular scandal made her "part of the corruption." (Meng Depo. Vol. II at 35:20-21) During 2010, Plaintiff was widely accused of embezzling donated funds in "Fraudulent Donation Gate," where charitable contributions Plaintiff collected for victims of the 8.0 magnitude Szechuan earthquake of 2008 were never distributed to any victims (DeVoy Decl. Exh. D).[3]  Shortly before "Fraudulent Donation Gate," a group of vandals threw black ink on a large advertisement depicting the Plaintiff, an event dubbed the "Ink Splash Incident" (*id.*).   During the Chinese media's investigation of the incident, reports indicated that the "Ink Splash Incident" was preceded by Plaintiff's relationship with a married man.[4]

It is inconceivable that Plaintiff, who is indisputably a public figure by virtue of her acting career, can deny that celebrity reporting on her is not a matter of public record.   Her involvement in the Bo Xilai affair makes it significantly more so.   Considering that Plaintiff seems to be involved in a string of high-profile scandals, of which this is just the latest, the legal and political ramifications of her reported relations with Bo Xilai are of particular public interest.   Contrary to Plaintiff's claims (ECF 48 at 14), *Sipple v. Founds for National Progress* closely resembles the

---

[3] As someone who allegedly embezzled disaster relief funds, the Plaintiff's umbrage at the Boxun articles seems to be a bit fabricated.

[4] *See Ziyi Lashes Out at Rumours of Fling*, Straits Times (Jan. 15, 2010), http://news.asiaone.com/print/News/the%2BStraits%2BTimes/Story/A1Story20100115-191961.html (last accessed Jan. 10, 2013) (noting connection between Ink Splash Incident and revelation of alleged affair, along with Plaintiff's threat of litigation).

-4-

546470.1

facts of this case: a high-profile politician's hypocrisy is exposed, violating his nation's trust. 71 Cal. App. 4th 226 (Cal. Ct. App. 1999).   The inappropriate relationship between Plaintiff and Bo Xilai discussed in the articles, whether "prostitution" – a charge contrived by Plaintiff based on Boxun News' quoting of the western media's language – or mere "gold-digging"[5] for the receipt of jewelry and property is a matter of public interest.   Bo Xilai's inappropriate sexual relationships have even been cited as part of his underlying corruption (*see also* ECF 21-5 at 2) and a reason for his downfall.[6]

Thus, Plaintiff's analysis of *Condit v. National Enquirer, Inc.*, 248 F. Supp. 2d 945 (E.D. Cal. 2002), is inapt.   In that case, plaintiff was neither a public figure nor celebrity, had no history of public scandals, and concerned a criminal investigation of a missing person.   *Id*. at 954. The instant case involves a plaintiff who is a public figure by virtue of her celebrity status, has a years-long history of public scandals – one involving the alleged embezzlement of charitable donations – and concerns her reported role in a political scandal regarding corruption as high levels of government.   This is the precise domain where public observation and commentary is welcome. *Id*.; *see Sipple*, 71 Cal. App. 4th at 226.

---

[5] "I don't think we should put Zhang Ziyi under the title of prostitute.   It's more like in the U.S., gold digger, especially in China." (Meng Depo. Vol. II at 56:13-24)

[6] Edward Wong, *Ousted from Party in China, Bo Xilai Faces Prosecution*, New York Times (Sept. 28, 2012), *available at* http://www.nytimes.com/2012/09/29/world/asia/bo-xilai-expelled-from-chinas-communist-party.html?pagewanted=all (*last accessed* Jan. 10, 2013) ("The Xinhua report also said Mr. Bo had violated party discipline for years[.] The report also said investigators found Mr. Bo 'had or maintained inappropriate sexual relationships with a number of women,' but did not give names").

546470.1

China is the United States' second largest trading partner.[7]  It is also one of the world's largest and fastest growing economies.  When its tightly controlled governance is raked by turmoil from corruption, the United States media rightly takes notice, as China's actions affect this country and the rest of the world.  Official corruption is a classic example of a matter of public interest. *Sipple*, 71 Cal. App. 4th at 226; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 783-84 (Cal. Ct. App. 1996); *see also Beilenson v. Superior Court*, 44 Cal. App. 4th 944 (Cal. Ct. App. 1996).  In order to adhere to high journalistic standards, Boxun News published only the information it could obtain relating to Plaintiff's involvement with Bo Xilai and other prominent Chinese officials and businessmen (DeVoy Decl. ¶ 14, Exh. J ("Depo. of Meng Vol. III") at 122:22-125:6)  Corruption on the scale and level of Bo Xilai's and the underlying causes of it – including his relationship with Plaintiff – is a matter of public interest, and has been treated as such by the Western media since early 2012 (ECF 21-5, DeVoy Decl. Exh. C).  As a public figure involved in this scandal, Plaintiff cannot escape the spotlight of "public interest" under § 425.16(e).

### B.  Plaintiff Failed to Show She Has a Probability of Prevailing on the Merits in this Case.

Based on Meng's satisfaction of § 425.16's threshold requirements, Plaintiff bears the burden of showing a probability of succeeding on the merits. *Mello v. Great Seneca Fin'l Corp.*, 526 F. Supp. 2d 1024, 1029 (C.D. Cal. 2007).  Plaintiff may not rely on the pleadings within her Complaint, but must support her positions with evidence as in a motion for summary judgment under Rule 56. *Price v. Stossel*, 590 F. Supp. 2d 1262, 1266 (C.D. Cal. 2008).  As a public figure, she bears the burden of showing by <u>clear and convincing</u> evidence that Meng's allegedly tortious statements about her were made with actual malice – knowledge of their falsity, or

---

[7] Office of the United States Trade Representative, China, http://www.ustr.gov/countries-regions/china (*last accessed* Jan. 10, 2013).

-6-

reckless disregard for their truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578 (Cal. Ct. App. 2005). This is a standard that Plaintiff is unable to meet.

### i.  Plaintiff Cannot Show a Probability of Proving, by Clear and Convincing Evidence, that Meng Acted with Actual Malice.

As the basis for each and every one of Plaintiff's tort claims arises from Meng's expression, her recovery is premised on demonstrating Meng acted with actual malice. *Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986) (applying First Amendment protections to "all claims whose gravamen is the alleged injurious falsehood of a statement").  What Plaintiff glosses over in its opposition, relying on cases more than 130 years old, is that the actual truth of Meng's statements does not need to be analyzed to assess their First Amendment protections.  Because Plaintiff is a public figure, what is relevant is whether Meng knew of the statements' falsity, rather than whether they were actually false.  Plaintiff's insistence that she has never even met Bo Xilai (ECF 50 ¶ 8) even if true, it is irrelevant to the issue of Meng's knowledge of the statement's falsity.

Plaintiff's "evidence" fails to demonstrate she is capable of meeting this standard.  By their own admissions, neither of Plaintiff's experts even contacted Meng or his counsel in this matter.

### 1.  The Declaration of Stanton Stein.

The declaration of Stanton Stein (ECF 53) indicates that his review is predicated solely on reviewing Plaintiff's Complaint, Meng's Special Motion to Strike, and "various" unspecified declarations filed in the case (*id*. ¶ 8).  Stein goes on to explain how Meng should have, in Stein's experience as an entertainment attorney within the United States, contacted Plaintiff or her representatives for comment (*id*. ¶ 9).

However, Stein's experience, expertise, and conclusions are wholly incompatible with Meng's role smuggling information out of China.  Based on her

actual conversations with Meng (DeVoy Decl. ¶ 15, Exh. K ("Hausch Depo. Vol. II") at 8:13), Mary Hausch found that Meng's situation is incomparable to traditional journalism within the United States in terms of its inherent danger for sources of sensitive information. (*Id*. at 86:23-87:10)   These same circumstances limited Meng's ability to seek out and contact Plaintiff prior to publication of the stories about her (DeVoy Decl. ¶ 9, Exh. E) However, Hausch, independently and using criteria developed by Professor Karen List, found that Meng acted in accordance with journalistic standards based on his conduct (*Id*. at 7-8, 12-13; DeVoy Decl. ¶ 10, Exh. F)  Similarly, David Ardia found that Meng's journalistic practices were entirely proper (ECF 39-3), and did not find such a hard-and-fast rule requiring an editor or reporter to contact a story's subject before publication (DeVoy Decl. ¶ 15, Exh. L ("Ardia Depo.") at 16:21-18:7).   Much like in Meng's experience, Ardia acknowledges that it can be difficult, if even possible, to find the contact information for a celebrity or her handlers (Meng Depo. Vol. III at 149:8-150:5; Ardia Depo. at 18:8-24).   Nor is such contact required to satisfy the actual malice standard imposed on public figures (Hausch Depo. Vol II at 145:19-146:13; Ardia Depo at 118:11-119:20). *D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1284 (C.D. Cal. 2000) (finding that defendant did not acted with reckless disregard by failing to contact the subject of a planned publication); *Coliniatis v. Dimas*, 965 F. Supp. 511, (S.D.N.Y. 1997) (finding that failing to attempt plaintiff about article's subject matter before publication was not reckless disregard for the truth).   Ultimately, Stein's declaration does not move Plaintiff toward showing a probability of proving by clear and convincing evidence that Defendant is liable for the claims asserted against him.

### 2.  The Declaration of Michael Parks.

Like Stein, Michael Parks' testimony is based on reviewing transcripts of Watson Meng's depositions (which volumes were examined is unknown), and did not personally speak to the Defendant (ECF 52 ¶ 5).   In fact, Parks' entire

546470.1

declaration speaks in journalistic absolutes, despite "reckless disregard" being a subjective, fact-based inquiry unique to each case and circumstance. *Garrison v. La.*, 379 U.S. 64, 74 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Yet, without any firsthand analysis of Meng's practices, Parks accuses Meng of fault based on his experience working for publications such as the <u>Los Angeles Times</u> and <u>Baltimore Sun</u> (*id*. ¶¶ 2, 12-15)  Even if Meng had departed from reasonably prudent conduct, reckless disregard for the truth requires more than such a lapse. *Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657, 688 (1989).  In contrast, those who actually did directly interview Meng found him to properly rely on his confidential sources (Hausch Depo. Vol II at 143:13-145:14; Ardia Depo. at 71:23-73:3; ECF 39-3; Exhibit (Hausch Report) at 6).  In contrast, Parks fabricates his opinion out of thin air – if he drafted it at all.  It seems awfully ironic that Parks has fabricated a report without interviewing Meng, and in that report calls foul on Meng for not getting comment of the Plaintiff.

Parks further mistakes the colloquial notion of "malice" with the legal standard of malice, detailing what he believes to be Meng's personal animus against Plaintiff and passing it off as "malice." (ECF 52 ¶¶ 32-34)  Given is own erroneous legal conclusion, one must wonder where Parks' biases and "malice" lies.  In this context, malice requires Meng's reckless disregard for the truth or knowing falsity of the statements that he published. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280-82 (1964).  Parks' legal conclusion on this subject is off-point, irrelevant, and should be disregarded.  He is unqualified and violates his own standards in his declaration.

Most revealing of Parks' true motivation, and the reason for his conclusions to stand in stark contrast to Ardia's and Hausch's, is his "journalistic relationship" with China. (ECF 52 ¶ 4)  China's government still heavily censors its publications; within just the last week, this extreme censorship of political speech calling for government reforms to combat corruption led to journalists for China's <u>Southern</u>

-9-

<u>Weekend</u> going on strike.[8]   By returning to China periodically as a "working journalist" and even a visiting lecturer, Parks is doubtlessly aware of the symbiotic relationship between China's press and censors.[9] It is disingenuous, if not an obvious political gift to his Chinese allies, for him to claim that Meng acted improperly in disseminating information embarrassing to the Central Communist Party.   It is no surprise that someone who is clearly quite cozy with the Central Communist Party has emerged on a surprise witness, doing the Central Communist Party's bidding.   The degree of his bias is glaringly clear on the face of his declaration.

In other ways, Parks' declaration comports with the opinions of Hausch and Ardia and shows Meng's reporting methods were reasonable.   Parks contends that Watson should have corroborated his facts (ECF 52 ¶ 12).   Meng did so with two additional sources (Hausch Depo. Vol. II at 131:18-133:13; Ardia Depo. at 23:24-25:3; ECF 39-3 ¶¶ 43-50), one of which – Zhao Yan – is known (Meng Depo. Vol. III at 125:7-126:3; ECF 39-3 ¶¶ 38-42, 57).   Despite having no duty to conduct an investigation (Ardia Depo at 29:6-30-2), *see Harte-Hanks*, 491 U.S. at 688, *St. Amant*, 390 U.S. at 731, 733, Meng independently verified his research.   In sum, Parks' declaration is insufficient to show Meng even potentially acted with reckless disregard for the truth.   If Parks seeks to earn greater favor with the Central Communist Party, which has been so good to him thus far, he should not do so at the expense of the First Amendment.

### 3.  Plaintiff's Other Evidence.

Plaintiff's toehold in disputing Meng's editorial practices is his publication that her total earnings from her liaisons were 700 million RMB, to be conservative,

---

[8] Hellen Gao, *A Press Renaissance? The Legacy of China's 'Southern Weekend'*, The Atlantic (Jan. 11, 2013), http://www.theatlantic.com/national/archive/2013/01/a-press-renaissance-the-legacy-of-chinas-southern-weekend/267081/ (last accessed Jan. 11, 2013).
[9] *See id*.

-10-

rather than 1.4 billion RMB (Meng Depo. Vol. III at 38:22-39:9)  Plaintiff ignores that Meng characterized her earnings as "**at least**" 700 million RMB (ECF 1 Exhibit A; 49-6) (emphasis added).   Based on the information Meng obtained from his sources, his statement was entirely accurate: By earning 1.4 billion RMB, Plaintiff had earned at least 700 million RMB through her relationships. (Meng Depo. Vol. III at 38:22-39:9) Meng's statement regarding Plaintiff's minimum earnings is true and based upon the information he obtained from Source A, whom Meng could have reasonably relied upon independently (ECF 39-3 ¶¶ 25-33, 55; Ardia Depo. at 23:24-25:3 ("the primary source for [Meng's] reporting […] appears to be of quite high quality, someone who provide d agreat deal of detail about these allegations and someone who […] had – in the past had access to information that would only have been available at very high levels within the Chinese government and investigatory services, so both the detail and the nature of that information I think was of a high quality")).

Similarly, Plaintiff's repeated claim that Meng identified her as a "prostitute" is, quite frankly, a lie.  Within the articles at issue in the Complaint, Boxun News used the word "prostitution" only once, to state that other media outlets used that word. (ECF 49-8)  Plaintiff's own evidence clarifies Boxun News and Meng's purpose in using the term "prostitution" in a June 20, 2012 article:

> Although Boxun has never used the term "prostitution" in related reporting, yet because **the term "prostitution" has been used by English-language media including information releases from the court news website**, today Boxun has specially set up a "Zhang Ziyi 'Prostitution-gate'" hot topic section […] **The name of this hot topic is taken from English-language [media] reports, and thus is not a wording used in Boxun reporting**.

(ECF 49-10) (emphasis added).  A review of Boxun's other articles (ECF 49-6-46-9) confirms the claims of this June 20 article: Boxun did not use the term "prostitute" to describe Plaintiff.   To the contrary, Meng would not have characterized her use of relationships to acquire real and personal property, but

-11-

1  instead as "gold-digg[ing]." (Meng Depo. Vol. II at 56:8-24; Meng Depo. Vol. III at
2  39:17-40:25 ("we have never called Zhang Ziyi as a prostitute.  I don't believe we
3  should classify her in that category based on the relationship with the politicians."))

4      In sum, Plaintiff's evidence fails to show a probability of prevailing on her
5  claims *by clear and convincing evidence*.  Plaintiff's allegations are belied by
6  Meng's extensive testimony showing the depth of his research and corroboration of
7  difficult-to-obtain and dangerous information.  Meng's experts find that he acted
8  reasonably (ECF 39-3; ECF 21-2).  Plaintiff's experts, to the extent their testimony
9  is admissible, have failed to show that Meng acted with reckless disregard for the
10 truth in light of the circumstances of his reporting.  Even if Meng were merely
11 negligent, he would not have acted with reckless disregard for the truth. *Newton v.*
12 *National Broadcasting Co.*, 930 F.2d 662, 680 (9th Cir.1990).  None of Plaintiff's
13 evidence shows that Meng entertained doubts as to the truth of his publication or
14 had a high degree of awareness of probable falsity. *St. Amant*, 390 U.S. at 731;
15 *Garrison*, 379 U.S. at 74.  Without such evidence, Plaintiff has not shown a
16 probability of succeeding in the case in chief.

          **ii.  Meng Followed Journalistic Standards and Did Not Publish**
                **Any Statements About Plaintiff That He Knew to Be**
                **Knowingly False, or About Which He Harbored Doubts.**

19     Meng can be found to have acted with actual malice only if he published
20 information about Plaintiff that was known to be false, or published with reckless
21 disregard for the truth. *Sullivan*, 376 U.S. at 280-82.  At no point did Meng know any
22 facts he published to be false.  (ECF 21-1 ¶ 10, 18-20; Ardia Depo. at 141:24-142:1)

23     Meng did not act with reckless disregard for the truth, and did not have any
24 knowledge that the information he published was false (ECF 21-1 ¶¶ 18-20, 22).
25 Meng relied on numerous reliable sources who had provided him accurate in the
26 past (Hausch Depo. Vol. II at 21:8-23:17; Ardia Depo. at 62:19-64:6; ECF 39-3 ¶¶
27 25-33)  Meng's use of anonymous sources in breaking this story was "essential."

28                                      -12-

(Ardia Depo. at 41:7-42:2)  Given the circumstances of his reporting, the manner in which he had to obtain information, and the subject matter of his reporting – as well as the risk of reprisal – Meng acted as reasonably as possible in confirming his stories before publication (ECF 39-3 ¶¶ 55-64).  The context and unique setting of Meng's operation dictate whether he acted with reckless disregard for the truth – a high threshold for liability. *Newton*, 930 F.2d at 680 (finding that negligence does not give rise to reckless disregard); St. *Amant*, 390 U.S. at 731; *Garrison*, 379 U.S. at 74.  Meng had three layers of sources and confirmation for his sources, and no reason to doubt them; even if their claims first seem incredible (Meng Depo. Vol. III at 143:12-144:10), they came from reliable sources and were confirmed before publication (ECF 39-3 ¶¶ 55-64).

Meng did not act with reckless disregard for the truth by using anonymous sources of information. (Ardia Decl. at 141:24-142:21)  Source A's numerous prior reports to Meng had all turned out to be true, justifying his reliance on the unnamed source (Meng Depo. Vol. III at 112:17-113:4; DeVoy Decl. ¶ 11, Exh. G). Source A had been a particularly reliable source of information pertaining to the Chinese Central Communist Party (Meng Depo. Vol. III at 49:9-19; Ardia Depo. at 23:24-25:3, 46:23-47:14) Additionally, sources do not always have firsthand information about an event or news item. (Hausch Depo. Vol. II at 84:22-85:2)  Just because Meng has not disclosed or does not necessarily know the identities of these sources, he has not acted with reckless disregard for the truth – particularly in light of the number of sources he contacted, and the corroboration they provided (ECF 39-3 ¶¶ 55-59), and the particular risks of smuggling information out of China.

Meng obtained the information found in his reports from "Source A," a citizen journalist in China who also used numerous sources to obtain information (Meng Depo. Vol. III at 32:11-18; ECF 39-3).  Professor David Ardia found that Meng's reliance on Source A for information about Plaintiff was reasonable (*id*. ¶¶ 22-33).   Source A was accurate, had no known biases, and the information he

-13-

546470.1

provided to Meng throughout the two's working relationship was consistently reliable (*id*.).  This alone would have justified Meng's publication of the reports about plaintiff (*id*. ¶ 55).  In addition, Source A had his own sources from which to obtain further information that was both reliable and accurate (Meng Depo. Vol. III at 112:17-113:4, 115:6-22).  Even when Meng obtained information from Source A, he confirmed the information from other sources (Meng Depo. Vol. III at 115:6-116:5; ECF 39-3 ¶¶ 55-59)

Meng's second anonymous source, known as Source B, had firsthand knowledge of the Chinese entertainment industry (Ardia Depo. at 38:2-12).  Source B also served the role of corroborating Source A's information and confirming its validity (*id*. at 36:5-23).  Source B had specialized information about the entertainment industry, which was of particular value to Meng and Boxun News, as Boxun is a political publication, rather than a celebrity gossip forum. (Meng Depo. Vol. III at 134:3-20)  Source C had never provided Meng with false or misleading information (*id*. at 134:21-24).  Nor did Meng have any reason to doubt Source C. (*id*. at 134:25-135:2)

Meng's third source, Zhao Yan, had also long been an accurate source of information for Meng and Boxun News (Meng Depo. Vol. II at 44:16-24; Ardia Depo. at 97:2-16).  Mr Zhao's role with the New York Times is known to Plaintiff (*id*. at 85:4-86:14), as is his background information and contributions to Boxun News' reports about Plaintiff. (Meng Depo. Vol. II at 45-54)  Zhao Yan's information about Plaintiff comports with the information Meng received from Sources A and B, which he neither doubted nor had reason to doubt (ECF 21-1 ¶¶ 18-20; Meng Depo. Vol. III at 134:25-135:2).  Meng's confirmations did not end internally, either; he often sought confirmation of his reports and leads from the Western media prior to their publication (Ardia Depo. at 67:1-28).  In light of Meng's abundance of caution, Plainiff does not have a possibility of showing by *clear and convincing evidence* that Meng acted with reckless disregard for the truth.

-14-

546470.1

**C. While Plaintiff's Newfound Experts Do Not Defeat Meng's Special Motion to Strike, Their Testimony is Inadmissible.**

**i.  Plaintiff's Rebuttal Expert Testimony Should Be Disregarded for Non-Compliance with Fed. R. Civ. P. 26.**

When expert testimony is intended to "contradict or rebut evidence on the same subject matter identified by the other party," the expert must be disclosed within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii).  If disclosure is untimely, a court should disregard an expert witness's testimony. *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998); *see also Carpenter v. Universal Star Shipping, S.A.*, 924 F.2d 1539, 1547 (9th Cir. 1991).

Meng disclosed his expert witnesses to Plaintiff on November 9, 2012 (ECF 39-2).   The witnesses included Mary Hausch, a journalism professor at the University of Nevada, Las Vegas, and David Ardia, a law professor at the University of North Carolina School of Law (*id*.).   Any disclosures of expert witnesses meant to contradict or rebut their declarations must have occurred by December 10, 2012 in order to meet the 30-day deadline.   Meng's counsel never received such a disclosure from Plaintiff (DeVoy Decl. ¶ 2).   The first time Meng learned of Plaintiff's experts was on January 4, 2013, when their declarations were filed with the Court (*id*.).   In contrast, Meng provided Plaintiff with significant early discovery (*id*. ¶¶ 3-4).

Plaintiff's opposition to the instant motion presented evidence from two expert witnesses whose declarations were intended to rebut evidence on the same subjects as that presented by Profs. Hausch and Ardia (ECF 52, 53). Parks gave his contradictory opinion on the exact same subjects as Hausch (ECF 21-2, 52). Stein similarly provided a contradictory opinion of the exact same subjects addressed by Hausch and Ardia. (ECF 21-2, 39-3, 53).  Plaintiff's sole purpose in including these two expert witness declarations is to try to manufacture a factual dispute in rebutting

-15-

the declarations and reports of Mary Hausch and David Ardia, and thus the Plaintiff was required to disclose them within 30 days of November 9, 2012 under Fed. R. Civ. P. 26(a)(2)(D)(ii).   Plaintiff not only disregarded this deadline, but further prejudiced Meng by hiding the very existence of these "experts" until she sprang them upon the Defendant, without notice (DeVoy Decl. ¶ 3; ECF 52, 53).   It is no wonder that none of them even so much as tried to interview Meng – this would have spoiled the Plaintiff's attempt to improperly surprise the Defendant with their bogus testimony.   Accordingly, the Court should strike or disregard their testimony.

### ii.   Parks and Stein's Declarations Contain Impermissible Legal Conclusions, Which the Court Must Disregard.

While expert witnesses are given more latitude than lay witnesses, experts still may not draw any legal conclusions in their testimony.  *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). "Experts 'interpret and analyze factual evidence. They do not testify about the law....' " *U.S. v. Brodie,* 858 F.2d 492, 496 (9th Cir.1988) (quoting *U.S. v. Curtis,* 782 F.2d 593, 599 (6th Cir.1986)); *see also Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002) ( "[A]n expert witness cannot give an opinion as to her *legal conclusion, i.*e., an opinion on an ultimate issue of law." (emphasis in original)).

Both Parks and Stein impermissibly draw legal conclusions in their declarations.   Parks draws a legal conclusion in his declaration when he states "publication of this first article by Boxun News demonstrates reckless disregard for the truth." (ECF 52 ¶ 24). Whether the evidence in the record is enough to support a finding of actual malice is a question of law. *Harte-Hanks*, 491 U.S. at 687, citing *Bose Corp. v. Consumers Union of United States, Inc*, 466 U.S. 485, 510-11 (1984). Further, Parks discusses the application of the actual malice standard in his declaration, which is a legal conclusion (*id*. ¶¶ 32-34).   These legal conclusions are not the proper subject of expert testimony and must be disregarded.

-16-

546470.1

Mr. Stein's declaration consists almost entirely of legal conclusions.  Stein's declaration makes sweeping statements such as "this demonstrates a reckless disregard for the truth" (ECF 53 ¶ 9) and "is my opinion that it is both appropriate and necessary for the Court to devise some mechanism where, through discovery, Ms. Zhang, the Court (…) could gain more information regarding Mr. Meng's alleged anonymous sources." (*id*. ¶ 11).   Given that Mr. Stein is an attorney, drawing legal conclusions seems to be the only reason why Plaintiff sought his testimony.  As with Parks' declaration, Stein's legal conclusions are not the proper subject of expert testimony and are to be disregarded.  If Mr. Stein wishes to file an appearance and make these arguments at the hearing, then he should do so.

### iii.   The Testimony of Michael Parks Should Additionally Be Disregarded for Non-Compliance with Fed. R. Civ. P. 26(a)(2)(B)(v) and (vi).

As Michael Parks has no firsthand knowledge of this matter, Plaintiff clearly intended for his testimony to constitute an expert opinion (ECF 52).  Otherwise, it would be inadmissible hearsay and unreliable speculation.  Parks' declaration, however, fails to comply with Fed. R. Civ. P. 26(a)(2)(B)(v) and (vi), requiring a written report – in this case, Parks' declaration – to include "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition" and "a statement of the compensation to be paid for by the study and testimony in the case."   Non-compliance with Fed. R. Civ. P. 26(a)(2)(B)'s requirements is sufficient basis for the Court to strike and disregard non-compliant expert testimony, and Michael Parks' declaration (ECF 52) should be disregarded on that basis.

\\
\\
\\
\\

-17-

546470.1

### iv.  The Declarations of Ling, Zhang, and Parks all Fail to Comply with Local Rule 5-4.3.4 and May Be Stricken or Disregarded.

Local Rule 5-4.3.4 requires that only individuals with CM/ECF accounts may electronically sign documents with an "/s/".  Anyone who does not have a CM/ECF account may therefore not submit e-signatures, and must physically sign the filed document.  The declarations of Lucas Ling, Zhang Ziyi and Michael Parks (ECF 50, 51, 52) are electronically signed by non-lawyers who do not have CM/ECF accounts.  Because the declarants did not properly sign these declarations, they did not properly attest to the truthfulness of the document, and the Court should not consider these declarations in light of their unreliability.

### D. The Identities of Meng's Confidential Sources are Irrelevant to this Motion, and Unnecessary to Prove Actual Malice.

In lieu of defeat on this motion, Plaintiff asks this Court for the option of taking still more discovery from Meng (ECF 48 at 26).  Plaintiff has not correctly made a motion under 56(d) for further discovery, which is sufficient for the Court to deny Plaintiff's request for more.  *Brae Transp., Inc. v. Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("references in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)" [the prior version of Rule 56(d)])  Considering the amount of discovery Plaintiff has already conducted, it is difficult to comprehend what more could be discovered in this action. The parties stipulated to continue the hearing on the instant motion three times, giving Plaintiff more than four additional months to conduct discovery in support of her case.  Plaintiff has sought – and received – discovery from Meng by stipulation in lieu of a motion under Fed. R. Civ. P. 56(d) (formerly Rule 56(f)), as stated in the Third Stipulation to Continue Hearing on Motions (ECF 37 ¶12).  By any reasonable measure, the Plaintiff has not only taken more than enough discovery, but the

546470.1

Plaintiff has been downright abusive and punitive (ECF 30, 34, 38, 39, 41, 42, 43-2 ¶¶ 13-14).

Now, however, Plaintiff claims that the five months the parties have stipulated to was not enough time in order to obtain enough information meet her burden of proof. Plaintiff has had three opportunities to depose Meng (Meng Depo. Vols. I, II, III), two opportunities to depose Mary Hausch (Hausch Depo. I, II), and even traveled to North Carolina to depose David Ardia (Ardia Depo). In addition, Plaintiff received dozens of pages of documents pursuant to document requests for Meng and his experts. (DeVoy Decl. ¶ 4) A lack of discovery is not the reason Plaintiff cannot show a probability of proving, by clear and convincing evidence, that Meng acted with actual malice, and more discovery will not cure what ails Plaintiff's case.

Granting more time for discovery will prejudice Meng, who has already stipulated to a continuation three times (ECF 28, 34, 38), and continues to incur the costs and attorneys fees associated with complying with Plaintiff's requests (*see* ECF 43). If Plaintiff requires more discovery, or believes the Court cannot resolve this issue while the identities of two of Meng's sources remain confidential, she should have filed a motion to compel well before filing her Opposition to the Motion to Strike. This behavior is exactly what California's Anti-SLAPP Statute is meant to prevent. Cal. Civ. P. Code § 425.16(g) (staying all discovery during pendency of special motion to strike in state court).

This Court previously determined that the media has a qualified privilege against compelled disclosure during discovery. *Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833, 835-36 (C.D. Cal. 1993). In *Dangerfield*, this Court adopted the balancing test discussed in *Farr v. Pritchess*, 522 F.2d 464 (9th Cir. 1975) for analyzing whether a media defendant should be compelled to disclose anonymous sources. *Id.* at 836. Courts weigh the plaintiff's interest in the discovery with the public interest against disclosure to decide this issue. *Id.* Absent a "compelling

interest," courts will require the unmasking of anonymous sources. *Id.* "[C]ompelled disclosure by a journalist should be a last resort in keeping with the First Amendment requirement to show a compelling interest." *Id.*, citing *Zerelli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981); *Riley v. City of Chester*, 612 F.2d 708, 716-17 (3d Cir. 1979).   This privilege is not diminished "merely because a publisher or journalist is named in the civil action." *Condit*, 289 F. Supp. 2d at 1180.

Federal courts rely upon a three-part test for determining when a journalist's sources must be disclosed: (1) does the information sought go to the heart of the plaintiff's claim; (2) can the plaintiff obtain the information from an alternative source; and (3) is the claim frivolous and without merit. *Garland v. Torre*, 259 F.2d 545 (2d Cir. 1958). "The failure to exhaust alternative sources is a crucial and necessary condition, and therefore, is dispositive of the motion to disclose." *Condit*, 289 F. Supp. 2d 1181. California courts add the additional factor of whether a public interest protects the confidentiality of the source. *Condit*, 289 F. Supp. 2d at1178, *citing Mitchell v. Sup. Ct. (Synanon Church)*, 37 Cal. 3d 268, 274 (Cal. 1984).

Plaintiff's thinly veiled attempt to compel disclosure fails on all three *Garland* factors.   First, the information sought does not go to the heart of Zhang's claim.   As a public figure who must prove actual malice, rather than the actual falsity of the statements Boxun News published, Zhang does not need to know who the anonymous sources are in order to meet this standard. It is not important *who* these sources are in evaluating this standard, but *how* the reporters handled and verified the information the sources provided.

Second, Plaintiff has presented no evidence to show that she has attempted to gain the information from alternative sources. Plaintiff has not disclosed any subpoenas to third parties or, to Meng's knowledge, engaged in any other discovery allowed under the parties' numerous stipulations.  Despite claiming the identities of Meng's sources to be indispensible information now, she did not file a motion to compel the disclosure of their identities during the parties' months of discovery.

-20-

546470.1

Without exhausting these other resources, Plaintiff's request for disclosure should be denied as in *Condit*.

Meng's Special Motion to Strike demonstrates that Plaintiff's sole purpose for filing suit was in an effort to silence Boxun News (ECF 21-1 ¶ 16). Plaintiff's request for her defeat to be postponed until she can obtain the identities of Meng's anonymous sources crystallizes her intent to use this litigation to obtain the identities of vulnerable activists and subject them to punishment within China. Consistent with the public's interest in free speech principles and the safety of others for engaging in Constitutionally protected activity, Plaintiff should not be given still more opportunities to obtain the identities of sources whose lives and families would be endangered.   Their identities are not necessary to resolving the merits of this litigation, while their potential loss is considerable.  Upon finding that Plaintiff has failed to show a probability of prevailing on the merits of her claims by clear and convincing evidence, judgment should be entered in Meng's favor forthwith.

### III.   Conclusion

Meng's conduct at issue in this case is protected by California's Anti-SLAPP statute, California Civil Procedure Code § 425.16.  As such, Plaintiff must prove she has a probability of succeeding on the case's merits – which, here, require showing she can prove by clear and convincing evidence that Meng acted with actual Malice. Plaintiff's evidence, to the extent it can be credited, is insufficient to carry this burden.  In fact, much of Plaintiff's evidence should be excluded.  Meng is entitled to dismissal of this action under § 425.16, and dismissal with finality.  Plaintiff has had an opportunity for months of discovery.  Upon realizing she cannot carry her burden in this matter, her outcome is dismissal of her action, and not the right to further string up Meng in discovery as part of a quest to discover he true identity of his vulnerable anonymous sources.

DATED this 11 day of January 2013

Respectfully Submitted,

RANDAZZA LEGAL GROUP

/s/ Marc J. Randazza
Marc J. Randazza
Jason A. Fischer
*Attorneys for Defendant,*
*Weican Null Meng*

-22-

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Randazza Legal Group and that on this 11 day of January 2013, I caused the document(s) entitled:

**DEFENDANT'S REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CIVIL PROCEDURE CODE § 425.16 (ECF 21)**

and all attachments to be served by the Court's CM/ECF system.

                      /s/ Marc J. Randazza
                      Marc J. Randazza